# EXHIBIT B

# MERCHANT CARD PROCESSING AGREEMENT

PLEASE READ SECTION 20 ("ATTORNEY FEES; ARBITRATION; CLASS ACTION WAIVER") CAREFULLY AS IT RELATES TO ARBITRATION AND CLASS ACTIONS

While all terms in this Merchant Agreement are important, here is a summary of some sections on which we occasionally receive questions. These are common clauses in merchant processing agreements throughout our industry.

- The introductory paragraphs explain that **the Merchant Agreement consists of other documents** in addition to this Merchant Agreement.
- **We can amend** your Merchant Agreement by providing you with 15 days' notice or, under certain circumstances, with less than 15 days' notice (see section 10).
- Unless confirmed otherwise on your application, **the initial term** of this Merchant Agreement is three years. If you terminate early without cause, you may be required to pay an early termination fee (see section 11).
- The proceeds you receive from transactions are **provisional credits**. We can charge or debit your settlement account to recover these provisional credits. We can also debit your Settlement Account to recover other amounts that you may owe us (see Section 12).
- **If you dispute** any charge or funding, you must notify us within 30 days of the date of the statement (see section 12.5).
- In some circumstances, we may require the establishment of a **reserve account** with us so we can mitigate risks. Section 13 explains how that reserve account will be funded and how we may use money in that account.
- Our **processing fees** are set out in detail in the Merchant Application. **We may change these fees**, but must ordinarily notify you before doing so (see Section 16).
- This agreement contains an **arbitration clause** (see Section 20.2) and a **class action waiver** (see Section 20.3).
- This agreement is a **complete and final agreement between us**. It supersedes any previous negotiations we may have had on the services and products. (Section 21).

This Merchant Card Processing Agreement ("MPA") is for merchant card payment processing services among the merchant ("Merchant") that signed the Application for Merchant Card Processing ("Merchant Application"), Member Bank, and ISO. The Merchant Application and the MPA are part of the "Merchant Agreement" as defined below. Subject to the requirements of the Operating Rules, ISO and Member Bank reserve the right to allocate duties and obligations amongst themselves as they agree appropriate in their sole discretion, and Member Bank or ISO may jointly or individually assert or exercise any rights or remedies provided hereunder. If Merchant wishes to address any act or omission by, or make or bring any claim or action against, Member Bank or ISO relating to this Merchant Agreement, it shall first discuss such issue with ISO prior to making or bringing any claim or action against Member Bank (in which case ISO shall address the issue as agreed with Member Bank). Member Bank is responsible for sponsoring Merchant with Visa and Mastercard, and for settlement of Merchant sales funds. Unless otherwise noted, all other products, services and obligations to Merchant are the sole responsibility of ISO.

VISA®, Inc. ("Visa") and Mastercard® International, Inc. ("Mastercard"), the Discover® Network ("Discover"), and the American Express® Network ("American Express") are collectively known herein as the "Card Associations." If elected by Merchant on the Merchant Application, ISO will settle American Express® Card and Discover® Network transactions in accordance with the terms set forth in the Merchant Application and in doing so, ISO does not represent or indicate in any way that Member Bank sponsors ISO into the American Express Network and Discover Network. If Merchant elects and is approved to participate in the American Express OptBlue Program, Merchant agrees to comply with the American Express OptBlue Merchant Operating Guide, which may be accessed at www.americanexpress.com/merchantopguide. Member Bank does not sponsor ISO into the American Express Network and Discover Network, is not providing or agreeing to provide Merchant any services hereunder with respect to American Express Card and Discover Network Card transactions, does not determine or approve or agree upon any fees, charges, pricing, or any other terms and conditions, relating to American Express Card and Discover Network Card transactions, and has no responsibility or liability to Merchant for American Express Card and Discover Network Card transactions. Rather, ISO has a relationship with TSYS Merchant Solutions, LLC and/or its affiliate TSYS Acquiring Solutions, LLC, who in turn have direct relationships with American Express and Discover. Nor does Member Bank provide or agree to provide Merchant any services hereunder or have any responsibility or liability to Merchant with respect to any PIN-based debit or stored value or electronic benefit transfer transactions (except only to the extent, if any, required under Visa's or Mastercard's Operating Rules or mandatory provisions of applicable law), or any PayPal transactions, JCB, Carte Blanche, or other Card type transactions (other than Visa and Mastercard Credit and non-PIN based debit/stored value /electronic benefit transactions, including any such transactions made with Diner's International Cards which also carry the Mastercard Mark and are processed as Mastercard transactions), any CrossCheck or other Check Services transactions, merchant gift or loyalty card transactions, or any other services specified in the Merchant Application as covered in whole or in part by this Agreement but as not being provided by Member Bank. No reference to Member Bank herein shall be deemed to create any obligations or liability of Member Bank with respect to American Express Card or American Express Network transactions or Discover Network Cards or Discover Network Card transactions, or to any of the other types of Cards, transactions or services referred to above or in the Merchant Application as not being provided by Member Bank.

The appendices, addenda (including but not limited to the ACH Addendum, and Petro Addendum if applicable), schedules, Fee Schedule, applicable product or services terms as indicated on the Merchant Application, and ACH Terms and Conditions that accompany this MPA, as amended from time to time as provided herein, are part of the terms and conditions of this MPA, as are the Merchant Application and the Operating Rules, and are hereinafter individually and collectively referred to as the "Merchant Agreement." The Operating Rules for Visa are located at https://usa.visa.com/support/consumer/visa-rules.html, and the Operating Rules for Mastercard are located at https://www.mastercard.us/en-us/business/overview/support/rules.html.

**Capitalized terms used in this Merchant Agreement which are not defined herein shall have the meaning given to them in the Merchant Application, which is incorporated by reference into this Agreement and may be amended from time to time by Merchant Bank or ISO upon notice to Merchant.**

According to the processing services selected by Merchant on the Merchant Application and, in accordance with the terms of this Merchant Agreement and applicable Operating Rules, Merchant agrees to participate in ISO's Card processing program by honoring Cards in accordance with this Merchant Agreement; and to submit Transaction Receipts, Credit Transaction Receipts and other electronic data to ISO for the Card Program services provided by ISO.

With respect to Visa and Mastercard Transactions:
Member Bank is responsible for providing settlement funds directly to Merchant, and ISO shall not have access to or hold settlement funds.

**1. MERCHANT'S APPLICATION AND INFORMATION.** By completing the Merchant Application, Merchant applies for the Card Program services covered by the Merchant Application and the Merchant Agreement. In their sole and absolute discretion, ISO and/or Member Bank may accept or reject Merchant's Merchant Application. Merchant may present Transactions to ISO only for the activities and in the volumes described on the Merchant Application, including the percentage of Mail/Phone Order and Electronic Commerce Transactions. The earlier date of the presentation of the first Transaction, including any test Transaction, by Merchant to ISO or the date ISO approves the Merchant Application signifies the effective date of the Merchant Agreement (the "Effective Date"). By either Merchant's signature on the Merchant Application or Merchant's processing a Transaction (including a test Transaction) with ISO, Merchant affirmatively accepts and agrees to be bound by the Merchant Agreement.

**2. MERCHANT'S GENERAL DUTIES.**
   2.1  **General.** Merchant will comply with the Merchant Agreement for submitting and processing Transactions with ISO. ISO is responsible to Merchant for processing Transactions under the Operating Rules for the Card Program services to which Merchant subscribes, which may vary among Card types.
   2.2  **Merchant's Responsibility for Acts of Others.** Merchant, and not Member Bank or ISO, is responsible for any advice from, acts of, as well as omissions, acts of fraud or acts of misconduct by, Merchant's employees, ISOs, consultants, advisors, contractors, Merchant Servicers, Agents, officers and directors. Merchant, and not Member Bank or ISO, is responsible for the use, unauthorized use or misuse of Merchant's equipment, POS Equipment, or software.
   2.3  **Electronic and Paperless Notices and Disclosures.** Merchant consents to receiving electronically rather than in paper form all written notices, disclosures and other documents ("Documents") which are to be provided by ISO to Merchant under the Merchant Agreement. ISO will notify Merchant that a Document is available at ISO's web site with a link to that specific page of the web site containing the Document. Merchant agrees that such notification may be sent to Merchant at the e-mail address provided as part of the Merchant Application.

By Merchant affirmatively checking the box to consent to receive paperless delivery of IRS Notices on the Merchant Application, if applicable,, Merchant acknowledges that it has reviewed and received the Consent to Paperless Delivery of IRS Notices, located at http://www.tsys.com/documents.html and that Merchant consents and agrees to receive IRS notifications by paperless delivery.

Merchant understands and acknowledges that access to the Internet and e-mail are required for Merchant to access Documents electronically or by paperless delivery and Merchant confirms that Merchant has such access. Merchant understands that there are costs related to accessing Documents electronically or by paperless delivery and Merchant agrees that Merchant is responsible for these related access costs.

At any time, and without giving Merchant advance notice, Member Bank and/or ISO may elect not to send a Document electronically or by paperless delivery, in which case a paper copy of the Document will be sent to Merchant at Merchant's last known address, as provided by Merchant, or such Document shall otherwise be provided as provided for herein.

**3. PROCEDURES FOR CARD TRANSACTIONS.**
   3.1 Honoring Cards.
       (a)  Limited Acceptance. If appropriately indicated herein, Merchant shall be a Limited Acceptance Merchant, which means that Merchant has elected to accept only certain Visa and Mastercard card types as indicated on the Merchant Application, or via later notification. The Visa or Mastercard Credit acceptance option on the Merchant Application refers to Visa Credit and Business transactions, and is what Mastercard refers to as "Other Card" transactions. Notwithstanding anything to the contrary in the Application, Merchant can elect (i) to accept only Visa or Mastercard non-PIN based debit/stored value/electronic benefit transactions (sometimes referred to as "signature debit" transactions, whether or not an actual signature is required), or (ii) to accept only Visa or Mastercard Credit transactions, or (iii) to accept all Visa or Mastercard Credit and signature debit transactions; **provided,**

however, that a Merchant who accepts any Visa or Mastercard Card types must accept all valid Visa or Mastercard Card types issued by a non-U.S. issuer. Merchant is not required to accept Card brands other than Visa or Mastercard in order to accept Visa or Mastercard Cards (except that transactions using Diner's International Cards which also carry the Mastercard Mark must be accepted if Merchant accepts Mastercard Card transactions of the same type). Merchant Bank and ISO have no obligation other than those expressly provided under the Operating Rules and applicable law as they may relate to Limited Acceptance. Member Bank's and ISO's obligations do not include policing card types at the point of sale. Merchant will be solely responsible for the implementation of its decision for limited acceptance including but not limited to policing the card type(s) of transactions at the point of sale submitted for processing by ISO. Should Merchant submit a transaction for processing for a card type it has indicated it does not wish to accept, ISO may process that transaction and Merchant will pay the applicable fees, charges, and assessments associated with that transaction. Merchant will comply with any applicable laws and Operating Rules for the card type processed.

