**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re:<br><br>Jack A. Glasser,<br><br>                    Debtor. | **Bankruptcy No.: 22-30244**<br><br>**Chapter 7** |
| Messiahic, Inc.<br>d/b/a PayJunction,<br><br>                  Plaintiff,<br>  vs.<br><br>Jack A. Glasser,<br><br>                  Defendant. | **Adversary No. 23-07006** |

**MEMORANDUM IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Messiahic, Inc. d/b/a PayJunction ("Plaintiff" or "PayJunction"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure Rule 56, hereby moves the Court for entry of partial summary judgment against Jack A. Glasser ("Defendant" or "Glasser"). As grounds for this Motion, PayJunction states as follows:

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. At all relevant times, Glasser owned and operated Glasser Images, LLC ("Glasser Images" or the "Company"), a Bismarck-based company that provided wedding photography and videography services.

2. PayJunction provided credit card processing services to Glasser Images pursuant to a Merchant Services Agreement. (*See* Declaration of Mathew Odirakallumkal ("Odirakallumkal Decl.") ¶ 3.)

157666464.3

3. On December 4, 2017, Glasser executed a Merchant Application ("Application") incorporating Terms & Conditions ("T&Cs") (collectively, the "Merchant Services Agreement") on behalf of Glasser Images and in his personal capacity to signify his personal guaranty ("Guaranty") of the Company's obligations to PayJunction. (*See* Dkts. 1-1, 1-2.) Under the Merchant Services Agreement, PayJunction, as the payment processor and independent sales organization ("ISO"), provided payment processing services to Glasser Images. (*Id.*) Under Section 15 of the T&Cs, to the extent that PayJunction has paid or may become liable for a chargeback, Glasser Images is obligated to reimburse PayJunction for any sums paid by PayJunction or for which PayJunction is liable. (*Id.*) Notably, **PayJunction has all of the rights and remedies of the cardholders. PayJunction may also assert any claim on behalf of a credit cardholder individually or on behalf of all cardholders as a class**. (*Id.*)

4. Glasser and his domestic partner, Jace Schacher ("Schacher"), ran Glasser Images for their personal benefit, and did not observe corporate formalities. Rather, Glasser and Schacher treated Glasser Images as their personal piggybank and took fictitious loans from the Company in order to fund their lavish lifestyle. (*See* Dkt. 1-3; *see also* Declaration of Berly Nelson ("Nelson Decl." Ex. 1, Deposition of Jack Glasser at 30:3-10.) Although Glasser failed to adequately capitalize Glasser Images, and knew that Glasser Images was insolvent, Glasser implemented a business model for Glasser Images that required customers to prepay for services by making advanced credit card payments for services to be rendered in the future. (*See* Nelson Decl. Ex 1 at 50:17-20.) The card payments were processed by PayJunction. (Odirakallumkal Decl. ¶ 3.)

5. At all relevant times, Glasser was attempting to prop up Glasser Images with loans from financial institutions, friends, and family. (Nelson Decl. Ex. 1 at 66:24-67:3, 73:5-8, 101:10-13.) Glasser knew that Glasser Images did not generate sufficient revenue to fund operations, and

157666464.3

that Glasser Images would not be able to fulfill its obligations to customers without incurring further debt, which Glasser Images lacked the ability to repay. (*Id.*)

6. Glasser knew that Glasser Images' failure to deliver on its promise to provide wedding photography and videography services in accordance with Glasser Images' customer contracts without having the ability to issue refunds, would result in credit card chargeback claims for which PayJunction would be liable. (*Id.* at 56:5-25, 81:16-18.) As Glasser's scheme began to unravel, he caused Glasser Images to take payment from customers knowing that it would not perform, thereby shifting Glasser Images' liability to customers onto PayJunction. (*Id.*)

7. Under Glasser's direction and control, and due to Glasser's desperation for cash to fund business and personal expenses, Glasser caused Glasser Images to aggressively collect payments from customers for future services during the time the Company was in a precarious financial condition and until the time Glasser caused Glasser Images to close its doors on October 7, 2022. (*See* Dkt. 56, Glasser's Ans. at ¶ 46 (admitting date of closure of Glasser Images).)

