# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>Jack A. Glasser,<br><br>                          Debtor. | Case No: BK-22-30244<br><br>Chapter 7 |
| Messiahic, Inc. d/b/a PayJunction,<br><br>                          Plaintiff,<br>vs.<br><br>Jack A. Glasser,<br><br>                          Defendant. | Adversary Proceeding No. 23-07006 |

### DEFENDANT'S RESPONSE IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Jack Glasser, by and through his undersigned counsel, submits the following in response to Plaintiff's Motion for Partial Summary Judgment:

Defendant incorporates by reference, all arguments and statements of fact as detailed within his Brief and other filings in Support of his own Motion for Summary Judgment. (Docs. 23-26). The facts most notable, and those that bear repeating are as follows:

### RELEVANT AND UNDISPUTED FACTS

PayJunction previously filed a Complaint against Glasser Images and Jack Glasser in the United States District Court for the Middle District of Georgia for claims of Breach of Contract, Breach of Guaranty, and seeking injunctive relief and attorney fees. ("GA Compliant," Doc 35-1).

Paragraph 56 of the GA Complaint, states, in part, as follows "Many of the chargebacks related to the delivery of photographs and videos for weddings and other once-in-a-lifetime events

1

that have already taken place. The photographs and videos were taken at the event but have not been delivered to the consumer….If Glasser Images is required to respond to these chargebacks, it will be required to provide evidence that the photographs will be delivered to consumers to have the chargeback reversed. If Glasser Images instead does nothing to respond to chargebacks, irreparable injury will be suffered by those consumers who may never receive their photographs and videos." Id. at p. 15-16, ¶56.

Following the closure of Glasser Images, the North Dakota Attorney General's Office filed a Complaint against Jack Glasser, Glasser Images, LLC, and Jace Schacher ("AG action"), for violations of N.D.C.C. § 51-15-02. See, Doc 33-2, AG Complaint. A "Consent Judgment" was entered in the AG Action in which Defendants Glasser Images and Jack Glasser admitted to violating N.D.C.C. § 51-15-02, and agreed and consented to a monetary judgment against them in the amount of $767,188 as restitution for work not completed or performed and unpaid amounts owed to independent contractors. See Doc. 1-3, Consent Judgment, ¶¶ 6 & 16.

## LAW & ARGUMENT

Under Fed.R.Civ.P. 56(f)(1) "the Court may: grant summary judgment for a nonmovant."

> If the pleadings and proof in the form of depositions, affidavits and admissions on file disclose that no real cause of action or defense exists, the court may determine there is no issue to be tried and may grant a summary judgment. In reaching its determination the court has the power to penetrate the allegations of fact in the pleadings and look at any evidential source to determine whether there is an issue of fact to be tried. The primary purpose of a motion for summary judgment is to avoid a useless trial, and summary judgment is a procedural device for promptly disposing of actions in which there is no genuine issue of any material fact even though such issue might have been raised by formal pleadings. The very purpose of Rule 56 is to eliminate a trial in such cases where a trial is unnecessary and results in delay and expense.

Mintz v. Mathers Fund, Inc., 463 F.2d 495, 498 (7th Cir. 1972) (internal citations omitted).

2

Jack Glasser asserts that summary judgment in his favor, rather than that of PayJunction's, is appropriate in this action. Should the court find that summary judgment is not appropriate to Jack Glasser's benefit, then that would only be as a result of factual disputes that would preclude summary judgment for either party.

I.  The Doctrine of Collateral Estoppel Does Not Apply

Again, Defendant incorporates by reference, all arguments as detailed within his Brief and other filings in Support of his own Motion for Summary Judgment. (Docs. 23-26). Defendant maintains his position that the doctrine of collateral estoppel cannot be applied to this action, as the required elements as set forth in previous briefing and In re Johnson, 584 B.R. 895, 901 (Bankr. D.N.D. 2018) cannot be met.

Plaintiff contends that the material facts between the prior AG action and this Adversary Proceeding are identical, a necessary element of collateral estoppel. See, Doc. 32, Plaintiff's Brief, p.11.  Defendant disputes this claim.

