### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Jack A. Glasser,<br><br>Debtor. | **Bankruptcy No.: 22-30244**<br><br>**Chapter 7** |
| Messiahic, Inc.<br>d/b/a PayJunction,<br><br>Plaintiff,<br><br>vs.<br><br>Jack A. Glasser,<br><br>Defendant. | **Adversary No. 23-07006** |

### PAYJUNCTION'S OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

158859327.2

# <u>TABLE OF CONTENTS</u>

Introduction ................................................................................................................ 1

Summary of Genuine Issues of Material Fact ......................................................... 3

    I.     Facts Related to § 523(a)(2)(A) Claim ................................................ 4

    II.    Facts Related to § 523(a)(6) Claim .................................................... 7

Standard for Summary Judgment ............................................................................ 8

Legal Argument ....................................................................................................... 9

    III.    Glasser Did Not Move for Summary Judgment on the Alter Ego Allegations Which Are Supported by Sufficient Material Facts ................................................ 9

    IV.    Summary Judgment in Favor of Glasser Is Not Proper on PayJunction's § 523(a)(2)(A) Claim Because the Preclusive Effect of the Consent Judgment Requires Judgment in Favor of PayJunction as a Matter of Law. ........................ 11

    V.    Genuine Issues of Material Fact Preclude Summary Judgment on PayJunction's § 523(a)(2)(A) Claim to the Extent It Is Not Dispositively Resolved by the Consent Judgment. ................................................................. 14

        A.    Glasser Made Ongoing, Express Warranties under the Merchant Services Agreement and Implicit Representations Through His Concealment of Multiple Defaults under the Agreement. ....................... 15

        B.    Glasser Knew the Representations Were False When They Were Made. ................................................................................................. 16

        C.    Glasser's Representations Were Deliberately Made for the Purpose of Deceiving PayJunction ................................................................ 17

        D.    PayJunction Justifiably Relied on Glasser's Representations. ................ 18

        E.    PayJunction Incurred the Chargeback Liability as a Proximate Result of Glasser's Misrepresentations. ............................................... 19

    VI.    Genuine Issues of Material Fact Preclude Summary Judgment on PayJunction's § 523(a)(6) Claim. ....................................................... 20

        A.    The Continued Submission of Transactions under the Merchant Services Agreement and Subsequent Failure to Dispute Chargeback Claims Constitute an Injury under § 523(a)(6). ...................... 20

        B.    Glasser Willfully Injured PayJunction ................................................ 22

C.    Glasser's Conduct Was Malicious Because It Was Certain, or Almost Certain, to Cause Harm to Pay Junction. ................................................. 23

Conclusion .............................................................................................................. 24

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amini v. City of Minneapolis*,
    643 F.3d 1068 (8th Cir. 2011) ..................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ....................................................................................................9

*In re B.J. McAdams, Inc.*,
    66 F.3d 931 (8th Cir. 1995) ......................................................................................9

*In re Behn*,
    242 B.R. 229 (Bankr. W.D.N.Y. 1999) ..........................................................22, 23

*Capital Promotions, L.L.C. v. Don King Prods.*,
    527 Fed. App'x. 587 (8th Cir. 2013) ....................................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..............................................................................................3, 9

*In re Charron*,
    541 B.R. 656 (Bankr. W.D. Mich. 2015)..............................................................21

*Dahlgren & Co. v. Lacina (In re Lacina)*,
    162 B.R. 267 (Bankr. D.N.D. 1993) ......................................................................23

*Field v. Mans*,
    516 U.S. 59 (1995)..................................................................................................18

*Fields v. Fields (In re Fields)*,
    510 B.R. 227 (B.A.P. 8th Cir. 2014)......................................................................17

*Goff v. IRS (In re Goff )*,
    180 B.R. 193 (Bankr. W.D. Tenn. 1995)................................................................12

*Hernandez v. Gen. Mills Fed. Credit Union (In re Hernandez)*,
    860 F.3d 591 (8th Cir. 2017) ..........................................................................14, 17

*Husky Int'l Elecs., Inc. v. Ritz*,
    578 U.S. 355 (2016)................................................................................................14

*In re Juve*,
    761 F.3d 847 (8th Cir. 2014) ................................................................................15

158859327.2

*Kawaauhau v. Geiger*,
    523 U.S. 57 (1998)............................................................................22

*Klingman v. Levinson*,
    831 F.2d 1292 (7th Cir. 1987) .......................................................12

*In re Knodle*,
    No. 95-30081, 1995 WL 1943413 (Bankr. D.N.D. Sept. 1, 1995).........................12

*Lacey v. Norac, Inc.*,
    932 F.3d 657 (8th Cir. 2019) .........................................................9

*Lakota Girl Scout Council, Inc. v. Harvey Fund-Raising Mgmt., Inc.*,
    519 F.2d 634 (8th Cir. 1975) .........................................................9

*Lamar, Archer & Cofrin, LLP v. Appling*,
    584 U.S. 709 (2018)....................................................................14

*In re Logue*,
    294 B.R. 59 (B.A.P. 8th Cir. 2003)...................................................23

*In re Long*,
    774 F.2d 875 (8th Cir. 1985) .........................................................23

*Merchants Nat'l Bank v. Moen (In re Moen)*,
    238 B.R. 785 (B.A.P. 8th Cir. 2017)..................................................17

*In re Miera*,
    926 F.2d 741 (8th Cir. 1991) ....................................................11, 22, 23

*In re Nangle*,
    274 F.3d 481 (8th Cir. 2001) .........................................................24

*Pinkard v. Morris*,
    215 Ga. App. 297 (Ga. Ct. App. 1994)...............................................13

*Portal Invs., LLC v. Johnson (In re Johnson)*,
    584 B.R. 895 (Bankr. D.N.D. 2018) ...........................................15, 17, 18

*R&R Ready Mix v. Freier (In re Freier)*,
    604 F.3d 583 (8th Cir. 2010) .........................................................18

*Reich v. Hoy Shoe Co.*,
    32 F.3d 361 (8th Cir. 1994) ...........................................................9

*Reuter v. Cutcliff (In re Reuter)*,
    443 B.R. 427 (B.A.P. 8th Cir. 2011)..................................................15

iv

*Sells v. Porter (In re Porter)*,
   539 F.3d 889 (8th Cir. 2008) ...........................................................................12

