UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Jack A. Glasser,<br><br>      Debtor. | Bankruptcy No.: 22-30244<br><br>Chapter 7 |
| Messiahic, Inc.<br>d/b/a PayJunction,<br><br>      Plaintiff,<br>vs.<br><br>Jack A. Glasser,<br><br>      Defendant. | **Adversary No. 23-07006** |

**STATEMENT OF UNDISPUTED FACTS**

Plaintiff Messiahic, Inc. d/b/a PayJunction ("Plaintiff" or "PayJunction"), Jack Glasser ("Glasser"), and Jace Schacher ("Schacher") (collectively "Parties"), by and through their undersigned counsels, hereby submits their Statement of Undisputed Facts:

### *Background of Glasser Images*

1. Glasser was the owner of Glasser Images, LLC, ("Glasser Images"), which was a photography and videography business located in Bismarck, North Dakota, and that operated primarily in North Dakota, Minnesota, South Dakota, and Colorado. Glasser Images specialized in wedding photography and videography.

2. Schacher and Glasser were domestic partners who cohabitated with shared finances for at least 15 years. Schacher and Glasser comingled their assets in a joint bank account since about May 2009.

3. Schacher began working for Glasser Images in 2018. Schacher started his employment as an office assistant or client consultant, and, in that capacity, greeted clients, coordinated photoshoots, and handled office duties. In about 2019, Schacher's role changed to wedding client consultant, and he began interfacing further with clients.

### *Glasser Images Payment Processing Relationship with PayJunction*

4. On October 12, 2012, Glasser signed an initial merchant application with PayJunction as President of Glasser Images. Subsequently, on December 4, 2017, Jack Glasser, without a title, signed a Merchant Application ("Application") incorporating Terms & Conditions ("T&Cs") (collectively, the "Merchant Agreement") on behalf of Glasser Images and in his personal capacity to signify his personal guaranty ("Guaranty") of the Company's obligations to PayJunction. Under the Merchant Agreement, PayJunction, as the payment processor and independent sales organization ("ISO"), provided payment processing services to Glasser Images. The Merchant Agreement identifies certain especially "IMPORTANT MERCHANT RESPONSIBILITIES" including that Glasser must (a) "[m]aintain fraud and chargebacks below thresholds," (b) "[r]eview and understand the terms of the Merchant Agreement," and (c) "[c]omply with Visa Operating Rules." At the bottom, the Merchant Agreement provides "Messiahic, Inc. DBA PayJunction is a registered ISO/MSP. . . ." The Guaranty provision provides:

> THIS general, absolute, and unconditional continuing Guaranty ("GUARANTY") by the undersigned (collectively "GUARANTOR" or "my" or "I" or "me"), is for the benefit of Messiahic Inc. DBA PayJunction and/or First National Bank of Omaha (each a "Guaranty Party" and "Collectively the 'Guaranty Parties[']"). For value received, and in consideration of the mutual undertakings contained in the Merchant Transaction Processing Agreement and allied agreements ("AGREEMENT") between the Guaranty Parties and MERCHANT as set

>forth below, ***I absolutely and unconditionally guarantee the full performance of all MERCHANT's obligations to the Guaranty Parties, together with all costs, expenses, and attorneys' fees incurred by any Guaranty Party in connection with any actions, inactions, or defaults of MERCHANT***. I waive any right to require the Guaranty Parties to proceed against other entities or MERCHANT. There are no conditions attached to the enforcement of this GUARANTY. I authorize the Guaranty Parties, their respective agents or assigns to make from time to time any personal credit or other inquiries and agree to provide, at request, financial statements and/or tax returns. I agree that this GUARANTY shall be governed and construed in accordance with the laws of the state of Nebraska, and that the courts of the state of Nebraska shall have and be vested with personal jurisdiction over me. This is a continuing GUARANTY and shall remain in effect until one hundred eighty (180) days after receipt by the Guaranty Parties of written notice by me terminating or modifying the same. The termination of the AGREEMENT or GUARANTY shall not release me from liability with respect to any obligations incurred before the effective date of termination. No termination of this GUARANTY shall be effected by any change in my legal status or any change in the relationship between MERCHANT and me. This GUARANTY shall bind and inure to the benefit of the personal representatives, heirs, administrators, successors and assigns of GUARANTOR and the Guaranty Parties.

(Emphasis added).

5. The "Merchant [ ] Agreement (the 'AGREEMENT')" provides "In the event that Amex is selected; Amex transfer funds will utilize the same attached voided check or bank letter in accordance with the terms and conditions as set forth by American Express Merchant Regulations."  The Merchant Agreement further provides that: "The AGREEMENT consists of the MERCHANT APPLICATION and the TERMS AND CONDITIONS (a separate attachment hereto), and MERCHANT acknowledges it has received and read the Terms and Conditions at the time of signing."

