**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re:<br><br>Jack A. Glasser,<br><br>　　　　　Debtor. | Bankruptcy No.: 22-30244<br><br>Chapter 7 |
| Messiahic, Inc.<br>d/b/a PayJunction,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Jack A. Glasser,<br><br>　　　　　Defendant. | Adversary No. 23-07006 |

**PAYJUNCTION'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Messiahic, Inc. d/b/a PayJunction ("PayJunction") hereby replies to Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opposition") filed by Jack Glasser ("Glasser"). PayJunction incorporates by reference all arguments and statements of fact detailed in the Motion and other filings in support of the Motion for Partial Summary Judgment ("Motion") and PayJunction's Opposition to Defendant's Motion for Summary Judgment ("PayJunction's Opp.") and related pleadings.

The principal purpose of the Bankruptcy Code is to grant a "'fresh start'" to the "'honest but unfortunate debtor.'" *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991). "But the Code, like all statutes, balances multiple, often competing interests. Section 523 is a case in point: Barring certain debts from discharge necessarily reflects aims distinct from wiping the bankrupt's slate clean. Perhaps Congress concluded that these debts involved particularly deserving creditors, particularly undeserving debtors, or both. Regardless, if a fresh start were all that mattered, §523 would not exist." *Bartenwerfer v. Buckley*, 598 U.S. 69, 81, 143 S.Ct. 665, 675 (2023).

159036365.2

Glasser is far from the honest but unfortunate debtor who is entitled to a fresh start. Glasser is an admitted fraudster who defrauded hundreds of consumer victims by accepting advanced deposits with the intention of not providing the agreed-upon services, while he and Schacher[1] – Glasser's domestic partner and fellow fraudster, used these deposits and other business assets in the form of fictitious loans from Glasser Images to fund their lavish lifestyle. *See* Declaration of Berly Nelson ("Nelson Decl." Ex. 1, Deposition of Jack Glasser at 30:3-10.) Glasser implemented a "no refund" policy that enabled Glasser to retain customer deposits without providing the promised services. He robbed newlyweds of lasting memories of their wedding day, and left customers to fend for themselves. Glasser's fraudulent scheme was admitted in the AG Consent Judgment, which Glasser also admitted was nondischargeable under § 523(a)(2)(A).

Glasser knew that PayJunction would be responsible for honoring Chargebacks, which would not have been initiated by the restitution victims but for Glasser's admitted fraud. (Nelson Decl. Ex. 1 at 66:24-67:3, 73:5-8, 101:10-13.) There is far more than a casual overlap between Glasser's fraud and PayJunction's claim. PayJunction is the largest victim of Glasser's admitted fraud, effectively paying claims to restitution victims that Glasser was responsible for paying.

Glasser fails to present any evidence or argument to rebut PayJunction's evidence and undisputed facts that would support a denial of partial summary judgment in PayJunction's favor.

### A.  Glasser Does Not Refute any of the Statement of Undisputed Facts

Glasser admitted to defrauding hundreds of consumers from whom he and Glasser Images took advanced deposits with the intent that these customers rely on the acts or practices upon which he and Glasser Images engaged, which constituted violations of the consumer fraud law, N.D.C.C.

---

[1] Unless otherwise indicated, all capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

2

§ 51-15-02. Glasser does not dispute that he stipulated to the AG Consent Judgment based on this fraud, "expressly agree[ing] that consumer restitution and corresponding judgment awarded to the State . . . shall be considered non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) . . .," AG Consent Judgment, ¶ 19, or that he stipulated to a judgment of nondischargeability under § 523(a)(2)(A) based on his admitted fraud.

Nor does Glasser challenge any of the undisputed facts submitted by PayJunction in support of the Motion or object to any of the uncontroverted evidence presented by PayJunction including the Declaration of Authenticity of Business Records of AG Investigator Crystal Kraft, which attaches a list of restitution victims included as part of the AG Complaint and AG Consent Judgment, or the Declaration of Mathew Odirakallumkal and supporting exhibit, which evidences PayJunction's payment of $402,885,17 to the victims on the AG's restitution list in the form of Chargebacks paid by PayJunction as a result of Glasser's admitted fraud. Glasser also does not, and cannot, dispute the validity or amount of the PayJunction Claim or that judgment was entered by the Georgia District Court determining Glasser and Glasser Images' liability to PayJunction, and issuing a permanent injunction in favor of PayJunction. Glasser also does not, and cannot, dispute that he and Glasser Images made certain Warranties in the Merchant Services Agreement each time Glasser Images accepted a card payment from a customer which was processed using PayJunction's payment processing system, which Warranties were undisputedly false. Glasser also does not dispute the testimony in Mr. Odirakallumkal's declaration that PayJunction justifiably relied on those Warranties by permitting Glasser Images to continue to use PayJunction's payment processing platform, completely unaware that the Warranties were false as a result of Glasser's now-admitted fraud, or that PayJunction suffered damages as a result of those false representations. Finally, Glasser does not dispute that the Merchant Services Agreement expressly gives

