## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Jack A. Glasser,<br><br>          Debtor. | **Bankruptcy No.: 22-30244**<br><br>**Chapter 7** |
| Messiahic, Inc.<br>d/b/a PayJunction,<br><br>          Plaintiff,<br>  vs.<br><br>Jack A. Glasser,<br><br>          Defendant. | **Adversary No. 23-07006** |

## PLAINTIFF PAYJUNCTION'S PRETRIAL BRIEF[1]

### I.    GENERAL STATEMENT OF THE CASE

Plaintiff Messiahic, Inc. d/b/a PayJunction ("Plaintiff" or "PayJunction") provided credit card processing services for Glasser Images, LLC ("Glasser Images" or the "Company") pursuant to a Merchant Services Agreement.

At all relevant times, defendant Jack Glasser ("Glasser") owned and operated Glasser Images, a Bismarck-based company that provided wedding photography and videography services.

---

[1] At the Pretrial Conference on May 28, 2024, the Court stated that the parties may but are not required to submit a pretrial brief, as the parties had already briefed a number of key factual and legal issues in their respective motions for summary judgment. PayJunction submits this pretrial brief in an effort to assist the Court to identify some of the key factual and legal issues to be addressed at trial. PayJunction requests the opportunity to submit a more fulsome brief after trial once all testimony has been heard, all evidence has been submitted.

At all relevant times, defendant Jace Schacher ("Schacher") was Glasser's domestic partner and was employed at Glasser Images.

### *The Merchant Services Agreement*

On December 4, 2017,[2] Glasser executed a Merchant Application ("Application") incorporating Terms & Conditions ("T&Cs") (collectively, the "Merchant Services Agreement") on behalf of Glasser Images and in his personal capacity with respect to his personal guaranty ("Guaranty") of the Company's obligations to PayJunction. Under the Merchant Services Agreement, PayJunction, as the payment processor and independent sales organization ("ISO"), provided payment processing services to Glasser Images. Glasser Images processed a credit card transaction (each a "Transaction") by affirmatively sending an email for the customer's input or inputting a consumer's credit card information into point-of-sale equipment, including a terminal, router or other compatible ancillary equipment, hardware, device, or software (collectively "POS Equipment"). PayJunction provided provisional credit to Glasser Images for each Transaction that Glasser Images submitted by sending to the customers or through its POS Equipment. However, the T&Cs specifically provided that PayJunction was not required to provide credit to Glasser Images for any Transaction that was not a "valid" Transaction and was permitted to "suspend or discontinue provisional credit . . . for any reason that would justify termination of the Merchant Agreement."  If a consumer disputed a Transaction due to, for example, Glasser Images' failure to timely provided the promised photography or videography services) (the "Chargeback"), the provisional credit provided by PayJunction to Glasser Images would not be considered final and would be subject to certain chargeback procedures.

---

[2] Glasser executed a previous Merchant Services Agreement and Guaranty in 2013, which was superseded by the 2017 agreement.

### *Glasser's Representations and Warranties*

Under Section 4 of the T&Cs, Glasser, on behalf of Glasser Images, made a series of affirmative representations and warranties (the "Warranties") "[u]pon signing the Merchant Application, ***and each time Merchant submits a transaction***." Those ongoing Warranties include, among other things, the following:

> 4.3 There have been no materially adverse changes in information provided in the Merchant Application or in Merchant's financial condition, or management;
>
> * * *
>
> 4.5 The Transaction is genuine and arises from a bona fide sale of merchandise or services by Merchant, represents a valid obligation for the amount shown on the Transaction Receipt and does not involve the use of the Card for any other purpose; [and]
>
> * * *
>
> 4.7 The Transaction is not subject to any dispute, set-off or counterclaim[.]

Compl., Ex. B (T&Cs at 3).

### *The Chargeback Process*

Chargebacks arise when a card holder disputes a charge, oftentimes when the customer did not receive goods or services from a merchant. Glasser Images' obligations to respond to Chargebacks—and the consequences for not addressing the claims—are set forth in detail in the Merchant Services Agreement and the card association operating rules incorporated by reference into the Merchant Services Agreement (the "Operating Rules"). Glasser Images agreed to either respond to or pay Chargebacks. Glasser, on behalf of Glasser Images, also agreed to process Transactions in accordance with the Operating Rules of each card association, e.g., Visa, Mastercard, Discover, and American Express (each a "Card Association" and collectively, the

3

"Card Associations").   Each Card Association requires a merchant to submit a dispute to a Chargeback and provide supporting evidence to preserve a dispute to any Chargeback and avoid having the amount of the Chargeback permanently debited. Under the Operating Rules, Glasser Images' failure to timely dispute or respond to a Chargeback may result in losing the Chargeback by default and being unable to remedy the Chargeback or related permanent debit of the Chargeback amount.

Upon receipt of a Chargeback, Glasser Images was notified that it was required to supply a rebuttal and supporting documentation to each Chargeback letter. The Chargeback letters made clear that Glasser Images' failure to respond timely with rebuttal information could result in forfeiture of rights with respect to the Chargeback in issue.

Under the T&Cs, to the extent that PayJunction has paid or may become liable for a Chargeback, Glasser Images is obligated to reimburse PayJunction for any sums paid by PayJunction or for which PayJunction is liable. ***PayJunction has all of the rights and remedies of the cardholders. PayJunction may also assert any claim on behalf of a credit cardholder individually or on behalf of all cardholders as a class***.