(b) Discover. If Merchant has chosen to accept Discover Card Transactions in the Merchant Application, Merchant must accept Discover Cards at all Merchant establishments, including in payment for purchases of goods and services, for charitable contributions and for Cash Over Transactions, when properly presented for payment by a Cardholder. Subject to this Section, a Merchant must create a Transaction Receipt for each Discover Card Transaction and deliver at least one copy of the Transaction Receipt to the Cardholder. A Merchant may issue a Cash Over in connection with a Discover Card Transaction. Merchant must deliver a single Authorization Request for the aggregate total of the goods/services purchase amount and the Cash Over amount. In addition, the Transaction Receipt must include both the purchase amount and the Cash Over amount.

(c) PayPal™. If Merchant has chosen to accept PayPal Payment Card Transactions in the Merchant Application, Merchant must accept PayPal Payment Cards at all Merchant establishments, including in payment for purchases of goods and services and for charitable contributions when properly presented for payment by a Cardholder. Subject to this Section, a Merchant must create a Transaction Receipt for each PayPal Card Transaction and deliver at least one copy of the Transaction Receipt to the Cardholder.

(d) American Express. If Merchant has chosen to accept American Express® Cards in the Merchant Application, Merchant must accept American Express Cards as payment for goods and services sold, or (if applicable) for charitable contributions made, at all of its establishments, except as expressly permitted by state statute. Merchant is jointly and severally liable for the obligations of Merchant's establishments under the Merchant Agreement. In the event Merchant's American Express annual charge volume exceeds $1,000,000 in a rolling twelve month period or is greater than $100,000 in any three consecutive months, Merchant will be considered a High CV Merchant by American Express and will be required to enter into a direct merchant card acceptance agreement with American Express. Upon any conversion to a direct agreement with American Express, Merchant will be bound by American Express' then current Card Acceptance Agreement and to any pricing and fees set by American Express. Merchant has the right to opt-out of acceptance of American Express Cards at any time without affecting Merchant's rights to accept other card types. If Merchant elects to receive messages from American Express regarding products, services and resources available to it, as indicated on the Merchant Application, Merchant agrees messages maybe sent by American Express to the phone numbers, fax numbers or email addresses provided by Merchant. If a wireless number is provided, Merchant agrees communications may be sent via SMS or text in addition to automated calls. Merchant may opt out of receiving messages by contacting ISO.

(e) EBT Transactions. If Merchant has chosen to accept Electronic Benefits Transfer ("EBT") transactions, Merchant agrees to issue United States Department of Agriculture, Food and Nutrition Services ("FNS") food stamp benefits ("FS Benefits") and/or government delivered cash assistance benefits ("Cash Benefits," and with FS Benefits, "Benefits") to recipients ("Recipients") in in accordance with the procedures specified herein, and in all documentation and user guides provided to Merchant by ISO, as amended from time-to-time; and pursuant to the Quest Operating Rules (the "Quest Rules"), as amended from time-to-time, issued by the National Automated Clearing House Association as approved by the Financial Management Service of the U.S. Treasury Department. Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed them in the Quest Rules. Merchant will provide each recipient a receipt of each Benefit issuance. Merchant will be solely responsible for Merchant's issuance of Benefits other than in accordance with authorizations. Merchant agrees to comply with all the requirements, laws, rules and regulations pertaining to the delivery of services to Benefit Recipients and Benefit Recipient confidentiality. If Merchant issues FS Benefits under this Merchant Agreement, Merchant represents and warrants to ISO that Merchant is an FNS-authorized "Merchant" (as such term is defined in the Rules) and is not currently suspended or disqualified by FNS. Merchant agrees to secure and maintain at its own expense all necessary licenses, permits, franchises, or other authorities required to lawfully effect the issuance and distribution of Benefits under this Merchant Agreement, including without limitation, any applicable franchise tax certificate and non-governmental contractor's certificate, and covenants that Merchant will not issue Benefits at any time during which Merchant is not in compliance with the requirements of any applicable law. Merchant agrees to hold ISO harmless from any costs of compliance or failure to comply with any such obligation by Merchant. ISO may terminate or modify the provision of services to Merchant if any of ISO's agreements with government EBT agencies are terminated for any reason or if any party threatens to terminate services to ISO due to some action or inaction on the part of Merchant. Nothing contained herein shall preclude the State from commencing appropriate administrative or legal action against Merchant or for making any referral for such action to any appropriate Federal, State, or local agency. Any references to "State" herein shall mean the State in which Merchant issues Benefits pursuant hereto. If Merchant issues Benefits in more than one State pursuant hereto, then the reference shall mean each such State severally, not jointly.

3.2 **Operating Procedures for Transactions.** In accepting Cards for the purchase of Merchant's goods and services, Merchant shall comply with the requirements of the Merchant Agreement, including but not limited to the Operating Rules, as the same are revised from time to time.

3.3 **Submission of Valid Transactions**.

(a) Merchant will submit to ISO a Transaction only if the Transaction is made or approved by the Cardholder who is issued the Card used for the Transaction. The burden of verifying the identity of the Cardholder and the Cardholder's authority to initiate a Transaction rests solely with Merchant. Merchant will not submit directly or indirectly: (i) any Transaction that Merchant knows or should have known to be fraudulent or not authorized by the Cardholder; (ii) any Transaction that results from a transaction outside of Merchant's normal course of business, as described on the Merchant Application; or (iii) any Transaction containing the account of a Card issued to Merchant or any account numbers issued to Merchant's business owners, family members, principals or employees for Transactions that do not represent a purchase of goods or services from Merchant or a credit transaction related to a purchase of goods or services from Merchant .

(b) If at any time the volume of Transactions substantially exceeds or decreases from the projected annual volume stated on the Application, or if at any time ISO suspects fraud, money laundering or violations of the Operating Rules, ISO may, in its sole and absolute discretion and in addition to other remedies that the ISO may have: (i) refuse to process the excessive or suspect Transactions; (ii) process the Transactions and retain the funds received from processing until such time as the excess or suspect Transactions are found to be valid or invalid and processed in accordance with the Operating Rules; (iii) suspend processing and/or terminate the Agreement; or (iv) amend the Merchant Agreement to protect the interests of ISO.

3.4 **Payments to Merchant for Valid Transactions**.

(a) Member Bank and ISO will provide provisional credit to Merchant for each undisputed and valid Transaction that Merchant submits to ISO by crediting Merchant's Settlement Account, provided Member Bank and ISO have received settlement for the valid Transaction through the Interchange procedures specified by the Card Association applicable to the Card used for the Transaction (Member Bank and ISO do not provide payment for all Card types for which Authorization services are provided). Member Bank and ISO are not obligated to provide provisional credit to Merchant for Transactions submitted that are not valid Transactions, and may suspend or discontinue any provisional credit in Member Bank's and/or ISO's sole and absolute discretion, including for any reason that would justify termination of this Merchant Agreement. Each provisional credit from Member Bank and ISO to Merchant will be subject to adjustment, including revocation, upon ISO's further review and verification. **Provisional credit to Merchant for a Transaction disputed by a Cardholder for any reason is not final.**

(b) Member Bank and ISO may deduct from any payment to Merchant the amount of any Credit Transaction Receipt processed for Merchant, any Chargeback to Merchant, any amount to be deposited in the Reserve Account and any Processing Fees and amounts sufficient to reimburse Member Bank and ISO for the amount of any Card Association assessments (sometimes referred to as "fines" or "penalties") or charges due from Merchant or for any current or future obligation of the Merchant that arises under the Merchant Agreement. Merchant must immediately pay Member Bank and ISO the amount by which a Credit Transaction Receipt processed on any day exceeds valid Transactions submitted on that day. Without limiting Member Bank's and ISO's remedies, Member Bank and ISO may obtain the amount due by deducting it from the Settlement Account, Reserve Account or other accounts of or funds due Merchant.

(c) Merchant acknowledges that all payments and credits provided to Merchant are provisional and subject to suspension, to Chargebacks and to adjustments in accordance with the Merchant Agreement, including, but not limited to the Operating Rules.

3.5 **Retrieval Requests.** If Merchant deposits Transactions with ISO through magnetic tape, electronic transmission, or electronic data capture terminal, upon the request of a Card Association, ISO or Member Bank, Merchant shall respond to all Retrieval Requests within the time frames specified in the applicable Operating Rules. If Merchant does not respond or responds late to a Retrieval Request, Merchant may be without recourse as Chargebacks for "non receipt of requested item" in most cases, cannot be reversed. Member Bank and ISO are not obligated to provide provisional credit to Merchant for any Retrieval Request and may suspend or discontinue any provisional credit in their sole and absolute discretion.

3.6 **Equipment; Supplies; Displays.**
Important Note: Merchant acknowledges and agrees that Member Bank and its affiliates have no duty, obligation or liability whatsoever for: (1) the POS Equipment, herein; (2) any actions or omissions of ISO with respect to the POS Equipment; (3) failure of merchant to perform routine maintenance and updates to the POS Equipment; (4) any failure of merchant to adhere to standard security requirements as it relates to the POS Equipment; or (5) any claims or disputes arising out of the foregoing.