8. After reading news reports that Glasser Images had closed its doors, and received more than 500 customer complaints in North Dakota, South Dakota, Minnesota, Colorado and other states, and that Glasser Images was under investigation by the North Dakota Attorney General's Office, PayJunction began experiencing chargeback claims at an alarming rate. (Odirakallumkal Decl. ¶ 5.)

9. PayJunction immediately reached out to Glasser to provide information and assistance to determine whether the chargeback claims could be challenged in whole or in part – advising Glasser that Glasser Images' failure to timely challenge an improper or excessive chargeback claim (usually at least seven (7) business days from the notification) would result in a valid claim that could not later be challenged. (Odirakallumkal Decl. ¶ 6.)

3

10. However, Glasser ignored PayJunction's requests and refused to provide assistance to PayJunction. (*Id.*)

11. Shortly thereafter, PayJunction filed a complaint against Glasser Images and Glasser in the United Stated District Court for the Middle District of Georgia ("Georgia District Court") and obtained an injunction ordering them to cooperate with PayJunction. (Odirakallumkal Decl. Exs. 1,2, Georgia Compl. and Injunction Order.)

12. Glasser failed to comply with the injunction, resulting in increased chargeback claims, which could not be challenged. (*Id.* ¶ 7.)

13. Ultimately, on March 3, 2022, the Georgia District Court entered judgment in favor of PayJunction against Glasser and Glasser Images in the amount of not less than $977,241.14, and converted the preliminary injunction into a permanent injunction, which judgment was subsequently registered by the Clerk of the Morton County District Court, Mandan, North Dakota, on March 22, 2022 (the "Georgia Judgment"). (*Id.* Ex. 3.)

14. On August 14, 2022 (the "Petition Date"), Glasser and Schacher filed voluntary Chapter 7 petitions.

### *The Consumer Fraud Action Commenced by the North Dakota Attorney General*

15. The North Dakota Attorney General commenced an action (the "AG Action") against Glasser, Schacher and Glasser Images (together, the "Glasser Defendants") alleging that the Glasser Defendants violated North Dakota's consumer fraud law and N.D.C.C. § 51-15-02, engaged in deceptive acts or practices and directly or indirectly made false statements, false promises, or misrepresentations with the intent that others rely thereon, in violation of N.D.C.C. § 51-15-02, while engaging in the sale or advertisement of photography services or any other merchandise. (Nelson Decl. Ex. 2, AG Compl.)

4

16. Ultimately, the Glasser Defendants including Glasser entered into a Consent Judgment admitting the Attorney General's factual allegations concerning the fraud they perpetrated on Glasser Images' customers and stipulating to the entry of a non-dischargeable judgment based on their fraud under 11 U.S.C. §§ 523(a)(2)(A) and (a)(7). (*See* Dkt. 1-3.)

17. Shortly thereafter, and as required under the terms of the Consent Judgment, this Court entered stipulated judgments against Glasser and Schacher determining that such claims were non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(7) (the "AG Nondischargeability Judgment"). (Nelson Decl. Ex. 3.)

### *PayJunction's Adversary Proceeding Against Glasser*

18. On May 12, 2023, PayJunction timely commenced this Adversary Proceeding by filing a complaint against Glasser to determine the nondischargeability of PayJunction's claim pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) (the "Complaint"). (Dkt. 1.)

19. In this Adversary Proceeding, PayJunction alleges, among other things, that Glasser incurred and caused his business, Glasser Images, to incur debt owed to PayJunction of at least $977,241.14, plus post-judgment interest, attorney's fees and processing fees (the exact amount to be proven at trial) by, among other things: (1) soliciting large advance payments from customers to take and provide primarily wedding photography and videography services with the knowledge and intent that such products, services, or refunds would not be provided, delivered, or made to Glasser Images' customers; (2) soliciting large advance payments from customers without disclosing that it was undercapitalized and had been undercapitalized for years before its closure; (3) soliciting large advance payments from customers without disclosing that Glasser and Schacher were spending Glasser Images' funds for personal expenses and to fund their lavish lifestyle; (4) knowingly and willfully failing to provide products, services, or refunds to customers that Glasser

5

157666464.3

Images advertised and promised to customers who had made payment therefor; and (5) accepting advanced card payments from customers with the knowledge that PayJunction would be legally obligated to return credit card payments to customers for photography or videography services that Glasser Images could not and would not deliver. (*See generally* Dkt. 1.)