As set forth by the Plaintiff, "The purposes of collateral estoppel is not to foreclose a party of its right to put contested facts before the Court, but is to prevent their submission twice." In re Yagow, 62 B.R. 73, 78 (Bankr. D.N.D. 1986).

> Most problematic for the party asserting estoppel is the "actually litigated" requirement. This requirement is satisfied if the party opposing estoppel had a full and fair' opportunity to litigate the issue in a prior adjudication…To verify that the issue was actually litigated, this Court also requires that the earlier court's findings of fact be clear. Consent judgments may satisfy the actually litigated requirement if they contain a factual basis…Conversely, consent judgments without factual support generally do not meet the actually litigated requirement.

In re Knodle, No. 95-30081, 1995 WL 1943413, at *3 (Bankr. D.N.D. Sept. 1, 1995), internal citations omitted.

3

"[T]he principle of collateral estoppel does not apply to unlitigated issues underlying default or consent judgments, or to issues determined by the parties, *unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions*. Where the parties intended to resolve an issue, this Court will honor their intent." Id. emphasis in original, internal citations omitted.

PayJunction was not a party to the previous AG Action, or the AG's corresponding adversary action. There is no factual basis included within the Consent Judgment to establish any false pretense, false promise, or misrepresentations that were any way determinative of actions and/or inactions between Glasser Images/Jack Glasser and PayJunction, or any supposed damage suffered by PayJunction.

In stipulating to the entry of the Consent Judgment with the North Dakota Attorney General's office, there is no evidence in the record which establishes that Jack Glasser could have foreseen that the effect of stipulating to the Consent Judgment, would have bearing on any claim brought against him by PayJunction. Additionally, the issues here were not intended to be resolved through either of the AG actions, to which PayJunction was not a party.

Jack Glasser and Glasser Images agreed and consented to the entry of a judgment in the amount of $767,188 **as restitution** for work not completed or performed and unpaid amounts owed to independent contractors in the AG action. See, Doc. 1-3 Consent Judgment, ¶ 16, emphasis added. The Consent Judgment is silent as to how this amount was calculated.

PayJunction claims that it stands in the shoes of the cardholders who purchased services from Glasser Imagers, under the Merchant Services Agreement, and is entitled to assert claims on their behalf individually, or as a class. Doc 32, pg. 15. PayJunction was not a party to the AG

4

action, nor can it stand in the shoes of the consumers intended to be represented in the prior AG action.

What is more, PayJunction claims that the Judgment that they now seek to maintain against Jack Glasser accounts for 43% of the Judgment held by the AG, on behalf of the consumers. See Doc. 32, pg. 12. If PayJunction wishes for the Court to accept that fact as true, then it is acknowledging that 43% of the claim it is pursuing "on behalf of the consumers," has already been brought by the consumers themselves and that a Judgment has already been entered on their behalf. If that is true, then PayJunction's damages here should be reduced by at least 43%. Otherwise the consumers, by and through PayJunction, are seeking to obtain a double recovery.

This adversary action of PayJunction's was not, and is not brought for the benefit of Glasser Images' customers, and if any amount of the previous GA Judgment was found to be non-dischargeable, those funds would not be returned to the customers in the form of restitution or otherwise. Payment of any such funds would be for the sole benefit of PayJunction. This is in direct contrast to the Consent Judgment, which is expressly for the purposes of restitution to customers of Glasser Images as it relates to the sale of merchandise.

i. **Issues which have not been litigated**

Here, PayJunction must prove each of the following elements by a preponderance of the evidence: (1) Jack Glasser made a representation; (2) with knowledge of its falsity; (3) deliberately for the purpose of deceiving PayJunction; (4) who justifiably relied on the representation, which (5) proximately caused PayJunction damage. See, In re Johnson, at 905.

The Consent Judgment entered in the District Court of North Dakota provides:

> ¶6. Defendants Glasser Images and Jack Glasser admit that, with the intent that others rely, they engaged in acts or practices constituting violations of the consumer fraud law, N.D.C.C. § 51-15-02.

5

> ¶7. Defendants Glasser Images and Jack Glasser are adjudged in violation of the consumer fraud law, N.D.C.C. § 51-15-02, for engaging in deceptive acts or practices, fraud, false pretense, false promise, or misrepresentations.

Doc. 1-3.