*Smith v. U.S.*,
   369 F.2d 49 (8th Cir. 1966) ...........................................................................11

*St. Luke's Hosps. of Fargo, Inc. v. Smith (In re Smith)*,
   119 B.R. 714 (Bankr. D.N.D. 1990) ...............................................................21

*In re Wigley*,
   620 B.R. 87 (B.A.P. 8th Cir. 2020)..................................................................14

*Williams v. Int'l Brotherhood of Elec. Workers Local 520 (In re Williams)*,
   337 F.3d 504 (5th Cir. 2003) ...........................................................................21

*In re Yagow*,
   62 B.R. 73 (Bankr. D.N.D. 1986) ...................................................................11

*In re Zinke*,
   174 B.R. 1017 (Bankr. N.D.N. 1994) .........................................................20, 21

**Statutes & Rules**

11 U.S.C. § 523(a)(2)(A) .......................................................................... *passim*

11 U.S.C. § 523(a)(6)................................................................................ *passim*

FED. R. CIV. P. 56 ...............................................................................................1

FED. R. CIV. P. 56(a) ..........................................................................................3

FED. R. CIV. P. 56(c) ..........................................................................................8

N.D.C.C. § 51-15-02...........................................................................................11

158859327.2

Plaintiff Messiahic, Inc. d/b/a PayJunction ("Plaintiff" or "PayJunction"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure Rule 56, hereby submits this opposition (the "Opposition") to *Defendant's Motion for Summary Judgment* [Docket No. 23] (the "Motion") and related brief [Docket No. 25] (the "Brief") filed by defendant, Jack A. Glasser ("Defendant" or "Glasser"). In support of the Opposition, PayJunction refers to the *Declaration of Mathew Odirakallumkal in Support of PayJunction's Motion for Partial Summary Judgment* [Docket No. 35] (the "Odirakallumkal Declaration"), the *Declaration of Mathew Odirakallumkal in Support of PayJunction's Opposition to Defendant's Motion for Summary Judgment* (the "Supplemental Odirakallumkal Declaration") filed concurrently herewith, the *Declaration of Berly Nelson in Support of PayJunction's Opposition to Defendant's Motion for Summary Judgment* (the "Nelson Declaration") filed concurrently herewith, and such other evidence as may be submitted at the hearing on the Motion, and respectfully states as follows:

## INTRODUCTION[1]

Glasser operated Glasser Images, LLC ("Glasser Images") as his personal piggybank for years—collecting nonrefundable wedding photograph deposits from engaged couples and other customers to pay for his luxury cars and travel all while admitting that Glasser Images could not continue operating. Glasser freely used these payments for his personal purposes because he had a failsafe: when forlorn couples and other customers came looking for refunds, the credit card processor, PayJunction, was on the hook to provide chargebacks. After Glasser Images shuttered its doors, Glasser was swept up in a state attorney general investigation and ultimately agreed to entry of a Consent Judgment that he had defrauded Glasser Images' consumers. As agreed to

---

[1] Unless otherwise defined herein, all capitalized terms have the definitions set forth elsewhere in this Opposition.

under the Consent Judgment, the attorney general was granted a nondischargeable claim under §§ 523(a)(2)(A) and 523(a)(7).[2]  While Glasser is required to pay restitution, the consumers that initiated chargeback claims have already been repaid by PayJunction.  PayJunction is now holding the bag.

PayJunction filed this adversary proceeding to obtain a nondischargeability judgment against Glasser, under § 523(a)(2)(A) and (a)(6), for his tortious misconduct.  Glasser contends that the Consent Judgment—in which he consents to nondischargeability findings under § 523(a)(2)(A)—is not preclusive in this action because PayJunction is not a defrauded consumer. But, the underlying Merchant Services Agreement expressly provides that PayJunction can stand in the shoes of consumers with respect to chargeback claims and assert such claims on behalf of individual customers or as a class.  Additionally, PayJunction actually satisfied consumer claims when Glasser refused (even under compulsion of court order) to provide sufficient information to dispute the consumer chargeback requests.  The collateral estoppel issue is addressed in greater detail in PayJunction's competing motion for partial summary judgment, but it bears observation that this is the only substantive argument offered by Glasser in the Motion.

Glasser's remaining argument is simple: Glasser baldly asserts that PayJunction does not have sufficient evidence to establish its claims if the Consent Judgment is not preclusive.  Glasser is wrong.  As set forth below, Glasser's undisputed and unchallenged alter ego relationship with Glasser Images means Glasser made continuing false representations to PayJunction about the viability of Glasser Images each time Glasser Images processed a credit card transaction.  When PayJunction learned of the fraud—only after Glasser Images shuttered and chargeback requests

---

[2] Unless otherwise defined herein, all references to "Section" or "§" refer to a section of title 11 of the United States Code (the "Bankruptcy Code").

2

poured in—PayJunction obtained an injunction requiring Glasser to assist in the chargeback reconciliation process.  Glasser ignored the court order and, as a result, the chargeback claims became final and undisputable.  PayJunction did what Glasser should have: satisfied consumer claims which were not paid by Glasser Images due to admitted fraud.  The evidence in the record ably demonstrates the existence of genuine issues of material fact merit trial on both of PayJunction's claims to the extent the Consent Judgment does not form a sufficient basis to grant PayJunction partial summary judgment on its § 523(a)(2)(A) claim.

## SUMMARY OF GENUINE ISSUES OF MATERIAL FACT

The Motion does not contain, and is not accompanied by, a statement of undisputed material facts.  On this basis, alone, the Motion fails to establish a sufficient basis to grant summary judgment.  *See* FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  Indeed, while the Motion need not provide evidence negating the claims in PayJunction's complaint, it must still "identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Instead, the Motion rests principally on a legal argument: that the consent judgment (the "Consent Judgment") entered by the District Court for the State of North Dakota in *State of North Dakota ex rel. Wrigley v. Glasser Images, LLC et al.*, Case No. 08-2022 (the "North Dakota Case") is not entitled to preclusive effect in this case.