6. The Agreement states that Merchant will "comply with the Merchant Agreement for submitting and processing Transactions with [PayJunction]." PayJunction was "responsible to Merchant for processing Transactions under the Operating Rules for the Card Program services

3

to which Merchant subscribes, which may vary among Card types." The Merchant Agreement further provides: "Merchant, and not Member Bank or ISO, is responsible for any advice from, acts of, as well as omissions, acts of fraud or acts of misconduct by, Merchant's employees, ISOs, consultants, advisors, contractors, Merchant Servicers, Agents, officers and directors." Additionally,

> Merchant consents to receiving electronically rather than in paper form all written notices, disclosures and other documents ("Documents") which are to be provided by ISO to Merchant under the Merchant Agreement. ISO will notify Merchant that a Document is available at ISO's web site with a link to that specific page of the web site containing the Document. Merchant agrees that such notification may be sent to Merchant at the e-mail address provided as part of the Merchant Application.
>
> * * *
>
> Merchant understands and acknowledges that access to the Internet and e-mail are required for Merchant to access Documents electronically or by paperless delivery and Merchant confirms that Merchant has such access. Merchant understands that there are costs related to accessing Documents electronically or by paperless delivery and Merchant agrees that Merchant is responsible for these related access costs.

7.      The Agreement further provides that Merchant will "comply with any applicable laws and Operating Rules for the card type processed." Regarding payments for Valid Transactions,

> (a) [PayJunction] will provide provisional credit to Merchant for each undisputed and valid Transaction that Merchant submits to ISO by crediting Merchant's Settlement Account, provided Member Bank and ISO have received settlement for the valid Transaction through the Interchange procedures specified by the Card Association applicable to the Card used for the Transaction (Member Bank and ISO do not provide payment for all Card types for which Authorization services are provided) . . . Provisional credit to Merchant for a Transaction disputed by a Cardholder for any reason is not final.
> * * *
> (c) Merchant acknowledges that all payments and credits provided to Merchant are provisional and subject to suspension, to Chargebacks and to

> adjustments in accordance with the Merchant Agreement, including, but not limited to the Operating Rules.

(Emphasis added).

8. The Merchant Agreement further provides the Merchant expressly agrees to certain representations and warranties (the "<u>Warranties</u>") "each time Merchant submit[ted] a [credit card] Transaction" for processing by affirmatively inputting a consumer's credit card information into point-of-sale equipment or software as well as sending the information to for the customer to input remotely. Those affirmative Warranties included the following:

> 4.3 There have been no materially adverse changes in information provided in the Merchant Application or in Merchant's financial condition, or management;
>
> \* \* \*
>
> 4.5 The Transaction is genuine and arises from a bona fide sale of merchandise or services by Merchant, represents a valid obligation for the amount shown on the Transaction Receipt and does not involve the use of the Card for any other purpose;
>
> \* \* \*
>
> 4.7 The Transaction is not subject to any dispute, set-off or counterclaim;
>
> \* \* \*
>
> 4.9 Each statement on the Transaction Receipt is true, and Merchant has no knowledge of facts that would impair the validity or collectability of the amount of the Transaction; [and]
>
> \* \* \*
>
> 4.16 Merchant will immediately notify Member Bank and [PayJunction] in writing of any material changes to any information provided herein including but not limited to a change in Merchant's legal entity, location, business type, or the types of goods and services offered for sale by Merchant.

9. Under Section 15 of the T&Cs, to the extent that PayJunction has paid or may become liable for a chargeback, Glasser Images is obligated to reimburse PayJunction for any sums paid by PayJunction or for which PayJunction is liable. The T&Cs further provide that

5

PayJunction has all of the rights and remedies of the cardholders. PayJunction may also assert any claim on behalf of a credit cardholder individually or on behalf of all cardholders as a class.

### *Glasser Images' Closing and Customer Chargebacks*

10. On October 7, 2021, Glasser emailed customers, who had scheduled weddings in October 2021, that Glasser Images was "closing" immediately. "Due to closing, if there is anything paid, we will not be able to provide any refunds."

11. On or about October 11, 2021, the customers of Glasser Images started initiating chargebacks with the providers of their Visa, American Express, Discover, and Mastercard credit cards.

12. Between October 12-19, 2021, PayJunction contacted Glasser about various chargebacks. As of October 26, 2021, PayJunction told Glasser "there [were] over 200 chargebacks that require review and responses from Glasser Images and Jack."

13. On October 27, 2021, PayJunction's Director of Risk & Underwriting, Matt Odirakallumkal, reminded Glasser: "Per the terms of the agreement, Glasser Images (not PayJunction) is responsible for tracking and responding to each and every individual chargeback notification received within the time frame clearly displayed on the chargeback notification."