3

PayJunction the right to stand in the shoes of the customers (i.e., restitution victims) and assert their claims against individually or as a class. Accordingly, PayJunction has satisfied its burden to quantify the damages proximately caused by Glasser's fraud for purposes of collateral estoppel.

> **B.  The Issues Determined in the AG Consent Judgment and Raised in PayJunction's § 523(a)(2)(A) Claim are Identical and Satisfy the Actually Litigated Requirement.**

Although Glasser has admitted that "[t]here is no doubt some overlap exists with regard to the facts of these two matters", Glasser Mem. of P&As in Support of Mot. for Summary Judgment, p. 6, he attempts to distance himself from the claims asserted by PayJunction on the basis that he is not bound by the AG Consent Judgment or the resulting AG Nondischargeability Judgment for collateral estoppel purposes. Glasser erroneously asserts that the AG Consent Judgment, and resulting judgment of nondischargeability, are not entitled to collateral estoppel effect because (a) the issues in PayJunction's non-dischargeability complaint were not actually litigated, and (b) PayJunction was not a party to the AG Action or related adversary proceeding resulting in a stipulated judgment under §§ 523(a)(2)(A) and (a)(7) in favor of the AG.

However, Glasser completely ignores the undisputed fact that (1) PayJunction paid $402,885.17 in Chargebacks to approximately 31.6% of the individuals identified as victims of Glasser Images entitled to restitution for the claims asserted by the AG, representing approximately 43% of the amount of total Chargebacks paid by PayJunction, which is nondischargeable under § 523(a)(2)(A) based on Glasser's admitted fraud (Odirakallumkal Decl. ¶ 13; see also id. Ex. 4.); and (2) PayJunction has the right to stand in the shoes of those restitution victims that PayJunction made whole by asserting those victims claims individually or as a class under the Merchant Services Agreement.

4

159036365.2

Glasser's assertion that the AG Consent Judgment does not establish the elements of fraud for purposes of nondischargeability is belied by the AG Consent Judgment. Defendant concedes that a consent judgment may satisfy the actually litigated requirement. *See* Opp Br., at 3 (citing *In re Knodle*, No. 95-30081, 1995 WL 1943413, at *3 (Bankr. D.N.D. Sept. 1, 1995)). Consent judgments are entitled to collateral estoppel effect if the parties to a consent judgment indicate clearly the intention that the decree to be entered shall not only terminate the litigation of claims but, also, determine finally certain issues, then their intention should be effectuated. *Knodle*, 1995 WL 1943413, at *3 ("Even where a consent judgment is devoid of supporting facts, it is preclusive if the parties to a consent judgment intended to be bound").

Here, each of the elements have been satisfied.  **First**, Glasser was a party to the AG consumer fraud action resulting in the AG Consent Judgment.  *See* Nelson Decl., Ex. 1.  This fact cannot be challenged.  Although not required for collateral estoppel purposes, Section 15 of the Terms & Conditions of the Merchant Services Agreement executed by Glasser provides that PayJunction (a) has all of the rights and remedies of the cardholders, and (b) may also assert any claim on behalf of a credit cardholder individually or on behalf of all cardholders as a class. (Dkts. 1-1, 1-2.)  The AG prosecuted the AG Action and obtained the AG Consent Judgment and resulting AG Nondischargeability Judgment on behalf of the consumers who were victims of Glasser's fraud. (*See* AG Decl. ¶ 4.) PayJunction paid $402,885.17 in Chargebacks to approximately 31.6% of the individuals identified as victims of Glasser Images entitled to restitution for the claims asserted by the AG, representing approximately 43% of the amount of total Chargebacks paid by PayJunction, which this Court has previously determined to be nondischargeable under § 523(a)(2)(A). (Odirakallumkal Decl. ¶ 13; *see also id.* Ex. 4.). Glasser has not objected to Mr. Odirakallumkal's declaration, or submitted competing evidence, and does not dispute these facts.