### *Fraudulent Business Practices*

Glasser and Schacher ran Glasser Images for their personal benefit and did not observe corporate formalities. Rather, Glasser and Schacher treated Glasser Images as their personal piggybank and took fictitious loans from the Company in order to fund their lavish lifestyle. Although Glasser failed to adequately capitalize Glasser Images at all relevant times, Glasser knew that Glasser Images was insolvent and continued to execute on his business model for Glasser Images that required customers to prepay for services by making advanced credit card payments for services to be rendered in the future. The card payments were processed by PayJunction.

4

At all relevant times, Glasser was attempting to prop up Glasser Images with loans from financial institutions, friends, and family. As early as 2019, Glasser knew that Glasser Images did not generate sufficient revenue to fund operations, and that Glasser Images would not be able to fulfill its obligations to customers without incurring further debt, which Glasser Images lacked the ability to repay. Glasser knew that Glasser Images' failure to deliver on its promise to provide wedding photography and videography services in accordance with Glasser Images' customer contracts without having the ability to issue refunds, would result in Chargebacks for which PayJunction would be liable. As Glasser's scheme began to unravel, he caused Glasser Images to take payment from customers knowing that it would not perform, thereby shifting Glasser Images' liability to customers onto PayJunction.

Under Glasser's direction and control, and due to Glasser's desperation for cash to fund business and personal expenses, Glasser and Schacher caused Glasser Images to aggressively collect payments from customers for future services during the time the Company was in a precarious financial condition and until the time Glasser Images closed its doors on October 7, 2022.  As detailed in the Complaint, Glasser and Schacher were unjustly enriched by using business funds for personal expenses.

### *The Georgia District Court Action*

After reading news reports that Glasser Images had closed its doors, and received more than 500 customer complaints in North Dakota, South Dakota, Minnesota, Colorado and other states, and that Glasser Images was under investigation by the North Dakota Attorney General's Office, PayJunction began experiencing Chargeback claims at an alarming rate.

PayJunction immediately reached out to Glasser to provide information and assistance to determine whether the Chargeback claims could be challenged in whole or in part – advising

5

Glasser that Glasser Images' failure to timely challenge an improper or excessive chargeback claim (usually at least seven (7) business days from the notification) would result in a valid claim that could not later be challenged. However, Glasser ignored PayJunction's requests and refused to provide assistance to PayJunction. Shortly thereafter, PayJunction filed a complaint against Glasser Images and Glasser in the United Stated District Court for the Middle District of Georgia ("Georgia District Court") and obtained an injunction ordering them to cooperate with PayJunction. Glasser failed to comply with the injunction, resulting in increased Chargeback claims, which could not be challenged by PayJunction even if there was a basis to do so. For example, a number of transactions involved wedding shoots that were scheduled in the future (after the date of the Chargeback claims). In other cases, Glasser Images partially performed by taking photographs and video of weddings, but there was no deadline under the customer agreements for Glasser Images to provide these customers with the final product. In some cases, customers received some but not all of the photographs they paid for.  In each instance, these customers had the ability to initiate a Chargeback with their credit card companies, and Glasser Images only had a narrow window of time to respond challenge the chargebacks, after which PayJunction would be legally obligated to pay these customer claims.  At all times, Glasser knew that PayJunction would be responsible for paying the Chargebacks, even if invalid, if Glasser Images did not timely challenge the Chargebacks.

Ultimately, on March 3, 2022, the Georgia District Court entered judgment in favor of PayJunction against Glasser and Glasser Images in the amount of not less than $977,241.14, and converted the preliminary injunction into a permanent injunction, which judgment was subsequently registered by the Clerk of the Morton County District Court, Mandan, North Dakota, on March 22, 2022 (the "Georgia Judgment").  In its Order Granting Plaintiff PayJunction's

6

Motion for Entry of Default Judgment entered on March 3, 2022, the Georgia District Court found that Glasser acted in bad faith, having "stubbornly refused to comply with the Court's order to mitigate damages solely by Defendants' acts and omissions, and have caused PayJunction unnecessary trouble and expense." The Georgia Judgment and related order are final and non-appealable and is entitled to preclusive effect as to Glasser. Glasser is estopped from asserting that he did not refuse to comply with the injunction.

### *The Consumer Fraud Action Commenced by the North Dakota Attorney General*

The North Dakota Attorney General commenced an action (the "AG Action") against Glasser, Schacher and Glasser Images (together, the "Glasser Defendants") alleging that the Glasser Defendants violated North Dakota's consumer fraud law and N.D.C.C. § 51-15-02, engaged in deceptive acts or practices and directly or indirectly made false statements, false promises, or misrepresentations with the intent that others rely thereon, in violation of N.D.C.C. § 51-15-02, while engaging in the sale or advertisement of photography services or any other merchandise. Ultimately, the Glasser Defendants including Glasser entered into a Consent Judgment with the Attorney General (the "AG Consent Judgment") admitting the Attorney General's factual allegations concerning the fraud they perpetrated on Glasser Images' customers and stipulating to the entry of a non-dischargeable judgment based on their fraud under §§ 523(a)(2)(A) and (a)(7). Shortly thereafter, and as required under the terms of the AG Consent Judgment, this Court entered stipulated judgments against Glasser and Schacher determining that such claims were non-dischargeable under §§ 523(a)(2)(A) and (a)(7) (the "AG Nondischargeability Judgment").