(a) At Merchant's request, ISO will supply Merchant with point-of-sale equipment, including a terminal, router or other compatible or ancillary equipment, hardware or device (collectively "POS Equipment"). ISO will use good faith efforts to program or configure the POS Equipment to operate at the Merchant Outlets in compliance with the Operating Rules; however, ISO makes no representations or warranties that ISO's programming of the POS Equipment furnished by ISO will operate in compliance with the Operating Rules and applicable law. If ISO supplies Merchant with POS Equipment or other equipment, then Merchant must return such equipment upon termination of this Agreement.

(b) The individual providing the terminal to Merchant is an employee of ISO, unless otherwise identified as an independent sales contractor. Merchant acknowledges and understands that POS Equipment may be supplied to Merchant that is the property of ISO and is being provided to Merchant for free use subject to the following conditions and requirements:

   (i) Merchant shall be liable for a $495 fee for non-return of ISO supplied POS Equipment if Merchant terminates or ceases processing under the terms of this Agreement before the expiration of the initial or renewal term of this Merchant Agreement and fails to return the POS Equipment within ten days of termination or of ceasing processing.

   (ii) Merchant shall be liable for a $450 fee for non-return of Encryption Exchange POS Equipment if applicable;

   (iii) Merchant will be liable for any damages to the POS Equipment from the misuse or negligent use or handling of the POS Equipment;

   (iv) Merchant will be liable for any reasonable monthly fee as determined by ISO for paper or other supplies provided by ISO for use with the POS Equipment; and

   (v) ISO, at its absolute and sole discretion, may allow for one terminal exchange at no charge, but may charge additional fees for subsequent exchanges.

(c) All ISO and third party POS Equipment and services provided or procured by ISO under this Merchant Agreement are provided "AS-IS." ISO makes no warranty as to this POS Equipment's fitness for any particular purpose (or any other Warranty) and disclaims any liability resulting from the POS Equipment or Merchant's use of the POS Equipment.

(d) Merchant acknowledges that ISO or a third party is supplying the POS Equipment and that Member Bank shall have no responsibility or liability for the POS Equipment supplied to Merchant.

(e) Merchant will use only the forms for Transactions and electronic processing formats provided or approved in advance by ISO. ISO may change the forms from time to time, and, upon notification, Merchant will comply with any changes. Merchant will use Transaction forms or materials provided by ISO only for Transactions which Merchant submits to ISO.

(f) Merchant may not (i) indicate or imply that the Card Associations, ISO or Member Bank endorses any Merchant goods or services, (ii) refer to a Card Association, ISO or Member Bank in stating eligibility for Merchant's products, services or membership, or (iii) use any marks, symbols or logos owned by any Card Association, ISO or Member Bank for any purpose other than those permitted in the Operating Rules, provided that any use of ISO's or Member Bank's marks, symbols or logos shall be in accordance with and subject to any branding guidelines provided by ISO and Member Bank. Merchant acknowledges that Member Bank and ISO shall remain the sole and exclusive owners of their respective intellectual property and Confidential Information (defined below). Except to the extent expressly provided herein, no rights to ISO's or Member Bank's intellectual property or Confidential Information are granted hereunder, and all rights therein are expressly reserved.

3.7 **Europay/Mastercard/Visa ("EMV") Chip Card Compliance.** Merchant agrees that if Merchant does not use POS Equipment that has been certified EMV chip card compliant and enabled or when a lost or stolen chip and PIN card is used at an EMV enabled terminal capable of processing chip and signature only, Merchant may be liable for payment of any transactions submitted for chargeback by the applicable EMV chip card issuer(s).

4. **MERCHANT'S WARRANTIES.** Upon signing the Merchant Application, and each time Merchant submits a Transaction, Merchant represents and warrants that:

4.1 Merchant has abided by the Merchant Agreement, and all applicable laws, the Operating Rules;

4.2 Each statement made on the Merchant Application was true as of the date Merchant signed the Merchant Application agreeing to be bound by the Merchant Agreement;

4.3 There have been no materially adverse changes in information provided in the Merchant Application or in Merchant's financial condition, or management;

4.4 Merchant does not do business under a trade name or style not previously disclosed in writing, and there has been no change in the nature of Merchant's business or the product lines that Merchant sells not previously disclosed;

4.5 The Transaction is genuine and arises from a bona fide sale of merchandise or services by Merchant, represents a valid obligation for the amount shown on the Transaction Receipt and does not involve the use of the Card for any other purpose;

4.6 Merchant has title to the Transaction and Transaction Receipt, there are no liens or other encumbrances on it, and Merchant has the authority to convey the Transaction for processing;

4.7 The Transaction is not subject to any dispute, set-off or counterclaim;

4.8 The Transaction has not been previously presented for processing unless allowed by the Operating Rules;

4.9 Each statement on the Transaction Receipt is true and Merchant has no knowledge of facts that would impair the validity or collectability of the amount of the Transaction;

4.10 The person who executes the Merchant Application on behalf of Merchant has the full power and authority to execute the Merchant Application and to enter into the Merchant Agreement;

4.11 The Merchant Agreement is the legal, valid, and binding obligation of Merchant enforceable against Merchant in accordance with its terms;

4.12 Merchant shall submit Transactions only in accordance with the information contained in the Merchant Application and the Merchant Agreement;

4.13 Merchant has the power and authority to authorize the automatic funds transfer provided for in the Merchant Agreement;

4.14 The Settlement Account is owned and controlled by Merchant and is a valid account for processing debit and credit transactions under the Merchant Agreement;

4.15 Merchant is not (i) a Sanctioned Person, (ii) located in or operating under a license issued by a jurisdiction whose government has been identified by the U.S. Department of State as a sponsor of international terrorism under 22 U.S.C. 2371 or 50 U.S.C. App. 2405(j), (iii) located in or operating under a license issued by a jurisdiction that has been designated as non-cooperative with international anti-money laundering principles or procedures by an intergovernmental group or organization of which the U.S. is a member, or (iv) located in or operating under a license issued by a jurisdiction that has been designated by the U.S. Secretary of Treasury pursuant to 31 U.S.C. 5318A as warranting special measures due to money laundering concerns; and

4.16 Merchant will immediately notify Member Bank and ISO in writing of any material changes to any information provided herein including but not limited to a change in Merchant's legal entity, location, business type, or the types of goods and services offered for sale by Merchant.

5. **CONFIDENTIALITY; DATA SECURITY.**

5.1 **Confidentiality.** Merchant will treat as confidential: (i) the terms of the Merchant Agreement; (ii) all information or data, of whatever nature, relating to ISO (including its operations, policies, procedures, accounts and personnel) accessed or used by or disclosed to Merchant in connection with the Merchant Agreement; (iii) ISO's IRS W-9 form; and (iv) all information or data that is proprietary to a third party (including ISO's customers and contractors) and that ISO is obligated to treat as confidential, accessed or used by or disclosed to Merchant in connection with the Merchant Agreement (individually and collectively, "Confidential Information"). Merchant shall not use or disclose Confidential Information without ISO's prior written consent. Merchant may only disclose Confidential Information to Merchant employees who have a need to know such information in connection with Merchant's performance hereunder and who are bound to confidentiality restrictions no less restrictive than those herein. Merchant shall exercise at least the same degree of care to maintain the confidentiality of Confidential Information that it uses for its own similar information, but in no event less than a reasonable degree of care. The foregoing obligations shall not apply to any information that (x) is received from any third party source that is properly authorized to disclose it without restriction, (y) is or becomes generally known to the public by publication or some other means other than a breach by Merchant or its employees of any agreement or confidentiality obligations, or (z) is required by law to be divulged, provided that the request is proper and the disclosure does not exceed that which is required. In the case of (z), Merchant will provide prior notice thereof and cooperate with ISO to limit disclosure. Upon ISO's request, and upon termination or expiration of the Merchant Agreement, Merchant shall return or, only if requested by ISO, destroy all Confidential Information in its possession or control. Merchant acknowledges that a breach of this Section 5 may cause ISO irreparable injury and that ISO may have no adequate remedy at law. Accordingly, ISO may seek provisional or injunctive relief in addition to any other rights or remedies.

5.2 **Transaction Receipts.** Merchant will retain in a secure and confidential manner original or complete and legible copies of each Transaction Receipt, and each Credit Transaction Receipt required to be provided to Cardholders, for such period as required by law or the Operating Rules. Merchant shall render all materials containing Cardholder Account Numbers unreadable prior to discarding. Merchant is responsible for ascertaining whether applicable law requires copies retained by Merchant to truncate card numbers and suppress expiration dates, and for complying with all such laws.

5.3 **Storage.** Merchant will store Transaction Receipts and Credit Transaction Receipts in an area limited to selected and authorized personnel, and when record-retention requirements have been met, Merchant will destroy the records so that the same are rendered unreadable.

5.4 **Merchant Servicers and Agents.** Merchant must notify ISO and receive ISO's approval prior to engaging any Merchant Servicer or Agent in connection with Merchant's acceptance of Cards or the submission of Transactions to ISO. Merchant shall provide Member Bank and ISO at least sixty days advance written notice of Merchant's election to use a Merchant Servicer or Agent. Member Bank and/or ISO may individually approve or deny the use of a Merchant Servicer or Agent in their sole and absolute discretion and at any time. If a Merchant Servicer or Agent is required to certify, register, or act in any fashion pursuant to the Operating Rules, Merchant shall cause such Merchant Servicer or Agent to cooperate with ISO in completing any steps required for registration and/or certification and/or action. Merchant is solely responsible for any and all applicable fees, costs, expenses and liabilities associated with such registration and/or certification and/or action. ISO and Member Bank shall in no event be liable to Merchant or any third party for any actions or inactions of any Merchant Servicer or Agent used by Merchant, and Merchant hereby expressly assumes all such liability.

Merchant will immediately notify ISO if Merchant decides to use electronic authorization or data capture terminals provided by any entity other than ISO or its authorized designee ("Third Party Terminals") to process Transactions, including leasing a terminal from a third party. If Merchant elects to use Third Party Terminals: (a) the third party providing the terminals will be Merchant's Merchant Servicer in the delivery of Transactions to ISO; and (b) Merchant assumes full responsibility and liability for any failure of that third party to comply with the Operating Rules, applicable laws, rules or regulations or the Merchant Agreement. ISO and Member Bank will not be responsible for any losses or additional fees incurred by Merchant as a result of any error by a third party agent or a malfunction in a Third Party Terminal.