20.     As more particularly described herein, PayJunction's claims are based on the same transactions or occurrences and common nucleus of operative facts to which Glasser has admitted, and the District Court has found, violated North Dakota's consumer fraud statutes and established grounds for the entry of judgments of non-dischargeability under 11 U.S.C. § 523 by this Court. (Odirakallumkal Decl. ¶ 9-13; *see also* Declaration of Authenticity of Business Records of AG Investigator Crystal Kraft ("AG Decl.") Ex. A (spreadsheet of overlapping claims).)

21.     As set forth in the Odirakallumkal Declaration filed concurrently herewith, PayJunction has paid $402,885.17 in Chargebacks to approximately 31.6% of the individuals identified by the Attorney General as victims of Glasser Images entitled to restitution for the claims asserted by the North Dakota Attorney General, representing approximately 43% of the amount of total Chargebacks paid by PayJunction, which this Court has determined to be nondischargeable under 11 U.S.C. § 523(a)(2). (*Odirakallumkal Decl.* ¶ 13; *see also id.* Ex. 4.)

22.     Glasser fraudulently induced customers of Glasser Images to prepay for goods and services with their credit cards at a time when Glasser knew that Glasser Images could not or would not perform. (Dkt. 1-3.) Glasser's acts and omissions further defrauded PayJunction by enabling Glasser Images to accept customer card payments, often for Glasser and Schacher's

6

personal enrichment, knowing that PayJunction would be liable for customer chargebacks. (*Id.*) Accordingly, Glasser's' debt to PayJunction is nondischargeable under 11 U.S.C. § 523(a)(2)(A).[1]

## ARGUMENT

### I. STANDARD

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law." *Cont'l Res. Inc. v. Rink Constr., Inc.*, 352 F. Supp. 3d 928, 932 (D.N.D. 2018) (citing *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007)); *see also* Fed. R. Civ. P. 56(a)).

Courts in this Circuit have laid out the following analysis relating to each party's burden when bringing a motion for summary judgment:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Rayburn v. Scull Constr. Serv., Inc.*, No. 1:16-CV-00062-BRW, 2017 WL 8682355, at *1 (D.N.D. Nov. 7, 2017) (citing *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988)). On

---

[1] In addition, Glasser ignored PayJunction's repeated requests for assistance and information needed to timely challenge chargeback claims as ordered by the United States District Court for the District of Georgia. Glasser's acts and omissions were done willfully and maliciously and with the intent to injure PayJunction. Accordingly, Glasser's debt to PayJunction is also non-dischargeable under 11 U.S.C. § 523(a)(6). The claims against Glasser for nondischargeability under § 523(a)(6) are not included in this motion for partial summary judgment. Such claims will be addressed at trial.

157666464.3

summary judgment, while the Court views the facts in the light most favorable to the non-moving party, "[o]nly disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.*

## II. THE DOCTRINE OF COLLATERAL ESTOPPEL REQUIRES SUMMARY JUDGMENT IN PAYJUNCTION'S FAVOR.

PayJunction is entitled to summary judgment because there is already a full and final order on the merits of the same nondischargeable fraud claim against Glasser under 11 U.S.C. § 523(a)(2)(A), and Glasser's defenses[2]. When analyzing whether the doctrine of collateral estoppel applies to a prior judgment, courts consider whether the party against whom collateral estoppel is asserted received a "full and fair" opportunity to litigate the issue in the prior adjudication. *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991) (citing *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983) ). "The purpose of collateral estoppel is not to foreclose a party of its right to put contested facts before the Court, but is to prevent their submission twice." *In re Yagow*, 62 B.R. 73, 78 (Bankr. D.N.D. 1986) (citation omitted).

> The party asserting collateral estoppel has the burden of proving the following elements:
>
> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit;
> (2) the issue sought to be precluded must be the same as the issue involved in the prior action;
> (3) the issue sought to be precluded must have been actually litigated in the prior action;

---

[2] Glasser's answer to the Complaint did not include any affirmative defenses.