To establish violation of N.D.C.C. § 51-15-02, the only elements necessary are:

1. Defendant acted, used, or employed a deceptive act or practice, fraud, false pretense, false promise, or misrepresentation; and
2. Defendant intended that its customers relied on Defendant's act, use, or employment of a deceptive act or practice, fraud, false pretense, false promise, or misrepresentation in connection with the sale or advertisement of merchandise.

There is no requirement to prove that the consumer was in fact misled, deceived, or damaged by the Defendant's actions.

See, N.D.C.C. § 51-15-02 and NDJI C- 21.50 (2023 Edition) (Unlawful Sales or Advertising Practice – Intended Reliance).

Contrary to the assertions of PayJunction, the prior AG action and the Consent Judgment do not address the same elements required to be established in this present claim. This Consent Judgment does not provide any factual finding that Jack Glasser/Glasser Images made any knowingly false representations *to PayJunction* or that they otherwise deliberately deceived *PayJunction*. Furthermore, nothing within the prior AG action or the Consent Judgment establishes that PayJunction justifiably relied on the representation(s) of Jack Glasser/Glasser Images. Most notably and importantly, there is nothing to establish PayJunction's damages, or whether any such damages were a proximate cause of the false representation(s).

Violations of N.D.C.C. § 51-15-02 which Jack Glasser has admitted to, specifically relates to acts "in connection with the sale or advertisement of any merchandise." "'Merchandise' means any objects, wares, goods, commodities, intangibles, real estate, charitable contributions, or services." N.D.C.C. § 51-15-01(3). The only way in which PayJunction could suffer damages proximately caused by Glasser Images and/or Jack Glasser would be as a result of a breach of the

6

Terms & Conditions of the Merchant Application. The damages now claimed by PayJunction have no relation to Glasser Images advertising or selling merchandise to PayJunction.

Notably, PayJunction, does not cite to the Consent Judgment, but rather to the Merchant's Warranties within the Terms & Conditions of the Merchant Application, in attempting to establish that the elements required here have been previously litigated. See, Doc 32, pg. 16, referring to Doc. 1-2, ¶4.

The existence of the Merchant Application, and the Terms and Conditions to which these parties were subjected to, as well as the personal guaranty signed by Jack Glasser, were not facts considered in the AG action, as the business relationship between Glasser Images and PayJuction was not one that involved the sale and/or purchase of merchandise. The content of these written agreements, the representations made by both parties subject to the same, and any damages suffered as a proximate cause, are key issues to this action which have not been previously litigated.

Defendant asserts that the Plaintiff has failed to prove the elements of collateral estoppel as set forth in In re Johnson, 584 B.R. 895, 901 (Bankr. D.N.D. 2018). The underlying issues to this action are not identical to the issues addressed within the Consent Judgment, or the AG state court action. Therefore, because the relevant issues here have not been actually litigated and actually differ from the relevant issues in the AG action, the doctrine of collateral estoppel does not apply. The prior AG action and Consent Judgment cannot be relied upon to grant Summary Judgment in Plaintiff's favor.

Additionally, with regard to PayJunction's claim for non-dischargability pursuant to Section 523(a)(6), the Consent Judgment is also silent with regard to any factual basis, or other admission concerning willful and malicious injury by Glasser Images and/or Jack Glasser upon

any other entity or individual. Defendant notes that Plaintiff's has not moved for Summary Judgment on its claim for nondischargeability under Section 523(a)(6). <u>See</u>, Doc 32, p.7, footnote 1. Defendant maintains his previous position that Defendant is entitled to Summary Judgment on Plaintiff's claim for nondischargeability under Section 523(a)(6), as detailed within his prior brief.

## CONCLUSION

For the foregoing reasons Mr. Glasser requests this Court to DENY Plaintiff's Motion for Partial Summary Judgment.

Dated this 21st day of May, 2024.

O'KEEFFE O'BRIEN LYSON LTD.

*/s/ Timothy M. O'Keeffe*
Timothy O'Keeffe (ND ID. #05636)
720 Main Avenue
Fargo, ND 58103
Phone: (701) 235-8000
Fax: (701) 235-8023
tim@okeeffeattorneys.com
Attorney for Defendant