The Motion largely ignores the voluminous factual record the parties have developed through discovery bearing on the merits of PayJunction's claims, even assuming the Consent

Judgment is not entitled to preclusive effect.[3]  Without intending to provide an exhaustive account of the factual record in addition to the findings in the Consent Judgment, PayJunction states the facts most relevant to its Opposition:

## I.    <u>Facts Related to § 523(a)(2)(A) Claim</u>

1.    Glasser both individually, and through Glasser Images as his alter ego,[4] made certain material representations concerning the propriety of transactions subject to chargebacks. Glasser Images expressly agreed that it was making certain representations and warranties (the "<u>Warranties</u>") ***each time it submitted a credit card transaction for processing*** by affirmatively inputting a consumer's credit card information into point-of-sale equipment or software.  Compl., Ex. B (T&Cs, § 4 at 3).  Those affirmative Warranties included, but are not limited to, the following:

> 4.3    There have been no materially adverse changes in information provided in the Merchant Application or in Merchant's financial condition, or management;
>
> \* \* \*
>
> 4.5    The Transaction is genuine and arises from a bona fide sale of merchandise or services by Merchant, represents a valid obligation for the amount shown on the Transaction Receipt and does not involve the use of the Card for any other purpose;
>
> \* \* \*
>
> 4.7    The Transaction is not subject to any dispute, set-off or counterclaim; [and]

---

[3] On April 30, 2024, PayJunction filed a *Motion for Partial Summary Judgment* [Docket No. 31] seeking entry of summary judgment against Glasser on PayJunction's claim under 11 U.S.C. § 523(a)(2)(A).  PayJunction reserves all rights with respect to its partial summary judgment motion and contends genuine factual issues exist solely to the extent the Court does not find the Consent Judgment dispositive as to all issues under 11 U.S.C. § 523(a)(2)(A).

[4] Glasser does not allege that summary judgment is appropriate with respect to the alter ego allegations in the Complaint.

4

\* \* \*

> 4.9     Each statement on the Transaction Receipt is true, and Merchant has no knowledge of facts that would impair the validity or collectability of the amount of the Transaction[.]

*Id.*

2.     Glasser knew the Warranties were false.  At a minimum, Glasser admitted that Glasser Image's financial condition was "dire" as early as March 2020 when Glasser Images "was not spinning off enough cash" to qualify for a COVID loan.  *See* Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 69:1 – 70:1).  The admissions continued: Glasser admitted the company "cannot survive" and "will run out of cash" without a $1.6 million loan sought in September 2020, Glasser's accountant recommended he consider bankruptcy in November 2020, and Glasser Images' bank threatened the involuntary closure of its accounts due to repeat overdraws in June 2021.  *See id.* (Apr. 12, 2024 Glasser Dep. Tr., at 70:2-14, 71:1-23); *see also id.*, Ex. 1 (Nov. 9, 2020 emails to Glasser at 1-2) (suggesting "it might be time [for Glasser] to talk with a bankruptcy attorney about [his] options" and Glasser "get an initial cons[u]ltation with a bankruptcy attorney").  In fact, Glasser Images failed to pay withholding taxes as early as June 2020 and had moved to payroll checks, rather than direct deposit, to control the timing that the checks cleared to avoid "bouncing" payroll checks.  *See id.*, Ex. 2 (Oct. 28, 2022 § 341(a) Tr., at 6:9-17); *id.*, Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 63:18 – 64:23).

3.     Yet, Glasser Images continued to take nonrefundable customer deposits for future photography services after the company's financial situation became "dire" in March 2020.  *See id.* (Apr. 12, 2024 Glasser Dep. Tr., at 72:24 – 73:4).  All but three customer charges subsequently subject to chargeback were originally submitted by Glasser Images on or after March 2020.  *See* Odirakallumkal Decl., Ex. 4.  Indeed, Glasser Images continued to take payments from customers after it became apparent it could no longer make payroll, including the day after Glasser Images

5

closed.  *See* Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 90:5-8, 89:24 – 90:1); *see also* Odirakallumkal Decl., Ex. 4 at 11-20.  Additionally, Glasser knew he had cash flow and debt issues dating back to 2019.  *See* Nelson Decl., Ex. 3 (Jan. 2019 Glasser emails) (noting Glasser thought "everything would have to go perfectly, as projected and even if so, we would just squeeze by") (emphasis in original). All the initial charges subsequently subject to chargeback were submitted after January 2019. *See* Odirakallumkal Decl., Ex. 4 at 11-20.

4.      Ample evidence exists demonstrating that Glasser intended to deceive PayJunction. As signatory to the Merchant Services Agreement, Glasser knew that PayJunction could terminate the Merchant Services Agreement upon, among other things, any violation of the agreement (including the Warranties), a material adverse change to Glasser Image's financial condition, any information provided by Glasser Images was false or materially changed, an increase in chargeback to transaction ratio, or if Glasser Images will be unable to fulfill its financial obligations under the agreement.  *See* Compl., Ex. B (T&Cs, § 11.2(b) at 5).  Glasser Images was required to "immediately notify Member Bank and [PayJunction] in writing of any material changes to any information provided herein." Compl., Ex. B (T&Cs, § 4.16 at 4).  Additionally, Glasser knew that PayJunction would be obligated to honor chargeback requests if they were not timely disputed by Glasser or Glasser Images regardless of whether Glasser Images reimbursed PayJunction. *See* Nelson Decl., Ex. 8 (Apr. 12, 2024 Glasser Dep. Tr., at 60:10-14); *id.*, Ex. 4 (Sept. 15, 2022 § 341(a) Tr., 22:2-6); *see also* Suppl. Odirakallumkal Decl., ¶ 9, Ex. 1 (Visa Chargeback Guidelines, § 3 at 20), Ex. 2, (Mastercard Chargeback Guide), Ex. 3 (Discover Dispute Rules Manual, § 5.2.4 at 5-3), Ex. 4 (American Express How to Manage and Help Prevent Disputes, at 4, 35).

5.      PayJunction actually and justifiably relied on the continuing Warranties set forth under the Merchant Services Agreement.  *See* Suppl. Odirakallumkal Decl., ¶ 6.  PayJunction only

learned of Glasser Images' closure and allegations of financial misconduct through news reports after October 7, 2021. *See* Odirakallumkal Decl., ¶ 5 at 2. Chargeback claims increased precipitously around the same time. *See id.*, ¶ 5 at 2, Ex. 4 at 11-20. On October 14, 2021, just seven days after Glasser Images closed, PayJunction terminated the Merchant Services Agreement. *See id.*, Ex. 1 (Georgia Verified Compl., Ex. C).