### *The Georgia District Court Action*

14. On or about November 12, 2021, after numerous unsuccessful efforts by PayJunction to obtain from Glasser and Glasser Images responses to PayJunction's requests for cooperation and information (the "PayJunction Requests"), PayJunction filed a verified complaint in the United States District Court for the Middle District of Georgia (the "Georgia Action"), and an Emergency Motion for Preliminary Injunction ("Emergency Motion"). The underlying causes

6

of action included claims for breach of contract, breach of guaranty and injunctive relief, and PayJunction sought a money judgment for funds owed to it pursuant to the Merchant Agreement and Guaranty. PayJunction also sought affirmative injunctive relief to require Glasser Images and Glasser to provide PayJunction with information and cooperation to timely respond to chargebacks.

15. On November 19, 2021, the Georgia District Court granted the Emergency Motion and issued a preliminary injunction finding that Glasser Images and Glasser "have refused to provide this information [regarding chargebacks] in a prompt manner." The Georgia District Court ordered Glasser "to respond to all chargebacks and retrievals when received from the cardholders' issuing bank or financial institution before the response date noted in each notice."

16. On March 3, 2022, the Georgia District Court found, among other things, that: (1) Glasser Images' acts and omissions "constitute[d] breaches of the Merchant [ ] Agreement and have caused damages to PayJunction"; (2) Glasser was "in breach of his personal guaranty by failing to pay the amounts due from Glasser Images to PayJunction under the terms of the Merchant [ ] Agreement"; (3) "Glasser has not complied with the Court's orders" on the preliminary injunction; and (4) PayJunction was entitled to a default judgment for a sum certain totaling $977,241.14, which includes $64,628.75 in attorneys' fees. The Georgia District Court entered judgment in PayJunction's favor (the "Georgia Judgment"), and "convert[ed] the preliminary injunction . . . to a permanent injunction." The Georgia Judgment is a final, non-appealable judgment. In the Georgia District Court's Order Granting Plaintiff PayJunction's Motion for Entry of Default Judgment entered on March 3, 2022, the Court found, among other things, that "PayJunction's claim for Attorney's Fees against Glasser Images is legal sufficient and states a plausible claim for relief. Defendants have acted in bad faith, have stubbornly refused

7

to comply with the Court's order to mitigate damages caused solely by Defendants' acts and omissions, and have caused PayJunction unnecessary trouble and expense. . . ."

17. The Georgia Judgment was subsequently registered by the Clerk of the Morton County District Court, Mandan, North Dakota, on March 22, 2022.

### *Glasser's Bankruptcy Filing*

18. On August 14, 2022 (the "Petition Date"), Glasser and Schacher filed voluntary Chapter 7 petitions.

19. In his bankruptcy schedules, Glasser scheduled PayJunction as holding an unsecured claim in the amount of $977,241.14 pursuant to the personal guaranty. The schedules did not mark the claim as contingent, unliquidated or disputed, or subject to setoff.

20. On August 15, 2022, Glasser filed amended schedules, which continued to schedule PayJunction's claim as an unsecured claim in the amount of $977,241.14, not subject to setoff, and not marked as contingent, unliquidated or disputed.

21. On December 5, 2022, PayJunction filed a Proof of Claim in Glasser's bankruptcy case alleging damages in an amount of not less than $977,241.14 plus post-judgment interest, attorney's fees and processing fees (the exact amount to be proven at trial) (the "PayJunction Claim"). The PayJunction Claim has not been objected to and is prima facie valid.

### *The Consumer Fraud Action Commenced by the North Dakota Attorney General*

22. On May 3, 2022, the Attorney General for the State of North Dakota (the "AG Action") filed a civil lawsuit against Glasser Images, Glasser and Schacher (the "Glasser Defendants") alleging, in relevant part, (1) after soliciting advance payment from customer, Glasser Images failed to provide products and services, in violation of N.D.C.C. § 51-15-01 et.

8

seq.; (2) Glasser Images solicited advance payments from consumers without disclosing it was undercapitalized and/or financially unstable and could fail at any time, in violation of N.D.C.C. § 51-15-01 et. seq.; (3) Glasser Images, Glasser, and Schacher diverted consumer advance payments to other contractual obligations or personal expenses, in violation of N.D.C.C. § 51-15-01 et. seq.; (4) Glasser Images failed, refused, or was unable to provide the products or services promised to consumers, in violation of N.D.C.C. § 51-15-01 et. seq.; (5) consumer fraud law violations, in violation of N.D.C.C. § 51-15-01 et. seq.; (6) personal liability/conspiracy; and (7) involuntary dissolution of Glasser Images. The factual allegations indicate "Some clients paid advance payments to Glasser Images and received nothing, including a refund." The footnote to that sentence provides:

> An unknown subset of clients filed disputes with their credit card companies and may have received back some or all of the amounts paid to Glasser Images from a third-party credit card processor. Jack and Glasser Images may therefore contend they do not owe restitution, but they do. ***Jack and Glasser Images are not entitled to force a third-party credit card processor to pay consumer restitution on their behalf for amounts paid to Glasser Images***.