5

159036365.2

Without citing authority, Glasser simply states that "PayJunction was not a party to the AG Action, nor can it stand in the shoes of the consumers intended to be represented in the prior AG action."  Glasser's Opp., at 4. Again, collateral estoppel only requires the party against whom collateral estoppel is asserted (i.e., Glasser) is a party or in privity to a party.[2]

**Second**, the issue sought to be precluded is the same as the issue involved in the AG Action and the AG Nondischargeability Action. Glasser, on behalf of himself and Glasser Images, admitted that with the intent that others rely, they engaged in acts or practices constituting violations of the consumer fraud law, N.D.C.C. § 51-15-02. He also admitted to violating the consumer fraud law, N.D.C.C. § 51-15-02, for engaging in deceptive acts or practices, fraud, false pretense, false promise, or misrepresentations.

While Glasser now asserts that PayJunction cannot establish all of the elements of its nondischargeability claim because "[t]here is no requirement to prove that the consumer was in fact misled, deceived, or damaged by the Defendant's actions", Glasser Opp., at 6, Glasser ignores his admission that the AG Consent Judgment would be nondischargeable under § 523(a)(2)(A), which exempts from discharge a debt "(2) for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent obtained by*— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" (Emphasis added). By stipulating that the AG Consent Judgment was nondischargeable under § 523(a)(2)(A), and the Court having entered a nondischargeable judgment based on the AG Consent Judgment, Glasser necessarily agreed that the consumer fraud claims fell within the category of

---

[2] In addition, Glasser admitted fraud are judicial admissions and Glasser is equitably estopped from asserting otherwise.

6

fraud claims that are exempted from discharge. Accordingly, the issues of consumer fraud and the nondischargeability of those fraud claims under § 523(a)(2)(A) were actually litigated.

It is disingenuous for Glasser to assert that "[t]he damages now claimed by PayJunction have no relation to Glasser Images advertising or selling merchandise to PayJunction." This is not the basis for a collateral estoppel determination. By stipulating to the AG Consent Judgment and AG Nondischargeability Judgment, Glasser agreed that his fraud victims were entitled to restitution based on damages suffered by them. It is undisputed that PayJunction's claim for damages is based entirety on Chargebacks asserted by consumer victims included on the AG's restitution list, whose restitution claims were satisfied by PayJunction.

While Glasser asserts that the restitution award included restitution "for work not completed or performed and unpaid amounts owed to independent contractors in the AG action" and "is silent as to how this amount was calculated", Glasser Opp, at 4, Glasser fails to address the overlap between the list of restitution victims provided by the AG, *see* Exhibit A to the Declaration of Authenticity of Business Records of AG Investigator Crystal Kraft, and the restitution victims on the very same list who PayJunction made whole in the amount of $402,885,17. *See Odirakallumkal Decl.* ¶ 13; Ex. 4. The fact that these victims were defrauded by Glasser is not disputed. Accordingly, PayJunction's damages are the amount of Chargebacks ***actually paid by PayJunction to these victims***. PayJunction's Proof of Claim is prima facie valid.[3]

**Third**, the same issue sought to be precluded in this Adversary Proceeding was actually litigated in AG Action. That Glasser defrauded customers of Glasser Images was actually litigated

---

[3] Glasser also scheduled the claim as undisputed, non-contingent and liquidated. And the Georgia District Court Judgment is final and non-appealable. Accordingly, PayJunction has satisfied its burden to quantify the damages proximately caused by Glasser's fraud for purposes of collateral estoppel.

7

159036365.2

and the AG Consent Judgment and resulting AG Nondischargeability Judgment manifested Glasser's intent to be bound. *See* AG Consent Judgment, ¶¶ 1, 16, 19, 20). This is all that is required for purposes of satisfying the "actually litigated" element of collateral estoppel.

**Fourth**, both the AG Consent Judgment and the AG Nondischargeability Judgment are final judgments. No appeals were taken in either proceeding. This element is not challenged.

**Fifth**, the fraud determination in the AG Action was essential to the AG Consent Judgment, resulting in a restitution claim for victims of Glasser's fraud, that Glasser stipulated was nondischargeable in the AG Adversary Proceeding. But for Glasser's admitted fraud, there could not be a restitution award and the AG Nondischargeability Judgment could not have been entered. PayJunction has the right assert the claims of the restitution victims under the Merchant Services Agreement. But PayJunction itself was also defrauded as the Warranties made by Glasser were false, resulting in Chargebacks paid to the restitution victims.