On May 28, 2024, the Bankruptcy Court denied PayJunction's motion for partial summary judgment on the grounds that the AG Consent Judgment and the AG Nondischargeability

Judgment did not satisfy the mutuality and identity of issues requirements for collateral estoppel under North Dakota law. The Court also denied Glasser and Schacher's cross motions for summary judgment.

II.     ***FACT ISSUES TO BE DETERMINED AT TRIAL WITH REFERENCE TO THE BURDEN OF PROOF AND A SHORT DISCUSSION OF EVIDENCE TO BE OFFERED***

PayJunction alleges, among other things, that Glasser incurred and caused his business, Glasser Images, to incur debt owed to PayJunction of at least $977,241.14, plus post-judgment interest, attorney's fees and processing fees (the "PayJunction Claim") by, among other things: (1) soliciting large advance payments from customers to take and provide primarily wedding photography and videography services with the knowledge and intent that such products, services, or refunds would not be provided, delivered, or made to Glasser Images' customers; (2) soliciting large advance payments from customers without disclosing that it was undercapitalized and had been undercapitalized for years before its closure; (3) soliciting large advance payments from customers without disclosing that Glasser and Schacher were spending Glasser Images' funds for personal expenses and to fund their lavish lifestyle; (4) knowingly and willfully failing to provide products, services, or refunds to customers that Glasser Images advertised and promised to customers who had made payment therefor; and (5) accepting advanced card payments from customers with the knowledge that PayJunction would be legally obligated to return credit card payments to customers for photography or videography services that Glasser Images could not and would not deliver.

PayJunction alleges that its fraud claims against Glasser and Schacher are based on the same transactions or occurrences and common nucleus of operative facts to which Glasser and Schacher have admitted, and the District Court has found, violated North Dakota's consumer fraud

8

statutes and established grounds for the entry of judgments of non-dischargeability under § 523(a)(2)(A) by this Court.

Of the total amount of the PayJunction Claim, which is prima facie valid, PayJunction has paid $402,885.17 in Chargebacks to approximately 31.6% of the individuals identified by the Attorney General as victims of Glasser Images entitled to restitution for the claims asserted by the North Dakota Attorney General, representing approximately 43% of the amount of total Chargebacks paid by PayJunction, which this Court has determined to be nondischargeable under 11 U.S.C. § 523(a)(2).

Glasser and Schacher fraudulently induced customers of Glasser Images to prepay for goods and services with their credit cards at a time when Glasser knew that Glasser Images could not or would not perform. Glasser's acts and omissions further defrauded PayJunction by enabling Glasser Images to accept customer card payments, often for Glasser and Schacher's personal enrichment, knowing that PayJunction would be liable for customer Chargebacks. Accordingly, Glasser's' debt to PayJunction is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

PayJunction intends to present documentary evidence as set forth in the trial exhibits and testimony to support PayJunction's fraud claim under § 523(a)(2)(A).

### A. *EXCEPTION* FROM DISCHARGE PURSUANT TO 11 U.S.C. § 523(A)(2)(A)

Section 523(a)(2)(A) provides that the Bankruptcy Code does not discharge a debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). To succeed on this claim, the creditor must show by a preponderance of the evidence:

(1) Debtor made a representation,

9

(2) with knowledge of its falsity,
(3) deliberately for the purpose of deceiving [PayJunction],
(4) who justifiably relied on the representation, which
(5) proximately caused [PayJunction] damage.

*Heide v. Juve (In re Juve)*, 761 F.3d 847, 851 (8th Cir. 2014) (citing *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 637 F.3d 855, 860 (8th Cir. 2011) ); *Hasley v. Irons (In re Irons)*, 2017 WL 943897, at *2 (Bankr. D. Neb. Mar. 9, 2017).

The Eighth Circuit Court of Appeals has "le[ft] open, the question of whether those elements should be broadened under the Supreme Court's . . . opinion in *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581[] (2016)." *Hernandez v. Gen. Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 591, 602 n. 6. (8th Cir. 2017). "The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359, 136 S.Ct. 1581 (2016); *see also Lariat Cos.v. Wigley (In re Wigley)*, 620 B.R. 87, 91 (B.A.P. 8th Cir. 2020). Actual fraud "denotes 'any fraud that "involv[es] moral turpitude or intentional wrong.'" *Husky Int'l*, 578 U.S. at 360 (citation omitted). "Thus, anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id*. Additionally, "the recipient of the transfer—who, with the requisite intent, also commits fraud—can 'obtai[n]' assets 'by' his or her participation in the fraud." *Id.* at 365 (citation omitted).

### 1.  Actual Fraud

As discussed above, Glasser and Schacher both admitted to defrauding Glasser Images' customers in the AG Consent Judgment and stipulated that these claims were nondischargeable under § 523(a)(2)(A) in the AG Nondischargeability Judgment.  Because Glasser and Schacher admittedly defrauded Glasser Images' customers, which resulted in the Chargebacks paid by PayJunction, Glasser and Schacher necessarily defrauded PayJunction. It is undisputed that

10

PayJunction made whole Glasser Images' customers who asserted Chargebacks including a significant number of restitution victims included in the AG Action and AG Consent Judgment, by paying at least $402,885.17 in Chargebacks. It is also undisputed that all of the Chargebacks at issue were paid by PayJunction to Glasser Images' customers, effectively extending the consumer fraud to PayJunction which Glasser knew that PayJunction was obligated to pay. Glasser also defrauded PayJunction when it made the Warranties each time a Transaction was processed, knowing that the Warranties were false, thereby perpetuating the fraud.