The use of a Merchant Servicer or Agent or software or systems provided by a Merchant Servicer or Agent that has connectivity to the Internet poses an increased risk, and Merchant assumes all liability for such increased risks. If Merchant utilizes software or hardware with a connection to the Internet such hardware or software interacts in any capacity with the

provision of services contemplated pursuant to this Merchant Agreement, Merchant is solely liable without limitation for any and all consequences of such interaction.

5.5 **Security.** Merchant agrees and shall ensure that Merchant Servicers and Agents utilized by Merchant provide the same levels of security as those required of Merchant, and that such Merchant Servicers and Agents transmit data in accordance with: (a) the required format(s) of the Card Associations; (b) the Operating Rules; and (c) the requirements of ISO and Member Bank. Merchant must have a written contract between Merchant and its Agent or between Merchant and the Merchant Servicer that stipulates adherence to the provisions of such information security requirements. Merchant's written contract with any such third party must contain provisions obligating the third party to comply with applicable law, with CISP and SDP and DISC and PCIDSS, PA-DSS, PIN and PED security requirements if applicable, and all other Card Association requirements pertaining to confidentiality and security and integrity of Cardholder and Card transaction data, with all rules prohibiting storage of certain Card transaction data, and with all other applicable Operating Rules and the requirements of ISO and Member Bank. Merchant will only allow Merchant Servicers or Agents to have access to cardholder data for the purposes that are authorized by the Operating Rules. Any fees or liability assessments from actual or alleged noncompliance will be the sole liability of the Merchant. Merchants processing less than 1 million annual Visa transactions and using third parties for POS application, terminal installation and integration must engage Payment Card Industry (PCI) Qualified Integrator Reseller (QIR) professionals to install, integrate, and support point-of-sale applications and terminal installation and integration. Merchant shall indemnify and hold Member Bank and ISO harmless against losses or damages arising from the acts or omissions of Merchant Servicers or Agents engaged by Merchant.

5.6 **Loss or Theft.** Merchant must immediately notify Member Bank and ISO of any suspected or confirmed loss or theft of materials or records that contain Cardholder Account Numbers or Card Transaction information. In the event of a suspected or confirmed loss or theft Merchant shall provide immediate access to all facilities, systems, procedures, equipment, and documents as may be deemed appropriate by ISO and Member Bank or their designated representatives, regulators or auditors for inspection, audit, and copying as deemed appropriate by both Member Bank and ISO in their individual sole discretion. Merchant shall be responsible for all costs associated with such inspection, audit, and copying however such costs may occur.

5.7 Merchant authorizes ISO to release its name and address to any third party whom the ISO determines needs to know such information in order for ISO to perform the Card Program services under this Merchant Agreement and who has requested such information.

5.8 Merchant will not: (a) provide Cardholder Account Numbers, personal Cardholder information or Transaction information to anyone except ISO, the Card Associations, or Merchant's Merchant Servicers or Agents for the purpose of assisting Merchant in completing Card Transactions, or as specifically required by law; (b) retain or store Card Magnetic Stripe, CVV, CVV2, CVC2 or CID data (including Track Data) subsequent to Authorization for a Transaction; (c) sell, purchase, provide or exchange Card Account Number information to any third party without the Cardholder's consent, or to any entity other than Merchant's Merchant Servicers or Agents, ISO, the Card Associations, or in response to valid legal process or subpoena; or (d) release any Cardholder information over the telephone under any circumstances.

5.9 Merchant may not in any event, including its failure, including bankruptcy, insolvency, or other suspension of business operations, sell, transfer, or disclose any materials that contain Cardholder Account Numbers, personal information or Transaction information to third parties. In the event that Merchant's business fails or ceases to exist, Merchant is required to return to ISO all such information or provide proof of destruction of this information to ISO.

5.10 Merchant agrees to establish security procedures to protect Cardholder information and comply with the Visa Cardholder Information Security Program (CISP), Mastercard's Site Data Protection (SDP) Program, Discover Information Security Compliance (DISC), American Express Data Security Requirements, the Payment Card Industry (PCI) Data Security Standards, and applicable laws pertaining to the privacy and security of personal information (including, without limitation, and to the extent applicable, those of non-U.S. governmental authorities). Detailed information about PCI DSS can be found at the PCI DSS Council's Website: www.pcisecuritystandards.org. The Card Associations, ISO or Member Bank, and their respective representatives, may inspect the premises of Merchant or any Merchant Servicer or Agent engaged by Merchant for compliance with security requirements. Merchant acknowledges that any failure to comply with security requirements may result in the imposition of restrictions on Merchant or the permanent prohibition of Merchant's participation in Card acceptance programs by the Card Associations. Merchant shall indemnify and hold ISO and Member Bank harmless against any losses or damages arising from Merchant's actual or alleged failure to comply with security procedures and any losses or damages arising from or related to Merchant's acts or omissions that result in an actual or alleged breach of data security, including but not limited to Merchant's non-participation in any breach security program ISO may offer.

5.11 ISO acknowledges that it will maintain compliance with all applicable PCI DSS requirements.

5.12 Federal regulations enacted pursuant to the USA PATRIOT Act and other applicable laws require financial institutions with which ISO has relationships to verify the identity of every person who seeks to open an account with a financial institution. As a result of Merchant's status as an account holder with Member Bank, Merchant shall provide documentary verification of Merchant's identity, such as a driver's license or passport for an individual and certified copy of organization documents for an entity in manner acceptable to ISO and Member Bank. ISO and Member Bank reserve the right to verify Merchant's identity through other non-documentary methods as ISO and Member Bank deems appropriate in its sole discretion. ISO and Member Bank may retain a copy of any document it obtains to verify Merchant's identity with the financial institution.

6. **OPERATING RULES.**

6.1 Merchant must comply with the Operating Rules, as the same may be amended from time to time. The Operating Rules may change with little or no advance notice to Merchant and Merchant will be bound by all such changes. If Merchant objects to any change in the Operating Rules, it must immediately stop accepting new Transactions for Cards governed by the change. The Operating Rules will govern in the event that there is any inconsistency between the Merchant Agreement and the Operating Rules. However, nothing in the Merchant Agreement shall be construed to impose on Merchant a requirement (including a requirement under the Operating Rules) which is prohibited by mandatory provisions of applicable law (i.e., where the applicability of such provisions of law to the Merchant Agreement, and of the law's prohibition to the particular requirement which otherwise would be imposed on Merchant hereunder, cannot lawfully be waived by agreement), but the requirement hereunder shall be construed to continue in effect and to be imposed on Merchant in all respects and at all times to the fullest extent possible without violating the law's prohibition, with only those particular applications of the requirement which would violate the law's prohibition deemed severed from the provisions hereof.

6.2 Operating Rules of the Debit Networks may differ among them with respect to the Transactions they allow. ISO, at its discretion, may require that the most restrictive requirements of one Debit Network apply to all of Merchant's On-line Debit Card Transactions, regardless of Card type.

7. **MERCHANT'S BUSINESS; OTHER ISOS.**

7.1 **Compliance With Laws.** Merchant will comply with all applicable federal, state, and local laws and regulations ("Requirements of Law"), including but not limited to laws and regulations regarding anti-money laundering compliance, in completing Transactions, submitting them to ISO, performing its obligations under the Merchant Agreement, and otherwise conducting its business.

7.2 **Change in Name or Business.** Merchant will give Member Bank and ISO at least thirty days' prior written notice before any change in Merchant's name or location, any change in ownership or management of Merchant's business, any sale, assignment, rental, lease or transfer of ownership of any location that accepts Cards, or any material change in information concerning Merchant in the Merchant Application, and material change in the type or nature of the business carried out by Merchant or otherwise required to be provided to ISO.

7.3 **Other ISOs.** To the extent permitted by applicable law, Merchant agrees that it will not participate in a Card Program with another financial institution or ISO without ISO's written approval.

8. **CREDIT REPORTS AND OTHER INFORMATION.**

8.1 **Reports About Merchant**. From time to time, ISO may obtain credit and other information on Merchant, owners and officers of Merchant, any and all personal guarantors of Merchant, and any signatory to the Merchant Application, from others (such as customers and suppliers of Merchant, lenders and credit reporting agencies), and furnish information on Merchant's relationship with ISO and ISO's experience with Merchant to others seeking the information.

8.2 **Reports from Merchant**. Merchant will provide ISO with updated business and financial information concerning Merchant, including financial statements, tax returns, evidence of required licenses and other information and documents ISO may reasonably request from time to time. Merchant shall further provide ISO such information as it may request for the making of insurance claim, regulatory or other filings related to Merchant's activity pursuant to this Agreement. All material marked "confidential" which ISO receives from Merchant will be used only by ISO, Member Bank or Card Association in performing the Card Program services under this Merchant Agreement or related services and reporting. ISO, Member Bank and any Card Association, regulator, auditor or any other entity having authority may audit Merchant's records relating to this Merchant Agreement. Merchant shall provide all documentation, information or other inspection rights requested by ISO's or Member Bank's regulators or auditors or otherwise to enable ISO and Member Bank to meet Requirements of Law. Without limiting the generality of the foregoing, Merchant understands and agrees that if, at the time of signing this Merchant Agreement Merchant is undergoing a forensic investigation, Merchant must notify ISO and fully cooperate with the investigation until it is completed.

8.3 **Information**. Merchant authorizes ISO to release and use information collected in connection with ISO's provision of services to the Merchant contemplated in the Merchant Agreement, to third parties that provide services to ISO or Merchant, for marketing purposes with third parties with whom ISO has a relationship to offer products and/or services to merchants, or to any third party that requests and has a reason to know such information, including but not limited to the Card Associations, and any third party having regulatory control over any party.