(4) the issue sought to be precluded must have been determined by a valid and final judgment; and

(5) the determination in the prior action must have been essential to the prior judgment.

*Sells v. Porter (In re Porter)*, 539 F.3d 889, 894 (8th Cir. 2008) (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)).

In addition, consent judgments are entitled to collateral estoppel effect if the parties to a consent judgment indicated clearly the intention that the decree to be entered shall not only terminate the litigation of claims but, also, determine finally certain issues, then their intention should be effectuated. *See In re Knodle*, No. 95-30081, 1995 WL 1943413, at *3 (Bankr. D.N.D. Sept. 1, 1995) ("Even where a consent judgment is devoid of supporting facts, it is preclusive if the parties to a consent judgment intended to be bound"); *Goff v. IRS (In re Goff )*, 180 B.R. 193, 199 (Bankr. W.D. Tenn. 1995) ("[W]hen a consent decree incorporates factual findings necessary to a judgment, those findings are considered actually litigated for collateral estoppel purposes."); *see also Klingman v. Levinson,* 831 F.2d 1292, 1296, n. 3 (7th Cir. 1987) (holding that summary judgment is appropriate where a debtor enters into a consent decree in state court and the statements in the consent decree satisfy the requirements for nondischargeability under section 523(a)(4)).

Here, all elements weigh in favor of entry of a judgment of non-dischargeability against Glasser in this adversary proceeding.

    **1.**    ***Glasser was a Party to the AG Action.***

First, there can be no doubt that Glasser was party to the AG Action, satisfying the first element. (*See* Nelson Decl. Ex. 1.) In addition, although not required for collateral estoppel purposes, the AG prosecuted the AG Action and obtained the Consent Judgment and the AG Nondischargeability Judgment on behalf of the consumers who were victims of Glasser's fraud.

9

(*See* AG Decl. ¶ 4.) As set forth in the Odirakallumkal Declaration filed concurrently herewith, PayJunction paid $402,885.17 in Chargebacks to approximately 31.6% of the individuals identified as victims of Glasser Images entitled to restitution for the claims asserted by the North Dakota Attorney General, representing approximately 43% of the amount of total Chargebacks paid by PayJunction, which this Court has previously determined to be nondischargeable under 11 U.S.C. § 523(a)(2). (Odirakallumkal Decl. ¶ 13; *see also id.* Ex. 4.). Significantly, Section 15 of the Terms & Conditions of the Merchant Services Agreement executed by Glasser on behalf of the Company and in his personal capacity provides that PayJunction (a) has all of the rights and remedies of the cardholders, and (b) may also assert any claim on behalf of a credit cardholder individually or on behalf of all cardholders as a class. (Dkts. 1-1, 1-2.) Accordingly, the AG Consent Judgment and AG Nondischargeability Judgment against Glasser were obtained for the benefit of the customer-victims of Glasser Images and PayJunction stands in the shoes of the very same customer-victims pursuant to the Merchant Services Agreement.

2. ***The Issues Sought to be Precluded in this Adversary Proceeding are the Same Issues Involved in the AG Action.***

The second factor is whether the issues litigated in the AG Action are identical to the factual issues and claims in this Adversary Proceeding. In analyzing this element, the Court considers whether the issues addressed in the earlier action involved the same controlling or material facts and applicable legal standards as the AG's section 523(a)(2)(A) cause of action. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 153 (2015) (issue preclusion applies where "the issues in the two cases are indeed identical and the other rules of collateral estoppel are carefully observed.") (citation omitted); *Turner v. U.S. Dep't of Justice*, 815 F.3d 1108, 1111–12 (8th Cir. 2016) (precluding a party from relitigating subject matter jurisdiction even though there were some factual differences between the first and second proceedings because these differences

10

did not affect the common question and the factfinders relied on the same basis for subject matter jurisdiction); *In re Porter*, 539 F.3d at 894 (finding that defendant/debtor was collaterally estopped from relitigating facts determined by a jury in a subsequent bankruptcy adversary case alleging his conduct was willful and malicious under section 523(a)(6) of the Bankruptcy Code).