6.    Glasser's fraudulent conduct was a proximate cause of the damages suffered by PayJunction. The chargeback liability is a direct result of Glasser Images continuing to process charges under the Merchant Services Agreement, many of which included non-refundable deposits for services to be rendered in the future, while Glasser and Glasser Images concealed multiple defaults under the Merchant Services Agreement. *See* Compl., Ex. B (T&Cs, § 11.2(b) at 5) (grounds for termination). PayJunction's liability specifically arises from refunding consumers based on their chargeback claims that arose while PayJunction had defaulted under the financial condition Warranties. *See* Odirakallumkal Decl., Ex. 4; Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 69:1 – 70:1).

## II.    Facts Related to § 523(a)(6) Claim

7.    Glasser's conduct was willful and malicious. Glasser (through Glasser Images) intentionally processed credit card transactions that included nonrefundable consumer deposits when Glasser knew the business was unable to continue operations. *See, e.g.*, Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 72:24 – 73:4). Glasser's admission that the business could not continue is critical because he also knew that the resulting chargeback liability for nonperformance of services would be borne by PayJunction. *See id.* (Apr. 12, 2024 Glasser Dep. Tr., at 60:10-14); *id.*, Ex. 4 (Sept. 15, 2022 § 341(a) Tr., 22:2-6). As such, Glasser was substantially certain that PayJunction would bear unrecoverable chargeback liability, particularly where Glasser Images

7

continued to submit credit card payments after closing. *See id.*, Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 25:24 – 26:1, 90:5-8, 89:24 – 90:1). Indeed, Glasser intended that PayJunction be liable—PayJunction's satisfaction of consumer chargeback claims necessarily resolved Glasser Images' liability to those consumers while Glasser misappropriated the funds received from those transactions. Glasser used company funds during these "dire" financial times for his personal benefit: a Mercedes lease, a cabin rental in Wyoming and other "extravagant trips," expensive restaurants, meal and smoothie kits, biweekly car detailing services, and haircuts and hair products were all charged to Glasser Images. *See id.* (Apr. 12, 2024 Glasser Dep. Tr., at 74:1 – 76:12); *see also id.*, Ex. 4 (Sept. 15, 2022 § 341(a) Tr., 27:5-17) (explaining Glasser and Schacher's "extravagant trips" were "personal trips"). During this time, Glasser also ensured that he received repayment of a $77,532 loan from Glasser Images and caused Glasser Images to make another $168,000 in personal expenses. *See id.*, Ex. 2 (Oct. 28, 2022 § 341(a) Tr., 4:13-24, 5:19 – 6:4). When asked to dispute the chargeback claims to limit PayJunction's potential liability, Glasser ignored the request. *See* Odirakallumkal Decl., ¶ 6 at 2-3. When ordered to submit information to dispute the chargebacks, Glasser similarly ignored the court-ordered obligation. *See id.*, ¶¶ 7-8 at 3, Ex. 2 (Prelim. Inj. Order at 5).

The foregoing genuine issues of material fact, among others, are more than sufficient to deny the Motion even ignoring the preclusive effect of the Consent Judgment. However, as set forth below, the Consent Judgment offers another, independent basis to deny the Motion.

## STANDARD FOR SUMMARY JUDGMENT

Glasser must demonstrate "there is no genuine issue as to any material fact" and they are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is only proper if, upon viewing the facts in the light most favorable to the non-moving party and giving

such party the benefit of all reasonable inferences, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 364 (8th Cir. 1994). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011). In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Lacey v. Norac, Inc.*, 932 F.3d 657, 659-660 (8th Cir. 2019). But "the nonmoving party [need not] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp.*, 477 U.S. at 324.

## **LEGAL ARGUMENT**

## III.  **Glasser Did Not Move for Summary Judgment on the Alter Ego Allegations Which Are Supported by Sufficient Material Facts.**

Glasser did not move for summary judgment on the alter ego allegations set forth in the Complaint, which are sufficiently established by the evidence. "Under the alter ego doctrine, the legal fiction of the separate corporate entity may be rejected in the case of a corporation that (1) is controlled by another to the extent that it has independent existence in form only, and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." *In re B.J. McAdams, Inc.*, 66 F.3d 931, 937 (8th Cir. 1995) *cert. denied*, 518 U.S. 1017 (1996); *see also Lakota Girl Scout Council, Inc. v. Harvey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975) (holding that ignoring corporate existence is appropriate where "(1) the corporation is

9

undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham"). The facts in the record and established in the Consent Judgment provide ample bases to find Glasser the alter ego of Glasser Images.

*First*, the record includes ample evidence of that Glasser used Glasser Images as a personal piggybank even as it faced extreme financial hardship and closure. Glasser was the sole interest holder in Glasser Images and made clear that "I was the business, the business was me." *See In re Glasser*, Case No. 22-30244, Docket No. 1 at ECF p. 12 (Bankr. D.N.D., filed Aug. 14, 2022) (Petition); *see also* Nelson Decl., Ex. 5 (Nov. 23, 2021 Glasser Dep. Tr., at 171:3-6). Glasser took company funds for personal luxury car payments, "extravagant trips," expensive meals, personal products, and other personal expenses. *See id.*, Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 74:1 – 76:12), Ex. 4 (Sept. 15, 2022 § 341(a) Tr., 27:5-17), Ex. 2 (Oct. 28, 2022 § 341(a) Tr., 4:13-24, 5:19 – 6:4). At the same time, Glasser Images was bouncing payroll checks, failing to withhold payroll tax liabilities, utilizing loans to bridge operating cash flow losses, admitting it could not sustain cash flow, and was counseled to file bankruptcy. *See id*, Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 63:18 – 64:23, 69:1 – 70:1-14, 71:1-23), Ex. 2 (Oct. 28, 2022 § 341(a) Tr., at 6:9-17). Indeed, Glasser continued to siphon funds from Glasser Images without any concrete path to avoid financial calamity—claiming that he simply assumed Glasser Images would find a solution "until we weren't able to find one" the day Glasser Images closed. *See id.*, Ex. 4 (Sept. 15, 2022 § 341(a) Tr., 24:16 – 25:16).