AG Complaint at 8 (emphasis added).

23. On January 25, 2023, Schacher and Glasser, in his personal and Glasser Images' corporate capacity, stipulated to an entry of judgment (the "Consent Judgment"). The Glasser Defendants :(1) "admitte[d] that, with the intent that others rely, they engaged in acts or practices constituting violations of the consumer fraud law, N.D.C.C. § 51-15-02"; (2) were "adjudged in violation of the consumer fraud law, N.D.C.C. § 51-15-02, for engaging in deceptive acts or practices, fraud, false presents, false promise, or misrepresentations."

24. Under the Consent Judgment, Glasser and Glasser Images "agree[d] and consent[ed] to the entry of a monetary judgment against them" for "$767,188 as restitution for

9

work not completed or performed and unpaid amounts owed to independent contractors." Schacher "agree[d] and consent[ed] to the entry of a monetary judgment against him" for "$40,000 as restitution for work not completed or performed and unpaid amounts owed to independent contractors."

25. Under the Consent Judgment, Glasser and Schacher agreed to execute stipulations in the bankruptcy proceedings that the consumer restitution and corresponding judgment was non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and/or 523(a)(7). The Consent Judgement in that case incorporates these provisions.

26. In the Attorney General's adversary proceedings commenced against Glasser and Schacher in the United States Bankruptcy Court for the District of North Dakota, Glasser and Schacher, in accordance with the Consent Judgment, both stipulated that the Attorney General's claim for consumer restitution in the amounts of $767,188 and $40,000, respectively, were nondischargable as restitution for work not completed or performed pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(7).

***PayJunction's Adversary Proceeding Against Glasser and Nondischargeable Claims***

27. On May 12, 2023, PayJunction timely commenced this Adversary Proceeding by filing a complaint against Glasser to determine the nondischargeability of PayJunction's claim pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) (the "Complaint").

28. Glasser Images failed to provide products, services, or refunds to customers that Glasser Images advertised and promised to customers who had made payment therefor.

29. Glasser knew he had cash flow and debt issues dating back to 2019. All the initial charges subsequently subject to chargeback were submitted after January 2019.

10

30. PayJunction only learned of Glasser Images' closure and allegations of financial misconduct through news reports after October 7, 2021. Chargeback claims increased precipitously around the same time.

31. On October 14, 2021, just seven days after Glasser Images closed, PayJunction terminated the Merchant Agreement.

32. Glasser used company funds for his personal benefit: a Mercedes lease, a cabin rental in Wyoming and restaurants, meal and smoothie kits, biweekly car detailing services, and haircuts and hair products were all charged to Glasser Images.

33. PayJunction suffered damages resulting from Glasser Images' failure to provide the advertised services by honoring chargeback claims made by the Glasser Images' customers, which PayJunction was legally obligated to do.

34. PayJunction paid $402,885.17 in chargebacks to approximately 31.6% of the individuals identified by the Attorney General as victims of Glasser Images entitled to restitution for the claims asserted by the North Dakota Attorney General, representing approximately 43% of the amount of total chargebacks paid by PayJunction, which this Court has determined to be nondischargeable under 11 U.S.C. § 523(a)(2).

35. PayJunction would not have incurred any liability for chargebacks initiated by customers of Glasser Images had Glasser and Glasser Images timely provided the advertised services to Glasser Images' customers.

11

Dated: May 27, 2024

/s/ Berly D. Nelson
Berly D. Nelson (ND #05903)
Serkland Law Firm
10 Roberts Street North
Fargo, ND 58102-4982
Phone: 701.232.8957
Fax: 701.237.4049
bnelson@serklandlaw.com

/s/ Robert F. Elgidely
Robert F. Elgidely (pro hac vice)
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, Florida, 33131
Phone: (305)442-6543
Fax: (305) 442-6541
RElgidely@foxrothschild.com

*Attorneys For Plaintiff Messiahic, Inc. d/b/a PayJunction*

Dated this 26th day of May, 2024.

/s/ Timothy M. O'Keeffe
Timothy O'Keeffe (ND ID. #05636)
O'KEEFFE O'BRIEN LYSON LTD.
720 Main Avenue
Fargo, ND 58103
Phone: (701) 235-8000
Fax: (701) 235-8023
tim@okeeffeattorneys.com
*Attorney for Defendant*

12