    **C. Glasser, and Not PayJunction, is Responsible for Modifying the AG Consent Judgment of AG Nondischargeability Judgment if Restitution Victims Were Made Whole by PayJunction.**

Finally, Glasser's assertion that PayJunction's damages should be reduced due to Glasser pursuing claims "on behalf of the consumers" resulting in a double recovery, is nonsensical. If consumer victims have been made whole by PayJunction, they no longer hold a restitution claim and are not entitled to payment by Glasser. But Glasser – not PayJunction – has the responsibility to modify the AG Consent Judgment and the AG Adversary Proceeding to the extent that any of these restitution victims have been paid by PayJunction. *See, e.g.,* Fed. Bank. R. 9024; Fed. R. Civ. P. 60(b); *Smith v. Bd. of Educ. of the Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 570-71 (8th Cir. 2014) ("Accordingly, a party seeking modification[, under Fed. R. Civ. P. 60(b)(5),] [must establish] that a significant change in circumstances warrants revision of the decree . . . .")

(citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 393 (1992)); *In re Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993) (applying Rufo standards to modify a bankruptcy discharge); *Waterson v. Hall*, 515 F.3d 852, 856 (8th Cir. 2008) (citing *In re Hendrix*, 986 F.2d at 197-98).

The undisputed fact that PayJunction paid restitution victims subject to the AG Consent Judgment and AG Nondischargeablity Judgment does not mean that **PayJunction's** damages should be reduced by at least 43% as suggested by Glasser. PayJunction's claim for damages is undisputed and cannot be collaterally attacked.[4] As the AG noted:

> "Jack and Glasser Images are ***not entitled to force a third-party credit card processor to pay consumer restitution on their behalf for amounts paid to Glasser Images***."

AG Complaint, at 8, n.2 [Adv. Docket No. 33-2] (emphasis added). This contradicts Glasser's assertion that "[t]he existence of the Merchant Application, and the Terms and Conditions to which these parties were subjected to . . . were not facts considered in the AG action, as the business relationship between Glasser Images and PayJunction was not one that involved the sale and/or purchase of merchandise." Glasser Opp., at 7. If PayJunction's claim did not involve the sale and/or purchase of merchandise, PayJunction could not have been forced to honor the Chargebacks made by these restitution victims. It is offensive to suggest that Glasser could avoid its responsibilities to restitution victims by shifting the burden onto PayJunction to pay Chargebacks asserted by those same victims. The AG anticipated Glasser's argument and rejected it.

PayJunction has presented undisputed evidence to support partial summary judgment in its favor with respect to the consumer fraud claim asserted by the AG on behalf of restitution victims

---

[4] Indeed, the Georgia District Court entered judgment in PayJunction's favor (which is final, and non-appealable), Glasser scheduled the PayJunction Claim and did not mark the claim as disputed, contingent, unliquidated or subject to setoff, and PayJunction's Proof of Claim is prima facie valid. If there is any risk of a double recovery, it is Glasser's burden to seek a modification of the Consent Judgment or AG Nondischargeability Judgment.

resulting in the AG Consent Judgment to the extent that PayJunction made these victims whole. Glasser Images was accepting customer payments up to the day it closed its doors and Glasser and Schacher used those ill-gotten payments to fund their lavish lifestyle while recklessly destroying hundreds of lives by refusing to provide photography and videography services or refunds, knowing that PayJunction would pay the bill. As acknowledged by the AG, this cannot be allowed. Any other determination would encourage fraudsters like Glasser to retain their ill-gotten gains, forcing third-party credit card processors to initiate litigation to recover such funds.

                                                               Respectfully submitted,

Dated: May 27, 2024

| | |
|---|---|
| /s/ Berly D. Nelson | /s/ Nicholas A. Koffroth |
| Berly D. Nelson (ND #05903) | Robert F. Elgidely (pro hac vice) |
| Serkland Law Firm | Nicholas A Koffroth (pro hac vice) |
| 10 Roberts Street North | Fox Rothschild LLP |
| Fargo, ND 58102-49822 | South Biscayne Boulevard, Suite 2750 |
| Phone: 701.232.8957 | Miami, Florida, 33131 |
| Fax: 701.237.4049 | Phone: (305)442-6543 |
| bnelson@serklandlaw.com | RElgidely@foxrothschild.com |
| | NKoffroth@foxrothschild.com |

*Attorneys For Plaintiff Messiahic, Inc. d/b/a PayJunction*

159036365.2