In an analogous case, the Bankruptcy Court for the Eastern District of New York recently entered declaratory judgment in favor of Amazon.com Services LLC ("Amazon") on the basis that its merchant committed fraud on both its customers and Amazon. Amazon asserted that customer complaints resulted from the debtor's use of Jersey Cameras 2 Inc. (the "merchant") to "engage in 'hit-and-run' fraud, which is a type of abusive selling pattern where sellers accept money from customers, fail to fulfill customer orders, and then disappear with customers' money, leaving them empty handed and without recourse from the seller." *Amazon.com Servs. LLC v. Cameo (In re Cameo)*, No. 21-41803-JMM, 2024 WL 1925937, at *1, 18, 19 (Bankr. E.D.N.Y. Apr. 30, 2024). Amazon alleged that [the merchant] "would send an item that is not what the [customer] ordered. Something cheap. And that way the customer still receives an item. [I]t makes it harder ... for a customer to then claim they didn't receive anything, because ... the [customer] actually receive[s] an item that was scanned and delivered to [the customer's] house." *Id.* at *18 (citation omitted). Amazon "disbursed customer payments to [the merchant] because [the debtor] deceived Amazon into believing that the products ordered by those customers had been shipped." *Id.*

Like this case, "Amazon received thousands of complaints from customers that purchased high-value items such as drones, cameras, and laptops but received low value items such as USB

bracelets or flash drives. . . . [The merchant's] customers submitted claims through Amazon's A-to-Z Guarantee program and, ultimately, Amazon paid not less than $2,183,162.40 in customer refunds." *Id.* at *7. Amazon asserted that the debtor was "liable for amounts owed to it by [the merchant] because [the debtor] caused [the merchant] to defraud its customers and Amazon." *Id.* at *18. Despite the debtor's denial that he caused (i.e., the merchant) to defraud customers, the bankruptcy court found that the evidence established the debtor's fraud, and granted summary judgment in Amazon's favor, finding that Amazon's actual fraud claim was nondischargeable under § 523(a)(2)(A). *Id.* at *1, 18, 19.

### 2. False Representations

As discussed above, each time Glasser Images submitted a Transaction, Glasser represented that the Warranties were true and correct. Glasser had knowledge of falsity for the purpose of deliberately deceiving PayJunction to continue to permit Glasser Images to use its payment processing platform and extend credit to Glasser Images. PayJunction justifiably relied on the Warranties which were demonstrably false. PayJunction suffered damages resulting from Glasser's false representations.

### 1. Glasser Made a Representation that Glasser Knew was False

Withholding material information is a form of false representation under section 523(a)(2)(A). *In re Juve*, 761 F.3d at 851 (indicating silence can constitute a false representation); *see also In re Stark*, 408 B.R. 831, 837 (Bankr. D.N.D. 2009) (indicating representations include express misrepresentations and implied misrepresentations). There is "no writing requirements" for statements that "fall into the more general category of 'false pretenses, . . . false representation, or actual fraud." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 712 (2018). "Similarly, false representation 'denotes not only written or spoken words but also any other conduct that

12

amounts to an assertion not in accordance with the truth.'" *Portal Invs., LLC v. Johnson*, 584 B.R. 895, 906 (Bankr. D.N.D. 2018) (citation omitted).

Glasser's Warranties for each submitted Transaction were false representations. *See In re Hogan*, 38 B.R. 922, 924 (Bankr. E.D. Mo. 1984) (explaining "Debtor warranted, on the occasion of each sale," which was "fraudulently false . . . so that Plaintiff's claim(s) against the Debtor for his breach [are] nondischargeable"); *Chi. & Vicinity Laborers' Dist. Council Pension Fund v. Bright (In re Bright)*, 655 B.R. 464, 471 (Bankr. N.D. Ill. 2023). This type of "hit-and-run" fraud on consumers, which was committed by the merchant in *In re Cameo, supra,* was found to give rise to a nondischargeable claim against the credit card company, Amazon.com Services, which was responsible for refunding customer claims. *See In re Cameo*, 2024 WL 1925937, at *1, 18, 19. PayJunction was similarly a victim of Glasser's and Schacher's admitted fraud, which caused customers of Glasser Images to initiate Chargebacks and required PayJunction to pay these customers if the Chargebacks were not timely challenged.

This situation is also analogous to credit card kiting scheme cases where the debtor makes a false representation "by creating the façade that all of his [credit card] accounts are in good standing" and "by failing to disclose to the creditor his intent not to pay his credit card debt." *Citibank (South Dakota) v. Eashai (In re Eashai)*, 87 F.3d 1082, 1088 (9th Cir. 1996). This "facade gives the debtor the appearance of an honest debtor, who is servicing his credit card debt in a timely manner by making minimum payments each month." *Id.* When a debtor engages in credit card kiting and creates this façade with no intent to pay his debts, a debtor commits actual fraud, rendering his credit card debt nondischargeable. *Id.* at 1089–90. As the Ninth Circuit explained:

> In a kiting case, **the creditor continues to extend credit to the debtor in reliance on the fact that the debtor's credit card account is not in default**. In some instances, the creditor may initially rely on the debtor's credit report (before issuing the credit card) which shows that the debtor has a history of

servicing his credit card debt in a timely manner. ***The debtor, who is kiting his credit cards, creates the illusion that he intends to pay his credit card debts and honor his credit agreements***. ***Presumably, if the creditor knew the true state of the debtor's financial affairs and intentions, the creditor would revoke the debtor's credit card or deny the debtor's request for a credit card. Thus, by kiting, the debtor induces the creditor to refrain from action in reliance on the appearance of the debtor's intent to repay***. . . . [T]he true deceit of kiting is that by making minimum payments the debtor almost guarantees that his account will never raise a red flag.