9. **ASSIGNMENT; BANKRUPTCY.**

9.1 **Assignment**. The Merchant Agreement is binding upon the successors and assigns of ISO, Member Bank and Merchant. Merchant will not assign or transfer (including by merger, change of control or operation of law) the Merchant Agreement (in whole or in part) to another person or entity without ISO and Member Bank's prior written consent and any purported assignment made without ISO's and Member Bank's consent will be void.

9.2 **Bankruptcy.**

(a) Merchant will notify ISO immediately if any bankruptcy, insolvency or similar petition is filed by or against Merchant. Merchant acknowledges that this Merchant Agreement constitutes an executory contract to extend financial accommodations as defined in 11 U.S.C. §365(c)(2) and that the Merchant Agreement cannot be assumed or assigned in

the event of bankruptcy. Merchant and ISO agree that in the event of Merchant's bankruptcy, ISO shall be entitled to suspend further performance under this Merchant Agreement.

(b) Merchant acknowledges and agrees that in the event of a bankruptcy proceeding, Merchant must establish a Reserve Account or maintain a previously established and then current Reserve Account in amounts required by ISO and in accordance with any Reserve Account provision specified in this Merchant Agreement. ISO will have the right to setoff against the Reserve Account for any and all obligations which Merchant may owe ISO, without regard as to whether the obligations relate to Transactions initiated or created before or after the filing of the bankruptcy petition.

## 10. AMENDMENTS; WAIVERS.

10.1 **Amendments**. Bank shall have the right to modify or amend the terms and conditions of this Merchant Agreement, including, without limitation, the right to modify, amend, or supplement applicable fees, charges, and/or discounts. Modifications and amendments related to changes to the Operating Rules, changes to the fees charged by the Card Associations, Member Bank, or third parties, or in response to changes in Requirements of Law (collectively, a "Third Party Change") may be made effective immediately, with or without notice. Modifications or amendments unrelated to a Third Party Change shall be effective upon the date specified in a notice to the Merchant (the "Change Notice"), provided that the date shall not be fewer than five business days after the date of such Change Notice. A Change Notice may be reflected as a message attached to Merchant's monthly billing statements. Following the Effective Date, in the event of any modification or amendment not related to a Third Party Change, Merchant shall have the right to terminate this Merchant Agreement, without liability for premature termination pursuant to Section 11.2(d), by providing written notice thereof to ISO, provided that such notice must be given within five business days following the date of the Change Notice. Other than the amendments set forth above, this Merchant Agreement may be amended only in writing signed by Merchant, Member Bank, and ISO.

10.2 **Waivers.** Bank's failure to enforce this Merchant Agreement will not waive Bank's rights under this Merchant Agreement. Waivers of any provision of this Merchant Agreement must be in writing and signed by Bank. A waiver in one instance will not apply to other occasions unless that intent is clear from the signed waiver.

## 11. TERM; TERMINATION.

11.1 **Term/Renewal.** The initial term of this Merchant Agreement shall be for the term of three years (the "Initial Term") commencing on the earlier date of the presentation of the first Transaction, including any test Transaction, by Merchant to Bank or the date Bank approves the Merchant Application; provided, however, that if Merchant is receiving these terms and conditions as an amendment to an existing Merchant Agreement, the amendment shall not affect the then-existing term. By either Merchant's signature on the Merchant Application or Merchant's processing a Transaction with Bank, Merchant confirms acceptance of the Merchant Agreement. At the expiration of the Initial Term, this Merchant Agreement will automatically renew for successive one year periods (each a "Renewal Term" and collectively with the Initial Term the "Term") unless a party provides the other parties with notice of its intent not to renew the Merchant Agreement at least ninety days prior to the expiration of the then current term.

11.2 **Termination.**

(a) <u>Termination without Cause</u>. Member Bank or ISO or Member Bank's or ISO's designated representative may terminate the Merchant Agreement as to all Card types or individually specified Card types, without cause, upon thirty days advance written notice.

(b) <u>Termination for Cause by ISO or Member Bank</u>. Member Bank or ISO or Member Bank's or ISO's designated representative may terminate the Merchant Agreement in its sole and absolute discretion, effective immediately, upon written, electronic or oral notice, to Merchant if Member Bank or ISO reasonably determines that any of the following conditions exists:

(i) Merchant has violated any provision of the Merchant Agreement.

(ii) There is a material adverse change in Merchant's financial condition, material change in Merchant's processing activity, processing activity inconsistent with the Merchant Application, or Member Bank or ISO determines in its sole discretion that Merchant's processing activity could result in a loss to ISO or Merchant Bank.

(iii) A petition in bankruptcy has been filed by or against Merchant, Merchant is generally unable to pay its debts as they become due, a receiver, custodian, trustee, liquidator or similar official is appointed for a substantial portion of Merchant's business, there is a general assignment for the benefit creditors, or the business terminates.

(iv) Any information which Merchant provided to ISO or Merchant Bank, including Merchant Application information, was false, incomplete or misleading when received, or has materially changed since Merchant provided such information.

(v) At any time during the term of the Merchant Agreement, Merchant has had a monthly ratio of Chargebacks to Transactions that ISO or Member Bank, in their sole and absolute discretion, deems excessive.

(vi) There is an overdraft for three days or more in the Settlement Account, or overdrafts in the Settlement Account are otherwise excessive.

(vii) Merchant or any of Merchant's officers or employees has been involved in processing Transactions with ISO or Member Bank or other parties arising from fraudulent or otherwise unauthorized transactions.

(viii) Merchant is or will be unable or unwilling to perform its obligations under the Merchant Agreement or any applicable laws.

(ix) Merchant has failed to pay ISO or Member Bank any amount when due.

(x) Merchant has failed to promptly perform or discharge any obligation under the Merchant Agreement, the Settlement Account or the Reserve Account.

(xi) Any of Merchant's representations or warranties made in connection with the Merchant Agreement was not true or accurate when given.

(xii) Merchant has defaulted on any agreement it has with ISO or Member Bank.

(xiii) ISO or Member Bank is served with legal demand, order or process seeking to attach or garnish any of the provisional credits arising out of or relating to the Merchant Agreement, Merchant's funds or property in ISO's or Member Bank's possession,

(xiv) The Operating Rules are amended in any way such that ISO or Member Bank determines that the continued existence of the Merchant Agreement would cause ISO or Member Bank to be in breach of such Operating Rules.

(xv) Any Guaranty supporting Merchant's obligations is revoked, withdrawn or terminated or altered in any way.

(xvi) Any governmental entity initiates proceedings against, or an investigation regarding, Merchant, or ISO or Member Bank reasonably believes that a governmental entity may do so.

(xvii) If any circumstances arise regarding Merchant or its business that, in ISO's or Member Bank's discretion, make harm or loss of goodwill to ISO, Member Bank or any Card Association likely.

(c) <u>Termination for Cause by Merchant</u>. Merchant may terminate the Merchant Agreement in the event of a material breach of the terms of the Merchant Agreement by ISO, provided Merchant gives ISO written notice of any alleged breach and such breach remains uncured for a period of thirty days following receipt of written notice by the ISO.

(d) <u>Damages for Early Termination</u>.

(i) ISO and Merchant acknowledge and agree that in addition to all other remedies available to ISO under the Merchant Agreement or as otherwise available in law or equity, if the Merchant Agreement is terminated prior to the expiration of the applicable Term of the Merchant Agreement for any reason other than for a material, uncured breach by ISO, Merchant agrees to pay ISO damages (the "Damages") determined by adding an account closure fee as follows (unless a different amount is disclosed on the Merchant Application): (1) $250 for Merchants with less than twelve months remaining from the date of termination to the end of the then current Term, or; (2) $500 for Merchants with more than twelve months remaining, or such portion of the foregoing as may be permitted by applicable law.

(ii) Merchant agrees that such Damages shall also be due to ISO if Merchant discontinues submitting Transactions for processing during the Term for a period of ninety (90) consecutive days, and is not designated on the Merchant Application, or by notice to ISO, as a seasonal merchant or as otherwise agreed to by ISO.

(iii) Merchant acknowledges and agrees that the Damages are not a penalty but rather are a reasonable computation of the financial harm caused by the termination of the Merchant Agreement or the cessation of processing activity by Merchant.

(e) Member Bank's or ISO's rights of termination under the Merchant Agreement are cumulative. A specific right of termination shall not limit any other right of ISO or Member Bank to terminate the Merchant Agreement expressed elsewhere in the Merchant Agreement. Notice of termination may be given orally or in writing, if given orally, shall be confirmed in writing, except as otherwise stated in the Merchant Agreement.

(f) Upon termination, Merchant's rights to complete Transactions and submit them to ISO, and to use Transaction form or formats, promotional material and any other items provided by ISO, will cease. Termination of the Merchant Agreement will not terminate the rights and obligations of Merchant, ISO and Member Bank relating to acts or omissions occurring before termination, including for example, any Processing Fees or other service fees owed to ISO, any Transactions processed for Merchant by ISO (whether before or after termination), Merchant's Chargeback and indemnity obligations, and the Security Interest granted to ISO and Member Bank in the Merchant Agreement.

(g) It is understood that a file for terminated merchants referred to as Member Alert to Control High-Risk Merchants ("**MATCH**"), formerly known as the Terminated Merchant File ("TMF"), is managed and maintained by Mastercard and utilized by the Card Associations and acquiring banks to identify the names of any business (and its principals) that have been terminated for certain reasons, including fraud, depositing excessive counterfeit paper, excessive unauthorized transactions, excessive chargebacks, depositing paper for others (laundering), bankruptcy or breach of a Merchant Agreement. Merchant acknowledges that Member Bank or ISO is required to report Merchant to the **MATCH** (and/or on the Consortium Merchant Negative File (the CMNF) published by Discover® Network) if the Merchant Agreement is terminated for any of the foregoing reasons or other reasons as may be modified by the Card Associations. Merchant agrees and consents to such reporting in the event of the termination of the Merchant Agreement for any of the foregoing reasons, and ISO and Member Bank shall have no liability for such reporting, even in instances where Merchant contends that the foregoing bases for termination do not, in fact, exist.

(h) Sections 2.3, 3, 4, 5, 6, 7, 8.1, 9.1, 10.2, 11, 12, 13, 14, 15, 16.3, 16.4 17, 18, 19, 20, 22, 23, 24, and 25 will survive termination of the Merchant Agreement.