Here, the material facts between the AG Action and this Adversary Proceeding are identical. In fact, it is the same fraudulent scheme employed by Glasser, his company, Glasser Images, and his domestic partner Jace Schacher, that led to the North Dakota Attorney General's investigation and prosecution of the AG Action and that underpin the nondischargeable fraud claims asserted by PayJunction against Glasser in this Adversary Proceeding. Glasser's fraudulent conduct includes, but is not limited to: (1) using business funds for personal expenditures; (2) concealing his use of business funds for personal expenditures by manipulating his financial records (as well as directly representing otherwise); (3) providing false financial records to creditors; (4) providing false information to government agencies to obtain pandemic relief funds; (5) not paying independent contractors; (6) obtaining funds by falsely claiming he would imminently receive government funds; and (7) issuing inaccurate invoices to clients. (*See generally* Dkt. 1; *see also* Nelson Decl. Ex. 2.)

    3.    ***The Fraud Claims were "Actually Litigated" and the Determination of the Fraud Claims and Resulting Nondischargeability were Essential to the AG Consent Judgment and AG Nondischargeability Judgment.***

In analyzing the third element (the issue was litigated) and the fifth element (the prior determination was essential to the judgment) which are easily analyzed together, the Court must consider the issues actually litigated and essential to the holding, not what might have been litigated and determined. *In re DEF Inv., Inc.*, 186 B.R. 671, 685 (Bankr. D. Minn. 1995); *In re Miller*, 153 B.R. 269, 274 (Bankr. D. Minn. 1993). The same affect is given to consent judgments.

11

157666464.3

*See, e.g., In re Knodle*, 1995 WL 1943413, at *4 ("In the instant case, the consent judgment contains sufficient facts to hold as a matter of law that Knodle's debt to Curtis and Evelyn is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), and it manifests Knodle's intent to be bound.")

As with the factual analysis, the claims at issue in this Adversary Proceeding directly overlap with those in the AG Action. For example, Glasser's scheme to defraud customers and ultimately, PayJunction, gave rise to the claims of fraud and judgment of nondischargeability. In fact, both actions seek relief under § 523(a)(2)(A). PayJunction's adversary complaint even explicitly states:

> In addition, the stipulated judgment in favor of the Attorney General against Glasser and Schacher for restitution should be accorded collateral estoppel . . . effect as approximately 31.6% of the customers who Glasser and Schacher stipulated that Glasser Images defrauded, representing approximately 43% of the amount of total Chargebacks paid by PayJunction, and whose claims this Court and the District Court have already determined in a final judgment to be nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code.

(*See* Dkt. 1.)

The AG Consent Judgment also shows Glasser's intent to be bound:

> Defendants and Glasser Images, LLC, Jack Glasser, and Jace Schacher, have agreed to the entry of Order and Judgment by the Court. The Court, having issued an Order for Judgment and being fully advised of the premises, NOW, upon the consent of the parties hereto, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS** .… (AG Consent Judgment, ¶ 1).
>
> . . . .
>
> Defendants Glasser Images and Jack Glasser agree and consent to the entry of a monetary judgment against them in the amount of $767,188 as restitution for work not completed or performed and unpaid amounts owed to independent contractors. (*Id.*, ¶ 16).
>
> . . . .

157666464.3

> Defendants expressly agree that consumer restitution and corresponding judgment awarded to the State, as set forth in Paragraphs 14 through 17 shall be considered non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and/or 523(a)(7). (*Id.*, ¶ 19).
>
> Defendants agree to execute a stipulation in proceedings BK-22-30243 and BK-22-30244 expressly agreeing that consumer restitution and the corresponding judgment awarded to the State, as set forth in Paragraphs 14 through 17 of this Consent Agreement shall be considered non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and/or 523(a)(7). Defendants further agree not to contest or object to any determination of non-dischargeability for consumers pursuant to an adversary complaint or proceeding brought or initiated by the Attorney General for a final determination by the Bankruptcy Court of non-dischargeability of consumer restitution. (*Id.*, ¶ 20).

(Dkt. 1-3.)

Accordingly, the AG Consent Judgment clearly manifests Glasser's intent to be bound by the AG Consent Judgment, and that such judgment, which fixed the fraud claims against Glasser, are nondischargeable in Glasser's bankruptcy case under 11 U.S.C. § 523(a)(2)(A).