*Second*, Glasser admitted operating Glasser Images to perpetuate a fraud on consumers. The Consent Judgment provides that "Defendants Glasser Images and Jack Glasser admit that,

10

with the intent that others rely, they engaged in acts or practices constituting violations of the consumer fraud law, N.D.C.C. § 51-15-02. Defendants Glasser Images and Jack Glasser are adjudged in violation of the consumer fraud law, N.D.C.C. § 51-15-02, for engaging in deceptive acts or practices, fraud, false pretense, false promise, or misrepresentations."  Compl., Ex. C (Consent J., ¶¶ 6-7 at 2).  Although Glasser contests the preclusive effect of the Consent Judgment as to PayJunction, it does not (and could not) claim the Consent Judgment lacks preclusive effect as to whether Glasser used Glasser Images to promote fraud or illegality.  Accordingly, the Motion does not challenge the alter ego allegations in the Complaint and could not successfully do so on summary judgment based on the evidence in the record.

## IV.  **Summary Judgment in Favor of Glasser Is Not Proper on PayJunction's § 523(a)(2)(A) Claim Because the Preclusive Effect of the Consent Judgment Requires Judgment in Favor of PayJunction as a Matter of Law.**

The collateral estoppel and *res judicata* effect of prior orders is appropriately considered on summary judgment.  *See, e.g.*, *Smith v. U.S.*, 369 F.2d 49, 53 (8th Cir. 1966).  When analyzing whether the doctrine of collateral estoppel applies to a prior judgment, courts consider whether the party against whom collateral estoppel is asserted received a "full and fair" opportunity to litigate the issue in the prior adjudication. *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991) (citing *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983)).  "The purpose of collateral estoppel is not to foreclose a party of its right to put contested facts before the Court, but is to prevent their submission twice." *In re Yagow*, 62 B.R. 73, 78 (Bankr. D.N.D. 1986) (citation omitted).  The party asserting collateral estoppel has the burden of proving the following elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded

11

> must have been actually litigated in the prior action; (4) the issue
> sought to be precluded must have been determined by a valid and
> final judgment; and (5) the determination in the prior action must
> have been essential to the prior judgment.

*Sells v. Porter (In re Porter)*, 539 F.3d 889, 894 (8th Cir. 2008) (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)).

Consent judgments are entitled to collateral estoppel effect if the parties to a consent judgment indicated clearly the intention that the decree to be entered shall not only terminate the litigation of claims but, also, determine finally certain issues, then their intention should be effectuated. *See In re Knodle*, No. 95-30081, 1995 WL 1943413, at *3 (Bankr. D.N.D. Sept. 1, 1995) ("Even where a consent judgment is devoid of supporting facts, it is preclusive if the parties to a consent judgment intended to be bound"); *Goff v. IRS* (*In re Goff*), 180 B.R. 193, 199 (Bankr. W.D. Tenn. 1995) ("[W]hen a consent decree incorporates factual findings necessary to a judgment, those findings are considered actually litigated for collateral estoppel purposes."); *see also Klingman v. Levinson,* 831 F.2d 1292, 1296, n. 3 (7th Cir. 1987) (holding that summary judgment is appropriate where a debtor enters into a consent decree in state court and the statements in the consent decree satisfy the requirements for nondischargeability under section 523(a)(4)).

The only (yet still limited) analysis of the preclusive effect of the Consent Judgment is the unsupported claim that PayJunction "does not stand in the shoes of the consumer for purposes of the Consent Judgment which has been entered in the State District Court." Br. at 6. The claim appears premised on the presumption that "PayJunction's interests and the interests of consumers are in direct conflict." *Id.* But, the Terms and Conditions (the "T&Cs") that Glasser entered into, as part of the Merchant Services Agreement on behalf of Glasser Images, expressly provide that PayJunction "may assert any claim on behalf of a Cardholder individually or on behalf of all

12

Cardholders as a class." *See* Compl., Ex. B (T&Cs, § 15 at 8); *Capital Promotions, L.L.C. v. Don King Prods.*, 527 Fed. App'x. 587, 589 (8th Cir. 2013) ("hold[ing] that DKP was in privity with Fields because their contractual relationship is the basis of Capital's claim" for collateral estoppel). The reason is simple: PayJunction has refunded all consumers that initiated chargeback claims because Glasser and Glasser Images failed to timely dispute the chargebacks. *See* Suppl. Odirakallumkal Decl., ¶ 12. Indeed, PayJunction is precluded from being in conflict with consumers due to Glasser's and Glasser Images' own inaction—the failure to timely dispute chargebacks bars PayJunction from seeking recovery from consumers. *See id.*; *see also, e.g.*, *Pinkard v. Morris*, 215 Ga. App. 297, 298 (Ga. Ct. App. 1994) ("'Privity,' for purposes of collateral estoppel, connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right."). Accordingly, the notion that PayJunction is not in privity with consumers for purposes of the collateral estoppel analysis is inconsistent with the express contract terms and the practical positions of the parties.

The remaining contentions concerning the preclusive effect of the Consent Judgment is limited to bald assertions that the Consent Judgment does not satisfy the elements of collateral estoppel for purposes of § 523(a)(2)(A). PayJunction has analyzed each element extensively in its cross-motion for partial summary judgment [Docket No. 31], which it incorporates herein by this reference in the interest of conserving judicial resources and limiting duplication of argument. As set forth more fully therein, PayJunction has demonstrated that it is entitled to rely on the Consent Judgment for collateral estoppel purposes as to its § 523(a)(2)(A) claim.

13

V.      **Genuine Issues of Material Fact Preclude Summary Judgment on PayJunction's**
**§ 523(a)(2)(A) Claim to the Extent It Is Not Dispositively Resolved by the Consent**
**Judgment.**

"A discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud[.]" 11 U.S.C. § 523(a)(2)(A). To obtain a determination that debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), a creditor must prove that the debtor did the following by a preponderance of the evidence: "(1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage." *Hernandez v. Gen. Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 591, 602 (8th Cir. 2017).  Additionally, "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359 (2016); *see also In re Wigley*, 620 B.R. 87, 91 (B.A.P. 8th Cir. 2020).  There is "no writing requirements" for statements that "fall into the more general category of 'false pretenses, . . . false representation, or actual fraud." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 712 (2018).  As set forth more fully below, PayJunction has adduced evidence to satisfy each of the elements of its claim under § 523(a)(2)(A).