*Id.* at 1091 (emphasis added). Courts "may infer a concurrent intent not to pay, making the implied representation of that intent false." *Star Bank, N.A. v. Stearns (In re Stearns)*, 241 B.R. 611, 623 (Bankr. D. Minn. 1999) (citations omitted)

Similar to a credit card kiting scheme, Glasser continued to use PayJunction's payment processing system to accept advanced payments from customers who Glasser admitted to defrauding without disclosing to PayJunction (as it was obligated to do) that Glasser Images was unable to continue to support business operations and pay operating expenses without borrowing more money at a time when Glasser's bankers and accountants were telling Glasser that Glasser Images did not have the revenue to support any more loans and could not attract investors. Glasser continued to rest on the Warranties which were demonstrably false at the time of the Transactions resulting in the Chargebacks. Indeed, many of these Transactions were processed after November 9, 2020 when Glasser's accountant, Toby Kommer, told Glasser that the business had too much debt and not enough cash flow, and as a result, neither banks nor investors would assist him because he could not pay them back. Mr. Kommer suggested that Glasser consult with a bankruptcy attorney. Certainly, Glasser's continued acceptance of credit card payments from customers after November 9, 2020 after receiving Mr. Kommer's advice, while not offering customers refunds, was material information that Glasser was required to disclose to PayJunction.

14

Glasser Images never communicated any material changes from the 2017 agreement to PayJunction, as required under Section 4 of the T&Cs. Glasser knew Glasser Images had financial difficulties and/or cash flow issues dating back to 2019 but continued to submit the Transactions. Glasser's breach of the Warranties each time a Transaction was processed knowing that such Warranties were false, and Glasser's material omissions that Glasser had a duty to disclose, which Glasser knew would enable him to use PayJunction's payment processing system to continue to accept advanced payments from customers using PayJunction's payment processing system, satisfies the first two elements.

### 2. Glasser Made the Misrepresentation Deliberately for the Purpose of Its Customers and PayJunction

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 2017); *In re Swan*, 156 B.R. 618, 623 n. 6 (Bankr. D. Minn. 1993) (citing *In re Hunter*, 771 F.2d 1126, 1129 (8th Cir. 1985)). "To find fraudulent intent based on circumstantial evidence, the court considers whether the totality of the circumstances presents a picture of deceptive conduct by the debtor which indicates intent to deceive the creditor." *Portal Invs., LLC v. Johnson*, 584 B.R. 895, 906 (Bankr. D.N.D. 2018) (internal quotations omitted). "The creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Hernandez v. Gen. Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 591, 603 (8th Cir. 2017); *see also Fields v. Fields (In re Fields)*, 510 B.R. 227, 236 (B.A.P. 8th Cir. 2014) ("A creditor may introduce circumstantial evidence to infer a fraudulent intent.").

The Supreme Court has recognized that "the term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359, 136 S.Ct. 1581 (2016).  For example, if a recipient of a fraudulent transfer, "who, with the requisite intent, also commits fraud" by obtaining assets due to "his or her participation in the fraud" and "later files for bankruptcy, any debts traceable to the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A)."  *Id.* at 1589 (citations, brackets, and quotation marks omitted).

PayJunction will show at trial circumstantial evidence of the fraud alleged in the Complaint. Additionally, in the AG Consent Judgment, the North Dakota District Court found, among other things, that the Glasser Defendants "admit that with the intent that others rely, they engaged in acts or practices constituting violations of the consumer fraud law, N.D.C.C. § 51-15-02." These admissions of fraud were embodied in the AG Nondischargeability Judgment.  But for Glasser and Schacher's admitted fraud, PayJunction would not have had to pay customers who were admittedly defrauded by Glasser and Schacher.

With respect to PayJunction, Glasser signed the Merchant Services Agreement and knew that Glasser Images' failure to deliver on its promise to provide wedding photography and videography services in accordance with Glasser Images' customer contracts without having the ability to issue refunds, would result in Chargeback claims for which PayJunction would be liable. Glasser made ongoing representations included in the Warranties each time a Transaction was submitted.  By virtue of Glasser's admitted acts of consumer fraud, Glasser knew that the representations contained in the Warranties were similarly false, and that by deceiving Glasser Images customers, Glasser was also deceiving PayJunction which advanced credit and permitted

16

Glasser Images to utilize its payment processing platform based on these false representations. Similarly, a confluence of a number of circumstantial factors exist that support a presumption of fraudulent intent.

### 3.  Justifiable Reliance

The "level of a creditor's reliance on a fraudulent misrepresentation necessary to place a debt thus beyond release" is "the less demanding one of justifiable reliance" instead of reasonable reliance. *Field v. Mans*, 516 U.S. 59, 61 (1995). "Justifiable reliance is an intermediate standard between actual reliance and reasonable reliance." *R&R Ready Mix v. Freier (In re Freier)*, 604 F.3d 583, 588 (8th Cir. 2010). "Reliance can be justifiable even though an investigation would have revealed the falsity of a representation." *Id.*

"[T]he standard for showing justifiable reliance as established by the Supreme Court *in Field v. Mans* is fairly low." *Guske v. Guske (In re Guske)*, 2000 Bankr. LEXIS 2151, *9 (B.A.P. 8th Cir. 2000) (citing *Field v. Mans*, 516 U.S. at 61). The restatement provision cited in *Fields* provides: "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." Restatement (Second) of Torts § 541 "The question of whether reliance is justifiable is subjective and dependent upon the qualities and characteristics of the particular creditor, and the circumstances of the particular case." *Johnson*, 584 B.R. at 907.