## 12. SETTLEMENT ACCOUNT.

12.1 **Settlement Account Required.** Merchant must maintain a Settlement Account in Merchant's name in satisfactory condition at a depository institution under arrangements acceptable to ISO. The Settlement Account will be subject to the provisions of Section 14 of this Merchant Agreement.

12.2 **Minimum Balance.** Merchant agrees to maintain a minimum balance of funds in the Settlement Account as ISO may specify to Merchant in writing from time to time.

UNIVMERAGMT v21.1020 (ISO)

12.3 **Provisional Credits.** Subject to the terms and conditions of the Merchant Agreement, ISO and Member Bank agree to provisionally credit Merchant for each Transaction that ISO accepts from Merchant. Merchant acknowledges that ISO and Member Bank may reverse or revoke such credit, including in response to any Chargeback. Furthermore, Merchant agrees that ISO and Member Bank may charge or debit the Settlement Account for the amount of any Transaction processed under the Merchant Agreement, or any agreement ISO or Member Bank may have with any Merchant Affiliate, that results in a Chargeback, or for any Credit Transaction Receipt or other reimbursement or Processing Fees or other Merchant obligation to which ISO or Member Bank may be entitled under the Merchant Agreement.

12.4 **Audits and Adjustments.** Merchant agrees that ISO and Member Bank may audit all Transaction calculations and that ISO and Member Bank shall have the right, without notice, to make withdrawals, deposits, or other adjustments to or from the Settlement Account for any deficiencies or overages.

12.5 **Errors and Disputes.** ISO and Member Bank shall be entitled to presume that any amounts the ISO and Member Bank pays to or debits from Merchant are correct unless Merchant disputes these by sending ISO written notice within thirty days of the date of the applicable statement containing any disputed payments or debits. ISO AND MEMBER BANK SHALL NOT BE LIABLE FOR ANY DISPUTED PAYMENTS OR DEBITS, INCLUDING ANY ALLEGEDLY IMPROPER FEE(S), UNDERPAYMENTS, OR BILLING ERRORS, WHICH ARE NOT REPORTED TO ISO IN WRITING WITHIN SUCH THIRTY-DAY PERIOD.

12.6 **POS Equipment.** If Merchant chooses to rent or lease POS Equipment from ISO or utilizes software provided by ISO for use in processing Transactions, Merchant agrees to pay ISO: (a) a pre-determined monthly rental fee; (b) any initial upfront costs as required; and (c) all applicable taxes for such POS Equipment or software utilization.

12.7 **Settlement Account Closure.** If the Settlement Account is closed, ISO or its designated representative may terminate the Merchant Agreement, effective immediately, upon written or oral notice (with written confirmation in the event of oral notice) unless Merchant opens another Settlement Account acceptable to ISO. Merchant may change the Settlement Account upon prior written approval by ISO, which approval will not be unreasonably withheld.

12.8 **ACH Authorization.** Merchant authorizes ISO and Member Bank or their agents or designated representatives to initiate debit and credit entries and adjustments to the Settlement Account or the Reserve Account (described in **Section 13** of the MPA) through the ACH settlement process for amounts due under the Merchant Agreement. This authorization will remain in full force and effect until termination of the Merchant Agreement and the full and final payment of all obligations of Merchant due under the Merchant Agreement. Merchant acknowledges and agrees that ISO and Member Bank will not be liable for any delays in receipt of funds, any failure by Merchant to receive funds, or errors in debit or credit entries caused by Merchant, or third parties, including but not limited to any Card Association or any financial institution.

**13. ADDITIONAL COLLATERAL SECURITY; RESERVE ACCOUNT.**

As a condition for providing Card Program services, Merchant may, at ISO's discretion, be required to provide additional collateral security for Merchant's obligations hereunder, which additional collateral security shall be of a kind, and in amounts, satisfactory to ISO in ISO's sole discretion, and which shall be in addition to all other collateral provided for in Section 14 hereof. ISO may require that all or any part of the additional collateral be deposited in a Reserve Account, in which case the following provisions of this Section 13 shall apply:

13.1 **Reserve During Term of Merchant Agreement.**

(a) Merchant may be required to deposit, or ISO or Member Bank may deposit by deducting from any provisional credit or payment otherwise due to Merchant or from any funds in the Settlement Account or any other deposit account of Merchant, into an account maintained by Member Bank (or at another approved depository institution) (the "Reserve Account"), initially or at any time in the future as requested by ISO, sums sufficient to satisfy Merchant's current and/or future obligations as determined by ISO in its sole and absolute discretion. In lieu of establishing a Reserve Account, ISO may, at its election, demand and receive other forms of additional collateral security, including, without limitation, letters of credit or certificates of deposit. Failure to supply such additional collateral security shall constitute a material breach of this Merchant Agreement.

(b) The Reserve Account will be separate from the Settlement Account. Notwithstanding anything else in this Merchant Agreement to the contrary, Merchant shall have no ownership interest or property rights in the Reserve Account or the funds therein, no right of withdrawal from the Reserve Account, and no right to receive interest on funds held in the Reserve Account. Rather, the Reserve Account shall be under the sole control of Member Bank. Any and all earnings from deposits of Merchant to the Reserve Account shall be the sole property of the ISO.

13.2 **Reserve Account Deposits.**

(a) At any time in ISO's sole and absolute discretion, ISO may (i) designate the minimum balance required to be deposited in the Reserve Account, (ii) require that the amount on deposit in the Reserve Account be increased, (iii) require that Merchant deposit, or ISO or Member Bank may deposit for Merchant into the Reserve Account a percentage of, or a fixed amount from each Transaction processed, or (iv) otherwise determine the amount to be deposited in the Reserve Account. ISO at its sole and absolute discretion may require that each month Merchant deposit, or ISO or Member Bank may deposit by deducting from any provisional credit or payment due to Merchant or from any funds in the Settlement Account or any other deposit account of Merchant sums into the Reserve Account no later than the twentieth day of the month. ISO shall notify Merchant as to the amount of the funds to be deposited each month.

(b) Merchant acknowledges and agrees that the Reserve Account may contain both funds deposited by Merchant and funds of other merchants of the ISO.

13.3 **Deductions from Reserve Account.** If funds are not available in the Settlement Account, ISO or Member Bank without prior notice to Merchant may deduct from any provisional credits or payment due to Merchant that are maintained in the Reserve Account any current or future obligation of Merchant to ISO or Member Bank under the Merchant Agreement, including all Processing Fees, Chargebacks, Credit Transaction Receipts, Damages, and any and all additional fees and obligations under the terms of the Merchant Agreement, and sums sufficient to reimburse ISO and Member Bank for the amount of any liability assessments and charges due the Card Associations.

13.4 **Replenishment of Reserve Account Deficiencies.** Whenever the balance in the Reserve Account is less than the minimum balance required, or is otherwise deficient, ISO or Member Bank may, without prior notice, deposit the deficiency into the Reserve Account by reducing any payment to Merchant required by the Merchant Agreement or deduct the deficiency from the Merchant's or Merchant's Affiliate's Settlement Account or any other deposit account of Merchant or Merchant Affiliate with another depository institution (including accounts of general partners if Merchant is a partnership) and deposit it into the Reserve Account. Merchant authorizes deductions from its accounts by ACH entry, sight draft, preauthorized check, reverse wire, or otherwise as ISO and Member Bank deem appropriate under the circumstances. In addition, Merchant will deposit any deficiency into the Reserve Account within one Business Day after receiving ISO's oral or written request. Without limiting ISO's remedies, Merchant's failure to deposit any deficiency on time will permit ISO, without advance notice, to suspend or cease processing additional Transaction Receipts and Credit Transaction Receipts. ISO will give Merchant written notice of any suspension or cessation of processing.

13.5 **Additions to Reserve Account.** If ISO has reason to believe that Merchant may be liable to customers or to ISO for Chargebacks exceeding the balance in the Reserve Account, ISO or Member Bank may: (a) immediately place in the Reserve Account provisional credits or payments otherwise due to Merchant and/or stop processing transactions for Merchant until such time as the extent of Merchant's obligations to ISO and Member Bank, or Merchant's liability for Chargebacks, or Merchant's liability to customers are known, and ISO no longer deems itself insecure, and/or (b) demand from Merchant an amount that in ISO's judgment is needed to ensure payment of Merchant's obligations and liabilities. Merchant's failure to pay any amount will permit Member Bank or ISO or its designated representative to terminate the Merchant Agreement immediately without advance notice.

13.6 **Reserve Account After Merchant Agreement Terminates.** ISO or Member Bank may continue to hold or deposit funds in the Reserve Account after termination of the Merchant Agreement, regardless of whether termination is by Merchant, ISO or Member Bank. Upon termination of the Merchant Agreement by Merchant, ISO or Member Bank, ISO and Member Bank may retain sufficient funds to satisfy any and all Processing Fees, Chargebacks, Credit Transaction Receipts, Damages, and any and all additional fees, and sums sufficient to reimburse ISO and Member Bank for the amount of any liability assessments and charges due the Card Associations or other obligations or liabilities arising or, in ISO's or Member Bank's discretion, likely to arise under the terms of the Merchant Agreement. If no funds have been deposited into the Reserve Account before termination, ISO, at ISO's option, may notify Merchant to deposit funds into the Reserve Account upon termination of the Merchant Agreement. All provisions which apply to a pre-termination Reserve Account will apply after termination, including replenishment of deficiencies. The funds will be held by ISO and Member Bank or its designated agent for a period of not less than one hundred eighty days from the date of the last Transaction, including, but not limited to a Chargeback, processed under the Merchant Agreement, plus the period of any warranty, guarantee, and/or return policy on goods and/or services sold. ISO and Member Bank will turn over the balance in the Reserve Account to Merchant after ISO reasonably determines that the risk of Chargebacks, Processing Fees or Merchant's liabilities or obligations under the Merchant Agreement has ended and after deducting all amounts that Merchant owes to ISO and Member Bank under the Merchant Agreement or any other agreement.