### 4. *The Consent Judgment and Subsequent AG Nondischargeability Judgment are Valid and Final Judgments.*

Finally, the fourth element of collateral estoppel under federal law requires a valid and final judgment in a previous proceeding. *In re Porter*, 539 F.3d at 894. As with element one, the AG Consent Judgment and AG Nondischargeability Judgment entered thereon, are undoubtedly a full and final decision from a previous proceeding. *In re Knodle*, 1995 WL 1943413, at *3. No appeals were taken from either judgment.

In sum, given that all factors weigh in favor of a showing of collateral estoppel, Glasser is precluded from any attempt to relitigate the issues discussed herein and PayJunction is entitled to partial summary judgment in its favor.[3]

---

[3] In addition to Glasser being collaterally estopped, the AG Nondischargeability Judgment should be accorded preclusive effect under the law-of-the-case doctrine. The law-of-the-case doctrine has been described as a means to prevent the relitigation of a settled issue in a case. *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995). The "law of the case" doctrine "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the

13

### III. GLASSER'S DEBT DUE AND OWING TO PAYJUNCTION IS NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(A)(2)(A)

Section 523(a)(2)(A) provides that the Bankruptcy Code does not discharge a debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). To succeed on this claim, the moving party must show:

(1) Debtor made a representation,
(2) with knowledge of its falsity,
(3) deliberately for the purpose of deceiving PayJunction and its customers,
(4) who justifiably relied on the representation, which
(5) proximately caused PayJunction damage.

*Heide v. Juve (In re Juve)*, 761 F.3d 847, 851 (8th Cir. 2014) (citing *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 637 F.3d 855, 860 (8th Cir. 2011) ); *Hasley v. Irons (In re Irons)*, 2017 WL 943897, at *2 (Bankr. D. Neb. Mar. 9, 2017). Withholding material information is a form of false

---

expectations of the parties, and promote judicial economy." *Id.* "Law of the case" is a policy of deference under which "a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997); *see also UniGroup, Inc. v. Winokur*, 46 F.3d 1208, 1211 (8th Cir. 1995) ("The doctrine of the law of the case prevents the relitigation of settled issues in an action, thus protecting the expectations of the parties, ensuring uniformity of decisions and promoting judicial efficiency. The doctrine of the law of the case precludes litigation of matters that are decided implicitly, as well as those decided explicitly.") (citations omitted). This doctrine equally applies to consent judgments. *See Am. Girl, Inc. v. Hammer*, No. 3:04-CV-392-TAV-HBG, 2014 WL 3507339, at *4 (E.D. Tenn. July 14, 2014) (upholding a consent judgment finding "absent a showing of one of the limited exceptions to the law of the case doctrine by defendant, the Court is not required to revisit or overturn its prior decision"); *Barcia v. Sitkin*, No. 79 CIV. 5831 (RLC), 1996 WL 251848, at *6 (S.D.N.Y. May 10, 1996) ("[A] Consent Judgment is detailed, specific, and the fruit of careful negotiation between the parties. Absent a significant change in circumstances in the facts or the law of this case, the court lacks the power to tamper with the parties' agreement.") Here, the AG Consent Judgment is a full and final determination of the issues, and Glasser should be held liable for his fraudulent actions resulting in a nondischargeable judgment in the amounts set forth in the AG Nondischargeability Judgment under the law of the case doctrine.

representation under section 523(a)(2)(A). *In re Juve*, 761 F.3d at 851; *In re Stark*, 408 B.R. 831, 837 (Bankr. D.N.D. 2009).

All five of these elements have been adjudicated through the AG Action. (*See generally* Dkt. 1-3.) First, Glasser has admitted acts of fraud, false pretenses, false promises or misrepresentations, satisfying the first two elements. (*See* Dkt. 1-3 ¶ 7) ("Defendants Glasser Images and Jack Glasser are adjudged in violation of the consumer fraud law, N.D.C.C. § 51-15-02, for engaging in deceptive acts or practices, fraud, false pretense, false promise, or misrepresentations.)

Second, Glasser has admitted the consumer fraud violations were intentional, satisfying element three. (*Id.* ¶ 7.) ("Defendants Glasser Images and Jack Glasser admit that, with the intent that others rely, they engaged in acts or practices constituting violations of the consumer fraud law").)