14

A.    **Glasser Made Ongoing, Express Warranties under the Merchant Services Agreement and Implicit Representations Through His Concealment of Multiple Defaults under the Agreement.**

Glasser made both express representations in the Merchant Services Agreement and its failure to notify PayJunction of its rapidly deteriorating financial condition.[5] *First*, as set forth above, Glasser made affirmative Warranties set forth in the Merchant Services Agreement *each time Glasser Images submitted a credit card payment through PayJunction's payment processing platform*. *See* Compl., Ex. B (T&Cs, § 4 at 3). Those Warranties included representations that there were (1) "no materially adverse changes in information provided in the Merchant Application or in the Merchant's financial condition," (2) that the "Transaction is genuine and arises from a bona fide sale of . . . services," (3) that the "Transaction is not subject to dispute," and (4) "[e]ach statement on the Transaction Receipt is true, and Merchant has no knowledge of facts that would impair the validity or collectability of the amount of the Transaction." *See id.*

*Second*, Glasser concealed obvious defaults under the Merchant Services Agreement as its financial condition deteriorated. "Silence as to a material fact can constitute a false representation." *In re Juve*, 761 F.3d 847, 853 (8th Cir. 2014); *see also Portal Invs., LLC v. Johnson (In re Johnson)*, 584 B.R. 895, 905 (Bankr. D.N.D. 2018) ("Withholding information that the debtor knows to be material is a form of false representation under section 523(a)(2)(A)."). "Similarly, false representation 'denotes not only written or spoken words but also any other conduct that amounts to an assertion not in accordance with the truth.'" *Johnson*, 584 B.R. at 905-

---

[5] As set forth above, Glasser is the alter ego of Glasser Images. However, to the extent the Court does not find alter ego, Glasser may nevertheless be liable for Glasser Images' representations based on agency principals. *See, e.g.*, *Reuter v. Cutcliff (In re Reuter)*, 443 B.R. 427, 437 (B.A.P. 8th Cir. 2011) ("In fact, common law agency principles are discussed as being sufficient to support the imputation of fraud from one to another.").

906.  In fact, Glasser was required to notify PayJunction "in writing of any material changes to any information provided herein." Compl., Ex. B (T&Cs, § 4 at 3).  Although it submitted transactions regularly, Glasser Images and Glasser never communicated its financial condition to PayJunction. *Compare* Odirakallumkal Decl., Ex. 4 (identifying transaction dates of chargeback claims) *with id.*, ¶ 5 at 2 (PayJunction only learned of the financial condition and closure of PayJunction from the news after October 7, 2021).  Accordingly, PayJunction has established sufficient evidence to demonstrate that Glasser made cognizable representations for purposes of § 523(a)(2)(A).

### B.    <u>Glasser Knew the Representations Were False When They Were Made</u>.

The evidence in the record is undisputed that Glasser Images had suffered material adverse financial changes and that the transactions were either not genuine or subject to dispute.  Glasser knew that Glasser Images would "just squeeze by" in 2019 due to cash flow issues.  *See* Nelson Decl., Ex. 3.  Glasser admitted that Glasser Image's financial condition continued to be "dire" as early as March 2020 and continued to deteriorate until its closure in October 2021—including failing to pay withholding taxes, bouncing payroll checks, and creative and affirmative efforts to avoid repeat overdraws on its accounts.  *See* Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 63:18 – 64:23, 69:1 – 70:1), Ex. 2 (Oct. 28, 2022 § 341(a) Tr., at 6:9-17).  By September 2020, Glasser admitted that Glasser Images "cannot survive" and "will run out of cash" and Glasser's accountant recommended he consider bankruptcy in November 2020.  *See id.*, Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 70:2-14, 71:1-23).  These financial events and admissions were occurring as Glasser Images continued to submit transactions to PayJunction subject to the continuing Warranties in the Merchant Services Agreement, all of which occurred after January 2019.  *See* Odirakallumkal Decl., Ex. 4.  Glasser undoubtedly knew those Warranties were false when Glasser

158859327.2

Images took payments from customers on the day Glasser Images closed.  *See* Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 90:5-8, 89:24 – 90:1).  Accordingly, PayJunction has established sufficient evidence to demonstrate that Glasser's representations concerning the Warranties—and his failure to communicate these changed conditions to PayJunction while submitting transactions—were false when they were made under § 523(a)(2)(A).

### C. <u>Glasser's Representations Were Deliberately Made for the Purpose of Deceiving PayJunction</u>.

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question."  *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 2017).  "To find fraudulent intent based on circumstantial evidence, the court considers whether the totality of the circumstances presents a picture of deceptive conduct by the debtor which indicates intent to deceive the creditor."  *Johnson*, 584 B.R. 895, 906 (Bankr. D.N.D. 2018) (internal quotations omitted).  "The creditor may present evidence of the surrounding circumstances from which intent may be inferred."  *Hernandez*, 860 F.3d at 603; *see also Fields v. Fields (In re Fields)*, 510 B.R. 227, 236 (B.A.P. 8th Cir. 2014) ("A creditor may introduce circumstantial evidence to infer a fraudulent intent.").

Glasser contends that he—at best—buried his head in the sand and assumed that a miracle would turn the financial tide up to the date Glasser Images closed.  *See id.*, Ex. 4 (Sept. 15, 2022 § 341(a) Tr., 24:16 – 25:16).  Even assuming, *arguendo*, this is believable, Glasser's alleged concern for the welfare of Glasser Images does not square with his conduct—he chose to ignore liabilities of Glasser Images in favor of paying for a lavish personal lifestyle.  *Compare* Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 63:18 – 64:23, 69:1 – 70:1), Ex. 2 (Oct. 28, 2022

17

§ 341(a) Tr., at 6:9-17) *with* Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 74:1 – 76:12),

Ex. 4 (Sept. 15, 2022 § 341(a) Tr., 27:5-17), Ex. 2 (Oct. 28, 2022 § 341(a) Tr., 4:13-24, 5:19 –

6:4).  Glasser knew that the tap would run dry if he was honest about Glasser Images' defaults

under the Warranties because the Merchant Services Agreement he signed provided for

termination on default.  *See* Compl., Ex. B (T&Cs, § 11.2(b) at 5).  Additionally, Glasser admits

that he knew PayJunction would be required to pay the chargebacks if Glasser Images did not.  *See*

Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 60:10-14); *id.*, Ex. 4 (Sept. 15, 2022

§ 341(a) Tr., 22:2-6).  Indeed, this outcome was explicit in the credit association operating rules

to which Glasser agreed.  *See* Suppl. Odirakallumkal Decl., ¶ 9, Ex. 1 (Visa Chargeback

Guidelines, § 3 at 20), Ex. 2, (Mastercard Chargeback Guide), Ex. 3 (Discover Dispute Rules

Manual, § 5.2.4 at 5-3), Ex. 4 (American Express How to Manage and Help Prevent Disputes, at

4, 35).  PayJunction has set forth evidence that is more than sufficient for the Court to find that

Glasser intended that PayJunction act on the misrepresentations by continuing to perform under

the Merchant Services Agreement and not exercise its termination rights.