Glasser has already admitted in the AG Consent Judgment, which this Court determined was nondischargeable under § 523(a)(2)(A), that he and Glasser Images, "with the intent that others [Glasser Images customers] rely, . . . engaged in acts or practices constituting violations of the consumer fraud law, N.D.C.C. § 51-15-02.

But Glasser also made representations in the Merchant Services Agreement upon which PayJunction relied and agreed to extend credit by allowing Glasser Images to continue to process credit card payments using PayJunction's payment processing system based on those representations contained in the Warranties. PayJunction's reliance on the Warranties and Glasser's compliance was critical to PayJunction's agreement to permit Glasser Images to continue to process such payments through its payment processing system. Glasser relied on the truth of these Warranties and such reliance was not only justified but necessary because PayJunction did not have any other way to determine whether Glasser Images was operating in accordance with the Merchant Services Agreement and Operating Guidelines. PayJunction did not know that the Warranties were false or their obvious falsity until after Glasser Images' closure, which occurred after processing the Transactions. These false representations, coupled with Glasser's failure to disclose that the Warranties were false, resulted in PayJunction's reliance which was justifiable.

4. Proximate Causation

As a result of Glasser's and Schacher's admittedly false representations regarding Glasser Images' intention and ability to provide wedding photography and videography services to Glasser Images' customers, and sudden closure, hundreds of customers were impacted in a variety of ways including:

- Some customers who paid advance payments to Glasser Images received nothing, including a refund from Glasser Images.

- Some customers who paid advance payments to Glasser Images had photographs taken and video recorded but did not or have not received from Glasser Images their photographs or video recording, whether edited or unedited.

- Some customers, who made advance payments to Glasser Images, received partial goods and services by receiving their engagement photos but not their wedding photos.

- Some customers who paid advance payments to Glasser Images, had photographs

taken and video recorded, but only received unedited photographs or video recording from Glasser Images' independent contractors, and not the promised edited photographs or video recording by Glasser Images.

- Some customers who paid advance payments to Glasser Images obtained their photographs or video recording (edited or unedited) only after paying their photographer or videographer (who Glasser Images did not pay), or another third party, effectively paying twice.

PayJunction suffered damages as a result of Glasser's and/or Schacher's false representations and Glasser Images' acceptance of customer deposits while harboring the intent to defraud customers by, among other things, having to refund customer deposits based on Chargebacks received by PayJunction. But for their admitted fraud, which included Glasser Images submitting credit card transactions with the customers up until closure, PayJunction would not have had to make whole the customers for their Chargebacks with their banks or credit card companies.

PayJunction intends to present evidence and testimony to support PayJunction's fraud claim under § 523(a)(2)(A).

### B.    EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. § 523(A)(6)

Section 523(a)(6) of the Bankruptcy Code states, in relevant part, that:

(a) A discharge under section … 727 … of this title does not discharge an individual debtor from any debt –
. . . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

A nondischargeability action under § 523(a)(6) has three elements: (1) the debtor caused an injury to the creditor; (2) the injury must have been willfully inflicted—that is, the debtor must have desired the injury *or must have been substantially certain that his conduct would result in the injury*; and (3) the debtor's actions must have been malicious. *See In re Patch*, 526 F.3d 1176, 1180–81 (8th Cir. 2008) (emphasis added). The party seeking to prevent discharge bears the burden of showing each element by a preponderance of the evidence. Id. at 1180. "Whether a debtor acted willfully and maliciously

19

involves a finding of intent—a question of fact." *In re Thoms*, 505 F. App'x 603, 605 (8th Cir. 2013) (citing *In re Waugh*, 95 F.3d 706, 711 (8th Cir. 1996)).

*In re Luebbert*, 987 F.3d 771, 778 (8th Cir. 2021) (Emphasis added). "Failure to obey a court order constitutes willful and malicious conduct, and a judgment against a defiant debtor is excepted from discharge," under Section 523(a)(6). *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 512 (5th Cir. 2003).

### 1. PayJunction was Injured by Glasser's Conduct

The Georgia District Court issued a preliminary injunction to require Glasser to provide information and cooperation necessary to timely challenge the Chargebacks, which was ignored by Glasser. As a result of Glasser's failure, PayJunction was legally required to honor the Chargebacks made by Glasser Images' customers and in fact paid these Chargebacks resulting in significantly liability for PayJunction. Glasser's intentional violation of an injunction constitutes an injury for purposes of § 523(a)(6). *See, e.g., In re Charron*, 541 B.R. 656, 667 (Bankr. W.D. Mich. 2015) (finding contempt sanctions nondischargeable under § 523(a)(6) "to the extent the Contempt Award in this proceeding arose from the Debtor's willful and malicious violation of the Injunctive Order and caused injury to the Plaintiff"); *Williams v. Int'l Brotherhood of Elec. Workers Local 520 (In re Williams)*, 337 F.3d 504, 512 (5th Cir. 2003) ("An intentional violation of the order is necessarily without 'just cause or excuse' and cannot be viewed as not having the intention to cause the very harm to the protected persons that order was designed to prevent.").