**14. SECURITY INTEREST.**

14.1 **Merchant's Grant of Security Interest.**

(a) To secure Merchant's performance of its obligations under this Merchant Agreement, and any other agreement with ISO or Member Bank, Merchant grants ISO and Member Bank a security interest in each Transaction and its proceeds, provisional credits, the Settlement Account, the Reserve Account (without in any way suggesting that Merchant has ownership interest or property rights in the Reserve Account), and any other deposit account of Merchant with a financial institution, whether now existing or established in the future, and in the proceeds of all those accounts, any funds due to Merchant from ISO or Member Bank and any of Merchant's property held by ISO or Member Bank. ISO and Member Bank may enforce these security interests without notice or demand. The security interests granted under this Merchant Agreement will continue after the Merchant Agreement terminates, until Merchant satisfies all its obligations to ISO and Member Bank.

(b) Furthermore, and with respect to any security interests granted herein, ISO and Member Bank will have all rights afforded under the Uniform Commercial Code, as the same may, from time to time, be in effect in the State of Georgia; provided, however, in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of the security interests granted herein is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of Georgia, then ISO and Member Bank will have all rights afforded under the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions relating to such attachment, perfection or priority of the security interests, as well as any other applicable law.

14.2 **Perfection of Security Interest.** Upon request of ISO, Merchant will execute one or more financing statements or other documents to evidence the security interests granted to ISO and Member Bank under this Section 14. Merchant shall cooperate with ISO in obtaining any control agreement or similar agreement with a depository bank necessary to perfect the security interests granted herein. In addition, Merchant agrees that its signature on the Merchant Application will be considered Merchant's signature agreeing to any control agreement as defined in Article 9 of the Uniform Commercial Code among Merchant, ISO, Member Bank and any other financial institution under which ISO, Member Bank, Merchant and any other financial institution agree to the disposition of funds in the Settlement Account, the Reserve Account or any other deposit account without further consent by Merchant.

**15. CUSTOMER CLAIMS.** To the extent that ISO or Member Bank has paid or may become liable for a Chargeback or Credit Transaction Receipt, Merchant will be obligated to reimburse ISO and Member Bank for any sums ISO or Member Bank pays or for which ISO or Member Bank is liable. If Merchant does not reimburse ISO or Member Bank, ISO and Member Bank will have all of the rights and remedies of Cardholders, including the Cardholders' rights under 11 U.S.C. §507(a)(6). ISO and Member Bank may assert any claim on behalf of a Cardholder individually or on behalf of all Cardholders as a class.

**16. PROCESSING FEES.**

16.1 **Fee Schedule.** Merchant will pay Processing Fees in the amount specified in the Fee Schedule attached to the Merchant Application or as otherwise provided for in this Merchant Agreement or an Addendum thereto. Monthly recurring Processing Fees will be assessed upon approval of the Merchant Application. ISO may amend, supplement, modify, or increase the Processing Fees, including, without limitation, introducing new products or services, pursuant to Section 10.1 of this Merchant Agreement.

16.2 **Card Association Actions.** ISO will not be required to provide Merchant with fifteen days' notice of an increase in Processing Fees in the event that any Card Association, or any other entity having such authority takes any action that increases the Processing Fees.

16.3 **Government and Regulatory Actions.** ISO will not be required to provide Merchant with fifteen days' notice for any increase in Processing Fees resulting from any fine, charge, fee or cost incurred in connection with any state, federal or other regulatory action, change in laws or regulations or escheatment of Merchant's funds.

16.4 **Payment.** Processing Fees and other service charges, obligations or liabilities owed by Merchant to ISO or Member Bank under the Merchant Agreement may be deducted by ISO or Member Bank from amounts due Merchant, or from the Settlement Account or from the Reserve Account. Merchant will pay the amounts due by the next Business Day if sufficient funds are not available in the Settlement Account.

**17. INDEMNIFICATION; LIMITATION OF LIABILITY; ~~WARRANTY~~.**

17.1 **Indemnification.** Merchant shall indemnify each of ISO and Member Bank, including their respective officers, directors, employees, independent sales organizations ("ISOs"), and agents, against and hold them harmless from any and all claims, demands, settlements, losses, damages, liabilities, costs and expenses of any kind (including reasonable attorney's fees) of any party arising from or based upon any actual or alleged act or omission of Merchant, Merchant's employees, Merchant's designated representatives or agents, Merchant Servicers or Merchant's Agent(s) in connection with or arising out of this Merchant Agreement, the duties to be performed by Merchant pursuant to the Merchant Agreement, any Transactions which Merchant submits to ISO (including Chargebacks), or Merchant's actual or alleged violation of the Operating Rules or any Requirements of Law. In the event that ISO or Member Bank is made a party to any litigation, proceeding, arbitration, bankruptcy proceeding, or other legal process (collectively "Actions") commenced by any third party, Merchant shall protect and hold each of ISO and Member Bank harmless from and with respect to the Actions and shall indemnify such party from and against all costs, expenses, and attorney's fees, including in-house legal fees, incurred or paid in connection with the Action, together with any judgments, settlements, losses, damages or other liabilities. Merchant shall indemnify, defend, and hold harmless each of ISO and Member Bank from and against any actual or alleged hacking, infiltration, or compromise of Merchant's systems or the systems of Merchant, Merchant Servicers or Merchant's Agent(s), designated representatives, or other agents.

17.2 **Limitation of Liability.** Each of ISO and Member Bank will not accept responsibility for errors, acts, or failure to act by others, including but not limited to, Merchant Servicers, Agents, third party suppliers of software, equipment or services; or, banks, communication common carriers, data ISOs or clearinghouses through which transactions may be passed, originated and/or authorized. Each of ISO and Member Bank will not be responsible for any loss, liability or delay caused by fires, earthquakes, war, civil disturbances, power surges or failures, acts of governments, acts of terrorism, labor disputes, failures in communication networks, legal constraints or other events beyond the control of Bank. Each of ISO and Member Bank undertakes no duties to Merchant other than the duties expressly provided for in the Merchant Agreement, and any and all other or additional duties that may be imposed upon ISO or Member Bank in law or equity are hereby irrevocably waived and released to the maximum extent permitted by law. **IN ANY EVENT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE CUMULATIVE LIABILITY OF EACH OF ISO AND MEMBER BANK, AS WELL AS THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS, TO MERCHANT, WHETHER ARISING IN CONTRACT, TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE AND STRICT LIABILITY) OR OTHERWISE, SHALL NOT EXCEED THE LESSER OF $10,000 OR, THE AMOUNT EQUAL TO THE AGGREGATE OF MONTHLY NET PROCESSING FEES PAID BY MERCHANT IN THE THREE MONTH PERIOD PRIOR TO THE MONTH THAT THE INCIDENT GIVING RISE TO LIABILITY OCCURRED.** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT SHALL EITHER ISO OR MEMBER BANK OR THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS BE LIABLE FOR SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR EXEMPLARY DAMAGES OR FOR ANY INTERRUPTION OR LOSS OF USE, DATA, BUSINESS OR PROFITS, WHETHER OR NOT SUCH LOSS OR DAMAGES WERE FORESEEABLE OR ISO OR MEMBER BANK WAS ADVISED OF THE POSSIBILITY THEREOF AND REGARDLESS OF WHETHER ANY LIMITED REMEDY HEREIN FAILS OF ITS ESSENTIAL PURPOSE.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ISO AND MEMBER BANK SPECIFICALLY DISCLAIM ALL WARRANTIES OF ANY KIND, EXPRESSED OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT OF ANY INTELLECTUAL PROPERTY RIGHT WITH RESPECT TO THE SERVICES PROVIDED HEREUNDER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ISO AND MEMBER BANK DO NOT GUARANTEE OR WARRANT THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

**18.** NOTICES. Each notice required by the Merchant Agreement will be in writing (hard copy or electronic), except as otherwise stated in the Merchant Agreement, and will be effective when delivered, (a) to Member Bank at the address designated on the Merchant Application, and the return address on Merchant's Card processing statements, (b) to ISO at the address designated on the Merchant Application and (c) to Merchant at Merchant's address to which ISO mails Merchant's statements or at the electronic mail address provided by Merchant in the Merchant Application, or at such other address as any party may provide by written notice to the other parties. Any address Merchant designates may also be the address to which ISO mails Merchant's statements. Where applicable, delivery by facsimile transmission or electronic mail will be considered effective when the sender receives electronic confirmation of the transmission.

**19. GEORGIA LAW; JURISDICTION; VENUE.** Merchant's offer to enter into this Merchant Agreement is made in Muscogee County, Georgia; this Merchant Agreement shall be performed by Merchant in Muscogee County, Georgia and governed by Georgia law, excluding its conflict of laws rules. Merchant and Guarantor agree to bring any claim or action relating to the Merchant Agreement in binding arbitration as set forth in Section 202 below. Any matters not otherwise subject to arbitration (such as, by way of example only, injunctive relief, action to recover any monetary losses or damages from unpaid obligations of the Merchant under the Merchant Agreement, or claims to enforce an arbitration award), shall be brought in the state or federal courts located in Muscogee County, Georgia. All parties irrevocably and unconditionally submit to the jurisdiction of such courts with respect to any such action. In the event that ISO or Member Bank is required to resolve a dispute with Merchant that requires any action under this provision, Merchant hereby agrees and consents to receive service of process by certified mail.

**20. ATTORNEY FEES; ARBITRATION; CLASS ACTION WAIVER.**

20.1 **Attorney Fees.** Merchant and/or Guarantor will be liable for and will indemnify and reimburse ISO and Member Bank for all attorneys' fees, including in-house legal fees, and other costs and expenses paid or incurred by ISO or Member Bank in the enforcement of this Merchant Agreement or in matters relating to this Merchant Agreement, or arising from any breach by Merchant of this Merchant Agreement, or any other wrongdoing by Merchant or Guarantor. In the event ISO or Member Bank must engage in any recovery or collection efforts to collect any amounts due from Merchant to ISO or Member Bank, Merchant will reimburse ISO and Member Bank for all fees and expenses incurred in such collection, plus reasonable administrative fees and expenses.

20.2 **Arbitration**.