Third, in the AG Action, Glasser admitted, and was adjudged, that, he intended others to rely on his acts or practices that constitute consumer fraud violations including engaging in deceptive acts or practices, fraud, false pretense, false promise, or misrepresentations. (*See* Dkt. 1-3 ¶¶ 6-7.) In addition to Glasser's admissions that he intended that Glasser Images' customers rely on his acts or practices constituting violations of the consumer fraud law, these customers in fact relied on Glasser's misrepresentations which can be evidenced by the multitude of actions filed against Glasser and Glasser Images, and the chargebacks made by Glasser Images' customers. Under the Merchant Services Agreement, PayJunction stands in the shoes of the cardholders who purchased services from Glasser Images and is entitled to assert claims on their behalf individually or as a class. (*See* Dkts. 1-1, 1-2.)

15

In addition, Glasser falsely represented to PayJunction that, among other things, each time Glasser Images submitted a credit transaction, (a) such transaction was genuine and arises from a bona fide sale of merchandise or services by Glasser Images, (b) such transaction represents a valid obligation for the amount shown on the Transaction Receipt and does not involve the use of the Card for any other purpose, (c) such transaction was not subject to any dispute, set-off or counterclaim, (d) each statement on the Transaction Receipt is true, and Glasser Images has no knowledge of facts that would impair the validity or collectability of the amount of the Transaction, and (e) Glasser Images will immediately notify PayJunction and the Member Bank in writing of any material changes to any information provided in the Application. (Dkt. 1-2 at ¶ 4, Merchant's Warranties). It is undisputed that just like the restitution victims covered by the AG Consent Judgment and AG Nondischargeability Judgment relied on Glasser's false representations that Glasser Images would provide photography and videography services, PayJunction justifiably relied on such representations when it permitted Glasser Images to use its platform for processing card payments, resulting in more than $400,000 in liability to these very same restitution victims. (Odirakallumkal Decl. ¶ 13.)

Fourth, there can be no doubt that Glasser's actions caused PayJunction damages, as PayJunction was required to honor chargeback claims made by the very same restitution victims covered by the AG Consent Judgment and AG Nondischargeability Judgment. (*See generally id.*) This easily satisfies element number five.

In sum, Glasser agreed to the AG's judgment being nondischargeable and an entry of monetary judgment for defrauding consumers. (Dkt. 1-3 ¶¶ 14, 16; *see also id.* ¶ 19) ("Defendants expressly agrees that consumer restitution and corresponding judgment awarded to the State, as set forth in Paragraphs 14 through 17 shall be considered non-dischargeable under 11 U.S.C. §§

16

523(a)(2)(A) and/or 523(a)(7)").) Given the effect of the AG Consent Judgment on the facts of this case, discussed *supra*, the same facts and claims giving rise to nondischargeability applies here where the restitution victims that were the subject of the Consent Judgment and AG Consent Judgment overlap with the customers who made chargeback claims that were satisfied by PayJunction. But for Glasser's fraud, PayJunction would not have been required to satisfy the chargeback claims asserted by the restitution victims in the AG Action. Since PayJunction stands in the shoes of the very same consumer fraud victims covered by the AG Action and restitution awards, it is entitled to entry of a judgment of non-dischargeability against Glasser.

## CONCLUSION

For the foregoing reasons, PayJunction respectfully requests this Court to enter a judgment of non-dischargeability against Glasser pursuant to 11 U.S.C. § 523(a)(2)(A). PayJunction requests all other relief that is just and proper.

Dated: April 30, 2024

/s/Berly D. Nelson
Berly D. Nelson (ND #05903)
SERKLAND LAW FIRM
10 Roberts Street North
Fargo, ND 58102-4982
Phone: 701.232.8957
Fax: 701.237.4049
bnelson@serklandlaw.com

/s/Robert F. Elgidely
Robert F. Elgidely (pro hac vice)
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, Florida, 33131
Phone: (305) 442-6543
Fax: (305) 442-6541
RElgidely@foxrothschild.com

**Attorneys For Plaintiff Messiahic, Inc. d/b/a PayJunction**

17

157666464.3