### D.    PayJunction Justifiably Relied on Glasser's Representations.

The "level of a creditor's reliance on a fraudulent misrepresentation necessary to place a

debt thus beyond release" is "the less demanding one of justifiable reliance" instead of reasonable

reliance. *Field v. Mans*, 516 U.S. 59, 61 (1995).  "Justifiable reliance is an intermediate standard

between actual reliance and reasonable reliance."  *R&R Ready Mix v. Freier (In re Freier)*, 604

F.3d 583, 588 (8th Cir. 2010). "Reliance can be justifiable even though an investigation would

have revealed the falsity of a representation." *Id.* "The question of whether reliance is justifiable

is subjective and dependent upon the qualities and characteristics of the particular creditor, and the

circumstances of the particular case." *Johnson*, 584 B.R. at 907.  PayJunction did not learn of the

18

attorney general investigation into Glasser and Glasser Images or the business's changed financial circumstances until after Glasser Images closed.  *See See* Odirakallumkal Decl., ¶ 5 at 2. Additionally, chargeback claims did not increase precipitously until the closure.  *See id.*, ¶ 5 at 2, Ex. 4.  Moreover, PayJunction acted immediately after learning of the defaults to enforce its rights. *See, e.g.*, *id.*, Ex. 1 (Georgia Verified Compl., Ex. C).  Accordingly, PayJunction had no indication that the Warranties Glasser repeatedly made upon submission of transactions were false and its reliance on the Warranties (which proved false) was clearly justified.

E.    **PayJunction Incurred the Chargeback Liability as a Proximate Result of Glasser's Misrepresentations.**

The chargeback liability is a direct result of Glasser Images continuing to process charges under the Merchant Services Agreement while Glasser concealed its multiple defaults under the Merchant Services Agreement.  *See* Compl., Ex. B (T&Cs, § 11.2(b) at 5) (grounds for termination).  PayJunction's liability specifically arises from refunding consumers based on their chargeback claims that arose while PayJunction had defaulted under financial condition Warranties.  *See* Odirakallumkal Decl., Ex. 4; Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 69:1 – 70:1).

To the extent the preclusive effect of the Consent Judgment does not conclusively resolve the § 523(a)(2)(A) claim in favor of PayJunction, PayJunction has set forth sufficient evidence to establish a sufficient showing on every essential element of its claim.  Accordingly, the Motion must be denied with respect to § 523(a)(2)(A).

19

VI.   **Genuine Issues of Material Fact Preclude Summary Judgment on PayJunction's § 523(a)(6) Claim.**

"A discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  As set forth more fully below, PayJunction has adduced evidence to satisfy each of the elements of its claim under § 523(a)(6).

A.   **The Continued Submission of Transactions under the Merchant Services Agreement and Subsequent Failure to Dispute Chargeback Claims Constitute an Injury under § 523(a)(6).**

"The United States Supreme Court has long ago noted that the term 'injury' is not restricted to merely physical harm but embraces economic injury as well." *In re Zinke*, 174 B.R. 1017, 1022 (Bankr. N.D.N. 1994) (citing *McIntyre v. Kavanaugh*, 242 U.S. 138, 141 (1916)).  ***First***, PayJunction provided provisional credit to Glasser Images to Glasser Images for each "valid and undisputed" Transaction and was permitted to "suspend or discontinue provisional credit . . . for any reason that would justify termination of the Merchant Agreement."  *See id.* (T&Cs, § 3.4(a) at 2).  PayJunction was entitled to "reverse or revoke such credit, including in response to any Chargeback."  *See id.* (T&Cs, § 12.3 at 6).  PayJunction was granted a security interest in such provisional credits.  *See id.* (T&Cs, § 14.1(a) at 6).  Glasser utilized the funds transferred to Glasser Images (in the form of provisional credits) for a litany of personal purposes.  *See* Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 74:1 – 76:12), Ex. 4 (Sept. 15, 2022 § 341(a) Tr., 27:5-17), Ex. 2 (Oct. 28, 2022 § 341(a) Tr., 4:13-24, 5:19 – 6:4).  By the time PayJunction became aware of the chargeback liability and Glasser Images' financial condition, the Glasser Images account intended to provide recovery for PayJunction had insufficient funds.  *See* Suppl.

20

Odirakallumkal Decl., ¶ 12.  The conversion and dissipation of those provisional credits in which PayJunction held a security interest constitutes an injury.  *See, e.g.*, *St. Luke's Hosps. of Fargo, Inc. v. Smith (In re Smith),* 119 B.R. 714, 721 n. 2 (Bankr. D.N.D. 1990) ("A debtor's conversion of encumbered property to his own use and benefit may be regarded as an 'injury' within the meaning of section 523(a)(6)."); *Zinke*, 174 B.R. at 1022 ("the wrongful disposition of collateral can be injurious conduct giving rise to a nondischargeable obligation under the statute").