### 2. Glasser's Acts or Omissions Were Willful

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); *accord Johnson v. Miera (In re Miera)*,

20

926 F.2d 741, 744 (8th Cir. 1991) ("[A] person acts intentionally if he knows that the consequences are certain, or substantially certain, to result from his act.") (internal quotations omitted).

Glasser did not comply with the preliminary and permanent injunctions entered by the Georgia District Court, compelling Glasser to participate in the chargeback dispute process. The Georgia District Court specifically found that Glasser and Glasser Images did not comply with the preliminary injunction and acted in bad faith, resulting in the conversion of the preliminary injunction into a permanent injunction, and awarding attorney's fees in PayJunction's favor.

Glasser knew the consequences of not complying with the Georgia District Court's injunctions – that PayJunction would, with substantial certainty, be liable for the Chargebacks. Glasser also willfully injured PayJunction by continuing to cause Glasser Images to submit Transactions for nonrefundable consumer deposits when Glasser knew the business was unable to continue operations. Glasser knew that the resulting chargeback liability for nonperformance of services would be borne by PayJunction. Given Glasser's awareness of the company's poor financial situation, coupled with Glasser and Schacher's unjust enrichment in siphoning off limited business assets for their personal benefit including leasing luxury vehicles, paying for a cabin rental in Wyoming and other extravagant trips, regularly dining at expensive restaurants, purchasing meal and smoothie kits, paying for biweekly car detailing services, purchasing haircuts and hair products, and purchasing a set of Swarovski binoculars, among others, all charged to Glasser Images at a time when Glasser Images could not pay their independent contractors or fund operations, and could not borrow any more money, Glasser was "substantially certain" that PayJunction would bear unrecoverable Chargeback liability, particularly where Glasser Images continued to submit credit card Transactions after closing.

21

As a result, the Chargeback claims became final and uncontestable and the amounts necessary to fund the undisputed chargeback claims were debited from PayJunction's accounts.

### 3. Glasser's Acts or Omissions Were Malicious

Glasser's conduct was malicious. The "[§ 523](a)(6) formulation triggers . . . the category of intentional torts, [which require the actor intended the consequences of the act, and not just the act itself,] as distinguished from negligent or reckless torts." *Dering Pierson Grp. LLC v. Kantos*, 579 B.R. 846, 851 (B.A.P. 8th Cir. 2018). "In the Eighth Circuit, an injury is malicious when the debtor intended to harm the creditor at least in the sense that ***the debtor's tortious conduct was certain or almost certain to cause harm***." *Id.* (citing *Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996); *Miera*, 926 F.2d at 743) (emphasis added). *See also In re Long*, 774 F.2d 875, 881 (8th Cir. 1985). However, the malice standard does not require spite, ill will, or a personal animosity. *Dahlgren & Co. v. Lacina (In re Lacina)*, 162 B.R. 267, 275 (Bankr. D.N.D. 1993). A wrongful act is malicious if it is "done intentionally, without just cause or excuse, and with the intent to injure" or there exists a "knowing wrongfulness or knowing disregard of the rights of another." *Id.* (quoting *Skaarer v. Fercho (In re Fercho)*, 39 B.R. 764, 767 (Bankr. D.N.D. 1984)). "Conduct which is certain or almost certain to cause financial harm to the creditor" in addition to the "debtor's knowledge that he or she is violating the creditor's legal rights," when taken together, is sufficient to establish a claim under § 523(a)(6). *In re Logue*, 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003).

Glasser's conduct was malicious for at least two reasons. First, Glasser's conduct in submitting the Transactions while the company was in dire financial condition was necessarily malicious at to PayJunction because Glasser admits he understood PayJunction would be liable to pay Chargebacks if Glasser could not. Second, "[a]n intentional violation of [an] order is

necessarily without 'just cause or excuse.'" *Behn*, 242 B.R. at 238; *see also In re Nangle,* 274 F.3d 481, 484 (8th Cir. 2001) (contempt sanction arose from willful and malicious conduct sufficient to support a § 523(a)(6) judgment where "the state court held that [the creditor] was a target, if not the only target, of [the debtor's] willful refusal to obey the court order"). When it issued the preliminary injunction, the Georgia District Court found that "Glasser Images shall be liable for chargebacks once they become final. Because Glasser Image's settlement account has insufficient funds to cover the chargebacks, PayJunction will have to pay them if they become final." Thus, any violation of the preliminary injunction would necessarily and inexcusably harm PayJunction. Ultimately, the Court found that Glasser acted in bad faith, having "stubbornly refused to comply with the Court's order to mitigate damages solely by Defendants' acts and omissions, and have caused PayJunction unnecessary trouble and expense."

PayJunction intends to present evidence and testimony to support PayJunction's claim against Glasser for willful and malicious conduct under § 523(a)(6).

## III.   LIST OF ISSUES OF LAW TO BE DETERMINED WITH CITATIONS TO AUTHORITY REFERENCING THE LEGAL STANDARD AND THE ELEMENTS OF ANY CLAIM OR AFFIRMATIVE DEFENSES

### A.   *Nondischargeability Under §§ 523(a)(2)(A) and (a)(6)*

The legal issues to be determined by the Court in this matter is the application of §§ 523(a)(2) and (a)(6) to the facts of the case to determine whether the debt owed to PayJunction should be excepted from discharge. The authority cited above are incorporated herein by this reference.