**NOTE: PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS AND THE RESOLUTION OF DISPUTES**

ANY DISPUTE OR CLAIM ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT OR THE RELATIONSHIPS WHICH RESULT FROM THIS AGREEMENT SHALL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT; HOWEVER, MERCHANT MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF (1) THE CLAIMS QUALIFY FOR SMALL CLAIMS COURT; (2) THE MATTER REMAINS IN SMALL CLAIMS COURT AT ALL TIMES; AND (3) THE MATTER PROCEEDS ONLY ON AN INDIVIDUAL (NOT A CLASS OR REPRESENTATIVE BASIS). ARBITRATION DOES NOT PROCEED BEFORE A JURY AND MAY INVOLVE MORE LIMITED DISCOVERY THAN A COURT PROCEEDING. ANY ARBITRATION UNDER THIS AGREEMENT WILL ONLY BE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS, CLASS ACTIONS, PRIVATE ATTORNEY GENERAL ACTIONS, AND CONSOLIDATION WITH OTHER ARBITRATIONS ARE NOT PERMITTED.

The arbitrator's award or decision will not affect issues or claims involved in any proceeding between ISO or Member Bank and any person or entity who is not a party to the arbitration. The arbitrator may award monetary, declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. The arbitrator's award, if any, will not apply to any person or entity that is not a party to the arbitration. However, nothing in this Section or Merchant Agreement shall preclude any party from bringing issues to the attention of federal, state or local agencies. Such agencies can, if the law allows, seek relief on your behalf.

Further, notwithstanding the foregoing, nothing in this Section or this Merchant Agreement prohibits a party from applying to a court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other equitable relief.

The Federal Arbitration Act (9 U.S.C. § 1 et seq.) governs the interpretation and enforcement of the arbitration provisions of this section. Arbitration will be administered by JAMS (www.jamsadr.com). For claims greater than $250,000, the JAMS Comprehensive Arbitration Rules and Procedures in effect at the time the arbitration is commenced will apply (if no such rules are in effect, JAMS default arbitration rules shall apply). For claims equal to or less than $250,000, the JAMS Streamlined Arbitration Rules and Procedures in effect at the time the arbitration is commenced will apply (if no such rules are in effect, JAMS default arbitration rules shall apply). Unless the arbitrator(s) determine that justice or fairness require otherwise: (i) any arbitration will proceed in Muscogee County, Georgia (although, for the convenience of the Merchant or Guarantor (as applicable), any party or its counsel may participate telephonically); and (ii) the arbitrator(s) will oversee limited discovery, taking into account the amount in controversy and the parties' desire to keep proceedings cost-effective and efficient. Any decision rendered in any arbitration proceeding shall be final and binding on each of the parties to the arbitration and judgment may be entered thereon in any court of competent jurisdiction. The parties will maintain the confidential nature of the arbitration proceeding except as may be necessary to enforce any award or to comply with applicable law.

If the total damage claims in an arbitration are $10,000 or less, not including Merchant's attorney fees ("Small Arbitration Claim"), the arbitrator may, if the MERCHANT, prevails, award the Merchant reasonable attorney fees, expert fees and costs (separate from Arbitration Costs as defined below), but may not grant ISO its attorney fees, expert fees or costs (separate from Arbitration Costs) unless the arbitrator determines that the Merchant's claim was frivolous or brought in bad faith. In a Small Arbitration Claim case, ISO will pay all arbitration filing, administrative and arbitrator costs (together, "Arbitration Costs"). The Merchant must submit any request for payment of Arbitration Costs to JAMS at the same time the Merchant submits its Demand for Arbitration. However, if the Merchant wants ISO to advance the Arbitration Costs for a Small Arbitration Claim before filing, ISO will do so at the Merchant's written request which must be sent to ISO at the address in Section 18 above.

If the Merchant's total damage claims in an arbitration exceed $10,000, not including the Merchant's attorney fees ("Large Arbitration Claim"), the arbitrator may award the prevailing party its reasonable attorneys' fees and costs, or it may apportion attorneys' fees and costs between the Merchant and ISO (such fees and costs being separate from Arbitration Costs). In a Large Arbitration Claim case, if the Merchant is able to demonstrate that the Arbitration Costs will be prohibitive as compared to the costs of litigation, ISO will pay as much of the Arbitration Costs as the arbitrator deems necessary to prevent the arbitration from being cost-prohibitive.

Merchant hereby agrees that claims applicable to American Express may be resolved through arbitration as further described in the American Express Merchant Requirements Guide (the "American Express Guide").

A court, not the arbitrator, will decide any questions regarding the validity, scope and/or enforceability of this Section
    20.3 **Class Action Waiver**.

**NOTE: PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS AND THE RESOLUTION OF DISPUTES**

MERCHANT AND GUARANTOR (IF APPLICABLE) ACKNOWLEDGE AND AGREE THAT ALL DISPUTES ARISING OUT OF OR RELATED TO THIS MERCHANT AGREEMENT SHALL BE RESOLVED ON AN INDIVIDUAL BASIS WITHOUT RESORT TO ANY FORM OF CLASS ACTION AND SHALL NOT BE CONSOLIDATED WITH THE CLAIMS OF ANY OTHER PARTIES.

**21. FINAL AGREEMENT.** This Merchant Agreement and all applicable Addenda attached hereto, is the complete and final agreement between Merchant, ISO and Member Bank for the Card Program services covered by this Merchant Agreement and supersedes all prior or contemporaneous negotiations, stipulations or agreements between them with respect thereto. In the event of any conflict or inconsistency between this Merchant Agreement and any other agreement between ISO or any of its affiliates and Member Bank or any of its affiliates (but not Merchant), such other agreement shall control with respect to such conflict or inconsistency. If any provision of this Merchant Agreement is invalid or unenforceable, the other provisions remain effective.

**22. SEVERABILITY.** If any term or provision of this Merchant Agreement is found to be invalid, illegal or otherwise unenforceable, the same shall not affect the other terms or provisions hereof or the whole of this Merchant Agreement, but such terms or provisions shall be deemed modified to the extent necessary to render such term or provision enforceable, and the rights and obligations of the parties shall be construed and enforced accordingly, preserving to the fullest permissible extent the intent and agreements of the parties herein set forth. No part or portion of 20.2 (Arbitration) or Section 20.3 (Class Action Waiver) shall be deemed so integral to either this Agreement as a whole, or to the remaining parts or portions of Sections 20.2 or 20.3 hereof, that the unenforceability of that part or portion should have any impact on or render the remainder unenforceable.

**23. CONTINUING GUARANTY.**

23.1 As a primary inducement to ISO to enter into the Merchant Agreement, and to approve the Merchant Application of Merchant, the Guarantor(s), individually and severally, who signed on the Guarantor signature line(s) on the Merchant Application, agree to be bound by all terms and provisions of the Merchant Agreement to the same extent and in the same manner as Merchant, and unconditionally and irrevocably, personally guarantee the continuing full and faithful performance and payment by Merchant of each and all of Merchant's duties and obligations to ISO and Member Bank under the Merchant Agreement or any other agreement currently in effect or in the future entered into between Merchant or its principals and ISO or Member Bank, as such agreements now exist or are amended from time to time, with or without notice to Guarantor(s).

23.2 Merchant and Guarantor(s) further agree to be bound by the terms and provisions of any Merchant Agreement between ISO or Member Bank and any Merchant Affiliate, regardless of whether such agreement currently exists or is executed, amended or supplement at some future date. Merchant and Guarantor(s) unconditionally and irrevocably guarantee the full payment and performance of each and all duties and obligations owed to ISO or Member Bank by Merchant Affiliate pursuant to any Merchant Agreement. The provisions of Section 23.3 apply to the guarantee by Merchant and Guarantor(s) of the Merchant Affiliate's obligations to ISO or Member Bank under any Merchant Card Processing Agreement.

23.3 Guarantor(s) understands that ISO, without notice to Guarantor(s), may from time to time renew or extend the Merchant Agreement, modify rates, limits, charges and fees, or modify the amount or type of services provided to Merchant all of which may increase the Guarantor's obligations under this Guaranty. Guarantor(s) further understands that ISO may proceed directly against Guarantor(s) without first exhausting ISO's remedies against Merchant, any other person or entity responsible to ISO or any security held by ISO. This Guaranty is a continuing guaranty and will not be discharged or affected by the release or discharge of Merchant or the death of the Guarantor(s). This Guaranty will bind all heirs, administrators, and representatives of the Guarantor(s) and may be enforced by or for the benefit of any successor of ISO. To the fullest extent permissible under applicable law, Guarantor(s) waives any and all rights of subrogation, reimbursement or indemnity derived from Merchant, all other rights and defenses available to Merchant, and all other rights and defenses available to Guarantor(s). This Guaranty may not be otherwise revoked, suspended, withdrawn or terminated without the express written consent of ISO.

**24. AUTHORIZED USERS.** To the extent Merchant is granted electronic access to any systems or portals of ISO, Merchant shall be responsible for (i) ensuring that only authorized users of such systems or portals access the same; (ii) keeping all logins, user names, and passwords confidential; and (iii) promptly notifying ISO of any unauthorized access of such logins, user names, or passwords; and (iv) all actions taken by anyone using such access, logins, user names, or passwords, even if such actions were not authorized by Merchant.

**25. TAXES.** Merchant shall be solely responsible for the calculation, collection, and remittance of any sales tax imposed by any government authority in connection with the provision of Merchant's goods or services. Unless Merchant is otherwise exempt (and can prove such exemption to ISO's satisfaction), Merchant agrees to pay all taxes imposed on the services, equipment, or other property provided to Merchant pursuant to this Agreement.

**26. RELATIONSHIP OF THE PARTIES.** Merchant designates ISO as its agent to receive payments for transactions processed pursuant to this Card Services Agreement. ISO, however, shall not be considered a partner or fiduciary to Merchant, and nothing in this Merchant Agreement or the rendition of services related to this Merchant Agreement shall be deemed to create a joint venture, partnership, or fiduciary relationship between or among the parties. Rather, the relationships between Member Bank and Merchant, and between ISO and Merchant, are arm's length commercial relationships.