   *Second*, an intentional violation of an injunction constitutes an injury for purposes of § 523(a)(6).  *See, e.g.*, *In re Charron*, 541 B.R. 656, 667 (Bankr. W.D. Mich. 2015) (finding contempt sanctions nondischargeable under § 523(a)(6) "to the extent the Contempt Award in this proceeding arose from the Debtor's willful and malicious violation of the Injunctive Order and caused injury to the Plaintiff"); *Williams v. Int'l Brotherhood of Elec. Workers Local 520 (In re Williams)*, 337 F.3d 504, 512 (5th Cir. 2003) ("An intentional violation of the order is necessarily without 'just cause or excuse' and cannot be viewed as not having the intention to cause the very harm to the protected persons that order was designed to prevent.").  Glasser did not comply with the preliminary and permanent injunctions entered by the United States District Court for the District of Georgia (the "Georgia District Court") compelling Glasser to participate in the chargeback dispute process.  *See, e.g.*, Odirakallumkal Decl., ¶¶ 7-8 at 3, Exs. 1-3.  Indeed, the Georgia District Court specifically found that Glasser and Glasser Images did not comply with the preliminary injunction and acted in bad faith, resulting in the conversion of the preliminary injunction into a permanent injunction, and awarding attorney's fees in PayJunction's favor.  As a result, the chargeback claims became final and uncontestable and the amounts necessary to fund the undisputed chargeback claims were debited from PayJunction's accounts.    Suppl.

Odirakallumkal Decl., ¶ 12.  Accordingly, Glasser cause an economic injury to PayJunction to the extent of the chargebacks paid by PayJunction.

### B.    Glasser Willfully Injured PayJunction.

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *accord Johnson v. Miera (In re Miera)*, 926 F.2d 741, 744 (8th Cir. 1991) ("[A] person acts intentionally if he knows that the consequences are certain, or substantially certain, to result from his act.") (internal quotations omitted).  ***First***, Glasser willfully injured PayJunction by continuing to cause Glasser Images to submit transactions for nonrefundable consumer deposits when Glasser knew the business was unable to continue operations.  *See, e.g.*, Nelson Decl., Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 72:24 – 73:4).  Glasser knew that the resulting chargeback liability for nonperformance of services would be borne by PayJunction.  *See id.* (Apr. 12, 2024 Glasser Dep. Tr., at 60:10-14); *id.*, Ex. 4 (Sept. 15, 2022 § 341(a) Tr., 22:2-6).  Given Glasser's awareness of the company's poor financial situation, Glasser was "substantially certain" that PayJunction would bear unrecoverable chargeback liability, particularly where Glasser Images continued to submit credit card payments after closing.  *See id.*, Ex. 7 (Apr. 12, 2024 Glasser Dep. Tr., at 90:5-8, 89:24 – 90:1), Ex. 4 (Sept. 15, 2022 § 341(a) Tr., at 25:24-26:1 ("But certainly, clients wanting refunds or being alarmed that those services wouldn't be provided, certainly is a reasonable expectation).  ***Second***, "when a court of the United States issues an injunction or other protective order telling a specific individual what actions will cross the line into injury to others, then damages resulting from an intentional violation of that order . . . are *ipso facto* the result of a willful and malicious injury."  *In re Behn*, 242 B.R. 229, 238 (Bankr. W.D.N.Y. 1999) (internal citation and quotations omitted).  As set forth above,

22

Glasser's failure to comply with the chargeback dispute injunction issued by the Georgia District Court was a willful violation of a court order that was substantially certain to increase chargeback liability to PayJunction.  Suppl. Odirakallumkal Decl., ¶¶ 11-12.  Accordingly, Glasser acted willfully for purposes of § 523(a)(6).

### C.    Glasser's Conduct Was Malicious Because It Was Certain, or Almost Certain, to Cause Harm to PayJunction.

In the Eighth Circuit, a debtor's conduct is malicious if it is "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause financial harm." *In re Long*, 774 F.2d 875, 881 (8th Cir. 1985).  Malice requires more than just reckless behavior—the defendant must have acted with the intent to harm.  *See Miera*, 926 F.2d at 743.  However, the malice standard *does not* require spite, ill will, or a personal animosity. *Dahlgren & Co. v. Lacina (In re Lacina)*, 162 B.R. 267, 275 (Bankr. D.N.D. 1993). A wrongful act is malicious if it is "done intentionally, without just cause or excuse, and with the intent to injure" or there exists a "knowing wrongfulness or knowing disregard of the rights of another." *Id.* (quoting *Skaarer v. Fercho (In re Fercho)*, 39 B.R. 764, 767 (Bankr. D.N.D. 1984)).  "Conduct which is certain or almost certain to cause financial harm to the creditor" in addition to the "debtor's knowledge that he or she is violating the creditor's legal rights," when taken together, is sufficient to establish a claim under § 523(a)(6). *In re Logue*, 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003).

Glasser's conduct was malicious for at least two reasons.  **First**, Glasser's conduct in submitting transactions while the company was in dire financial condition was necessarily targeted at PayJunction because Glasser admits he understood PayJunction would be liable to pay chargebacks if Glasser could not.  *See* Suppl. Odirakallumkal Decl., ¶ 12.  **Second**, "[a]n intentional violation of [an] order is necessarily without 'just cause or excuse.'" *Behn*, 242 B.R.

23

at 238; *see also In re Nangle*, 274 F.3d 481, 484 (8th Cir. 2001) (contempt sanction arose from willful and malicious conduct sufficient to support a § 523(a)(6) judgment where "the state court held that [the creditor] was a target, if not the only target, of [the debtor's] willful refusal to obey the court order"). When it issued the preliminary injunction, the Georgia District Court found that "Glasser Images shall be liable for chargebacks once they become final. Because Glasser Image's settlement account has insufficient funds to cover the chargebacks, PayJunction will have to pay them if they become final." *See* Odirakallumkal Decl., Ex. 2 (Prelim. Inj. Order at 2). Thus, any violation of the preliminary injunction would necessarily and inexcusably harm PayJunction.

As set forth above, PayJunction has set forth sufficient evidence to establish a sufficient showing on every essential element of its § 523(a)(6) claim. Accordingly, the Motion must be denied with respect to § 523(a)(6).

## <u>CONCLUSION</u>

For the foregoing reasons, PayJunction respectfully requests this Court deny the Motion and grant PayJunction all other relief that is just and proper.

24

158859327.2

Dated: May 21, 2024

*/s/ Berly D. Nelson*
Berly D. Nelson (ND #05903)
Serkland Law Firm
10 Roberts Street North
Fargo, ND 58102-4982
Phone: 701.232.8957
Fax: 701.237.4049
bnelson@serklandlaw.com

*/s/ Robert F. Elgidely*
Robert F. Elgidely (pro hac vice)
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, Florida, 33131
Phone: (305)442-6543
Fax: (305) 442-6541
RElgidely@foxrothschild.com

*Attorneys For Plaintiff Messiahic, Inc. d/b/a PayJunction*

25