### B.   *Bartenwerfer principles apply to Schacher*

"Congress was agnostic about who committed" the fraud underlying the nondischargeable debt. *Bartenwerfer v. Buckley*, 598 U.S. 69, 76 (2023) (cleaned up). The Supreme Court reasoned

23

that § 523(a)(2)(A) does not discharge a debt "to the extent obtained by . . . false pretenses, a false representation, or actual fraud." *Id.* at 74 (quoting 11 U.S.C. § 523(a)(2)(A)). The Supreme Court explained that "Congress framed [§ 523(a)(2)(A)] to 'focu[s] on an event that occurs without respect to a specific actor and therefore without respect to any actor's intent or culpability." *Id.* at 76-77 (quoting *Dean v. U.S.*, 556 U.S. 568, 572 (2009)). The Supreme Court emphasized that "[s]ection 523(a)(2)(A) takes the debt as it finds it, so if [the state law] did not extend liability to honest partners, § 523(a)(2)(A) would have no role to play." *Id.* at 82. But, under state law, a debtor is sometimes "liable for fraud that [he or] she did not personally commit—for example, deceit practiced by a partner or an agent." *Id.* at 72. Section "523(a)(2)(a) turns on how the money was obtained" instead of "who committed the fraud to obtain it." *Id.* at 82.

As more particularly described in the Schacher trial brief filed concurrently herewith in the Schacher adversary proceeding, under the Supreme Court's precedent in *Bartenwerfer*, the Court should similarly determine Glasser's non-dischargeable debt is non-dischargeable as to Schacher.

## IV.    SUMMARY OF ANY NONMONETARY OR MONETARY RELIEF SOUGHT

PayJunction seeks a determination that it is entitled to relief under 11 U.S.C. § 523(A)(2)(A) and/or 11 U.S.C. § 523(a)(6) resulting as more particularly described above, as well as monetary relief in the amount of the PayJunction Claim. PayJunction also seeks a determination that the overlapping nondischargeable judgment in the AG adversary proceeding applies to PayJunction regarding certain customers PayJunction reimbursed. PayJunction further seeks a determination regarding costs and fees.  *See Cohen v. De La Cruz*, 523 U.S. 213, 223 (1998) ("In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that 'any debt . . . for money, property, services, or . . . credit, to the extent obtained

24

by' fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.").

## V.    DAMAGES

As more particularly described in PayJunction's Proof of Claim, PayJunction's damages arising from Glasser's fraud and willful and malicious conduct are not less than $977,241.14 plus interest, attorney's fees and processing fees. Schacher is also liable to PayJunction for the PayJunction Claim.

## VI.    EVIDENTIARY OR PROCEDURAL PROBLEMS

Except for the issues identified below, PayJunction is unaware of any evidentiary or procedural problems that are expected to arise. PayJunction plans to call witnesses in person and/or by video conference. A significant amount of evidence in support of PayJunction's claims has been produced by the defendants, and PayJunction also intends to rely on Court filings which are matters of public record and may be admitted.

The defendants have objected to three different pieces of evidence, pursuant to Federal Rule of Evidence 403: (1) an email thread between Keith Owens, Tatum O'Brien, Mathew Odirakallumkal, and other persons regarding chargeback issues between October 20-30, 2021 (i.e., exhibit 216); (2) merchant account messages to and from Glasser Images from October 19-27 (i.e., exhibit 219); and (3) an email thread between Keith Owens, Tatum O'Brien, Mathew Odirakallumkal on November 4, 2021 (i.e., exhibit 220). These pieces of evidence are relevant to the § 523(a)(6) claim.

Admitting these few exhibits is not unfairly prejudicial, and their probative value substantially outweighs any unfair prejudice. *See United States v. Betcher*, 534 F.3d 820, 825 (8th Cir. 2008) ("Evidence which is 'so inflammatory on its face as to divert the [fact finder]'s attention

159245798.2

from the material issues in the trial' is unfairly prejudicial."). Also, this is a bench trial, and the Court can appropriate weigh the evidence without concerns about influencing a jury. Therefore, the Court should admit all three pieces of evidence.

## VII.    CONCLUSION

For the foregoing reasons, PayJunction requests this Court to enter a judgment of non-dischargeability against Glasser pursuant to §§ 523(a)(2)(A) and (a)(6), and to enter a money judgment for all damages incurred by PayJunction.  PayJunction requests an opportunity to submit a trial brief that provides in more detail all the grounds for entry of judgment of nondischargeability in favor of PayJunction once the trial has concluded.

Respectfully submitted,

Dated: May 31, 2024

*/s/ Berly D. Nelson*
Berly D. Nelson (ND #05903)
Serkland law firm
10 Roberts Street North
Fargo, ND 58102-4982
Phone: 701.232.8957
Fax: 701.237.4049
bnelson@serklandlaw.com

*/s/ Keith C. Owens*
Keith C. Owens (pro hac vice)
Fox Rothschild LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Phone: (310) 598-4150
Fax: (310) 556-9828
Kowens@foxrothschild.com

Robert F. Elgidely (pro hac vice)
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, Florida, 33131
Phone: (305)442-6543
Fax: (305) 442-6541
RElgidely@foxrothschild.com

***Attorneys For Plaintiff Messiahic, Inc. d/b/a PayJunction***

159245798.2