**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NORTH DAKOTA**

| In re:<br><br>Jack A. Glasser<br><br>                             Debtor. | Case Nos: BK-22-30244<br><br>Chapter 7 |
|---|---|
| Messiahic, Inc. d/b/a PayJunction,<br><br>                             Plaintiff,<br>vs.<br><br>Jack A. Glasser,<br><br>                             Defendant. | Adversary Proceeding No. 23-07006 |

**DEFENDANT JACK GLASSER'S RESPONSE AND OBJECTION TO PLAINTIFF'S MOTION FOR FEES, COSTS, AND INTEREST**

[¶1]    COMES NOW, Defendant, Jack Glasser, by and through the undersigned attorney, hereby responds and objects to the Plaintiff's Motion for Fees, Costs and Interest as follows:

[¶2]    With regard to attorney's fees, Fed.R.Bank.P. Rule 7054(b)(2)(A) incorporates Fed.R.Civ.P. Rule 54(d)(2)(a)-(c) and applies the same to adversary proceedings. "[T]he court must, on a party's request, give an opportunity for adversary submissions on the motion [for fees and related nontaxable expenses]…" See, Fed.R.Civ.P. Rule 54(d)(2).

> As provided in Rule 54(d)(2)(A), new subsection (b)(2) does not apply to fees recoverable as an element of damages, as when sought under the terms of a contract providing for the recovery of fees incurred prior to the instant adversary proceeding. Such fees typically are required to be claimed in a pleading.

See Fed. R. Civ. P., Rule 7054, 2014 explanatory note.

[¶3]    Despite the lack of a general provision expressly providing for attorneys' fees in bankruptcy cases, such fees may be awarded under certain circumstances. In re Wyatt, 609 B.R.

1

530, 533 (Bankr. D. Idaho 2019). "Unless a statute or a court order provides otherwise, the motion must…specify the judgment **and** the statute, rule or other grounds entitling the movant to the award." Fed.R.Civ.P. Rule 54(d)(2)(B)(ii), emphasis added. In the present matter, the Court's Memorandum and Order excepts from discharge $64,628.75 in attorneys' fees, incurred by PayJunction prior to the instant adversary proceeding, as specifically plead in its Complaint. See Doc 82, p. 50. In full, the Court entered Judgment excepting $977,241.14 from discharge. Doc 83. It is silent on any award for further attorney fees, costs or interest. *Id.*

[¶4]   PayJunction has now motioned the Court for attorneys' fees, costs, and interest, arguing it is entitled to the same pursuant to its contract with Glasser Images. See Doc 84-1, pg. 5-6. "[E]quitable subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity." *Warning Lights & Scaffold Serv., Inc. v. O & G Indus., Inc.*, 925 A.2d 359, 363 (2007). In the present matter, the court ordered the debt owed to PayJunction was non-dischargeable solely based on the common law doctrine of equitable subrogation, and judicial estoppel. The contract between PayJunction and Glasser Images alone was not sufficient to establish that PayJunction otherwise could stand in the shoes of Glasser Images' customers. See generally, Doc 82, and at p. 50.

[¶5]   PayJunction cites to *Burt v. Mauer (In re Maurer)*, 256 B.R. 495, 502-03 (B.A.P. 8th Cir. 2000), and claims: "Under the doctrine of equitable subrogation, a surety may 'enforce the rights of a creditor beneficiary' and is entitled to recover attorneys' fees if the underlying contract, paid off by the subrogee, permits such fees." See Doc 84-1, ¶ 11. Applying the court's decisions and reasoning in *Maurer*, it is not the contract between Glasser Images and PayJunction that would apply in support of an attorney fee reward, but rather the contracts between Glasser Images and the consumers, who's shoes PayJunction now stands in.

[¶6] Generally, a surety may enforce the rights of a creditor beneficiary "only to the extent necessary to obtain reimbursement for the amount which the surety has actually paid." 83 C.J.S. Subrogation § 66 (2000). *See, e.g., Memphis & L. R.R. Co. v. Dow*, 120 U.S. 287, 301–02, 7 S.Ct. 482, 489, 30 L.Ed. 595 (1887). However, this general rule is largely attributable to the fact that the majority of subrogation cases deal with situations where the subrogor had no right to recover attorney fees and, therefore, the subrogee standing in the subrogor's shoes similarly had no such right. *See, e.g., Williams v. Johnston*, 92 Idaho 292, 442 P.2d 178, 186 (1968); *Texas Land & Loan Co. v. Blalock*, 76 Tex. 85, 13 S.W. 12, 14 (1890). Such cases are inapplicable to the case at bar given the fact that Sanwa had the right to recover attorney fees.

*In re Maurer*, 256 B.R. 495, 502 (B.A.P. 8th Cir. 2000).

[¶7] In the present case, with PayJunction as surety and subrogee, standing in the shoes of the customers, the creditor beneficiaries and subrogors, the contract to look to is the contract(s) entered into between Glasser Images and its customers. Contrary to the contract in *Maurer*, Glasser Images' contract with its customers states in relevant part:

> 7. Limitation of Liability
> Limitation of Liability: To the fullest extent permitted by law, and not withstanding any other provision of this Agreement, **the total liability**, in the aggregate, of the Photographer and the Photographer's owners, officers, directors, partners, employees and subcontractors, and any of them, to the Client and anyone claiming by or through the Client, **for any and all claims, losses, costs or damages, including attorneys' fees and costs** and expert-witness fees and costs of any nature whatsoever, including bodily injury or death and/or property damage, or claims expenses resulting from or in any way related to the performance of the Photographer **from any cause or causes shall not exceed the total compensation received by the Photographer under this Agreement. It is intended that this limitation apply to any and all liability or cause of action however alleged or arising, unless otherwise prohibited by law.**

Trial Ex. 267, pg. 8, *emphasis added*.

[¶8] Pursuant to this contract language and the supporting case law, PayJunction is not entitled to any additional attorney fees or costs, as such fees or costs would exceed the total compensation previously paid to Glasser Images and later refunded by PayJunction to the consumers. As PayJunction has also pointed out, "Under the American Rule, a successful litigant

3

is not entitled to attorney fees unless attorney fees are authorized by statute or allocated in an enforceable contract." *Borntrager v. Cent. States Se. & Sw. Areas Pension Fund*, 577 F.3d 913, 924 (8th Cir. 2009). See also, See Doc 84-1, pg. ¶11. With neither exception being present here, PayJunction is not entitled to any additional attorney fees.

[¶9] In awarding PayJunction its incurred attorney fees of $62,638,75 related to the Georgia Action, the Court here relied upon *Cohen v. de la Cruz*, which held that "523(a)(2)(A) excepts from discharge all liability arising from fraud, treble damages (plus attorney's fees and costs) awarded on account of the debtor's fraud fall within the scope of the exception. The most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of "any debt" respecting "money, property, services, or ... credit" that the debtor has fraudulently obtained." *Cohen v. de la Cruz*, 523 U.S. 213, 213 (1998). Most notably, *Cohen* did not involve the non-dischargability of a debt based on the premise of equitable subrogation.

> [¶10] [T]o recover attorneys' fees under *Cohen*, the creditor must be able to recover the fees outside the bankruptcy court under state or federal law." [*In re*] *Haun*, 396 B.R. at 526 (citing *Bertola v. N. Wis. Produce Co. (In re Bertola)*, 317 B.R. 95, 99–100 (9th Cir. BAP 2004)). The inquiry is whether the "plaintiff would be entitled to fees in state court for establishing those elements of the claim which the bankruptcy court finds support a conclusion of nondischargabililty." *Haun*, 396 B.R. at 528. Therefore, the Court must next consider whether Plaintiff would be entitled to recover fees in an Idaho state court for establishing the existence of a fraud debt owed to it by Defendant.

*In re Sarria*, 606 B.R. 854, 860 (Bankr. D. Idaho 2019), *aff'd*, 624 B.R. 250 (D. Idaho 2020).

[¶11] No evidence was established through the course of these proceedings to indicate that the Glasser Images' customers incurred or were reimbursed by PayJunction for any other expenses other than the payments the customers had previously made to Glasser Images, such as attorney fees or costs. The additional fees and costs now claimed by PayJunction are not recoverable under state or federal law, outside of bankruptcy, and are not directly related to the

4

conduct that resulted in the nondischargeable debt. This is especially true as the non-dischargability here was based on equitable subrogation, rather than any fraudulent misrepresentation made directly to PayJunction by Jack Glasser.

[¶12] Should the court disagree with Glasser's assertions, and find that some additional award of attorney fees, costs, and or interest are applicable here, Glasser asserts that the requested fees, costs and interest are unreasonable and should be significantly reduced by this Court.

[¶13] Relying on its own contract with Glasser Images, PayJunction argues that the choice of law, with respect to determining the actual costs and reasonableness of its attorney's fees, is the law of Georgia. See Doc 84-1, ¶14. "The court should consider evidence related to the hourly fee charged, the number of hours spent on this case, and the reasonableness of the attorney fees in light of the litigation history of this case and the caliber of the attorney involved." *Vaughters v. Outlaw*, 668 S.E.2d 13, 18 (Ga. Ct. App. 2008). However, the applicable contract between Glasser Images and its customers states "This contract shall be governed by the laws of the state in which Photographer conducts business." Id. at pg. 11. Glasser Images did not conduct business in Georgia, but primarily in North Dakota.

[¶14] Given the Court's Judgment being based on equitable subrogation and judicial estoppel, it is first important to note that the Consent to Entry of Order and Judgment entered into between Jack Glasser and the Attorney General of North Dakota provides for a waiver of interest on the judgment. Trial Ex. 284, ¶23.

[¶15] Across several jurisdictions, courts consider many of the same factors when determining the reasonableness of attorney fees and costs. Ultimately, it is the discretion of this Court to determine attorney fees, guided by statutory provisions, case law, and specific factors relevant to this action. "Whichever method the court ultimately uses, the result will prove

5

reasonable as long as the court provides sufficient reasoning and findings in support of its ultimate determination. *In re Dinan*, 448 B.R. 775, 787–88 (B.A.P. 9th Cir. 2011).

[¶16] Unlike Georgia, North Dakota has held the first step in calculating reasonable attorney fees requires calculation of the lodestar figure that represents the presumptively reasonable amount, that is the product of the number of hours reasonably expended times a reasonable hourly rate. *Duchscherer v. W.W. Wallwork, Inc.*, 534 N.W.2d 13, 16-17 (N.D. 1995). "Calculation of the lodestar figure, however, does not complete the analysis. The presumptively reasonable amount of attorney fees may be varied for other considerations that justify an upward or downward adjustment." *Id.*, at 17 (referencing, *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). "The [*Hensley*] Court said that, if 'different claims for relief ... are based on different facts and legal theories, ... [and] counsel's work on one claim [is] unrelated to his work on another claim, ... [t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful [and unrelated] claim.'" *Duchscherer*, at 17, quoting *Hensley* at 434–35.

[¶17] "A trial court must focus on the significance of the overall relief obtained from the hours reasonably expended." *Duchscherer*, at 17. "In *Blum,* 465 U.S. 886, 104 S.Ct. 1541, the Court held that reasonable attorney fees must be calculated according to the prevailing market rate in the relevant legal community, regardless of whether the claimant is represented by private or by non-profit counsel. *Id.* "[A] fee award must be based upon counsel's reasonable hourly rate and the number of hours reasonably expended in advancing successful claims." *Id.*, referencing *Blanchard v. Bergeron,* 489 U.S. 87 (1989). "When determining reasonableness, the district court

6

may consider factors set out by N.D.R. Prof. Cond. 1.5(a)…" *Spottie, Inc. v. Baiul-Farina, Ltd.*, 2024 ND 88, ¶ 30, 6 N.W.3d 582, 594, as amended (May 24, 2024), as amended (July 16, 2024).

[¶18]    While PayJunction does provide a limited willingness to reduce its actual fees, in light of the varying fee ranges between the two hired firms, in addition to its unsuccessful claim against Jace Schacher, the total $502,251.48 is still an unreasonable request.

[¶19]    As the Court noted within its Memorandum and Order, PayJunction's legal theories regarding its claims varied throughout the course of litigation, and it was not until its posttrial brief that it asserted the right to subrogation, and the issue of judicial estoppel. Doc 82, footnotes 27 & 28. Repeatedly, including but not limited to during the Summary Judgment hearing, as well as at the close of trial, the Court inquired to PayJunction how Glasser's admitted fraud against consumers equated to fraud against PayJunction, and how exactly PayJunction could stand in the shoes of its consumers. However, PayJunction failed to ever answer that question, and failed to set forth a valid claim until the close of all litigation.

[¶20]    Likewise, this assertion was never made to Defendants, or Defendants' counsel during the course of litigation or otherwise. Arguably, this could have had a significant impact on the Defendants' willingness to engage in fruitful settlement discussions.  Of note, while PayJunction claims that Defendants refused to engage in settlement discussions, this assertion is false.  The offers set forth by PayJunction were unrealistic, and provided Defendants with no incentive to settle, as the proposals did not really offset the risks Defendants faced at trial. See, Dec. of O'Keeffe, ¶ 2. Additionally, PayJunction was always unable to provide, or refused to provide, an explanation to Defendants as to how Glasser's admitted fraud against consumers equated to fraud against PayJunction. See, Dec. of O'Keeffe, ¶ 3.

7

[¶21]   Interestingly, the detailed time entries provided by the Serkland law firm indicate that they explored arguments relating to subrogation as early as May of 2022. Doc 84-5, pg. 3, 5/4/2022 time entry by BDN. It is seen again in a 9/27/2022 time entry by Owens of the Fox Rothschild firm. Doc 84-9, p. 25. However, review of the time entries provided to the court reveal no other mention of subrogation until July 23, 2024, one and half months after the end of trial. Doc 84-9, pg. 126.

[¶22]   Included in their present Motion, PayJunction provides copies of the Court dockets for two North Dakota cases it filed against Glasser, both of which were stayed as a result of the bankruptcy, and neither of which resulted in successful claims. See, Doc 84-2, Nelson Dec., and Exhibits A & B thereto (Docs 84-3, 84-4). Time spent on these actions did not in any way advance the claim of PayJunction, they were actual separate actions and not in any way related to the claims of Glasser Images customers, of which PayJunction now subrogates. However, PayJunction asserts that the two litigated state court actions are included within their request for fees and costs. Doc 84-1, ¶ 24.

[¶23]   PayJunction goes on to note the 4-day trial and extensive briefing in the present case, in support of its motion. Id. During the course of this action, the Court advised PayJunction on more than one occasion that it could forgo briefing, and requested it to submit concise briefs, without repeating matters that had already been discussed.  One example of this is that the Court advised that pretrial briefing was not necessary, given the extensive briefing that took place related to the parties' summary judgment motions. Yet, PayJunction opted to draft and file a 26-page pretrial brief. Doc 64, pg. 1, footnote 1 (acknowledging Court's directive that a pretrial brief was unnecessary).

[¶24]	At the close of trial, the Court requested the parties to submit one, consolidated brief of approximately 30 pages, and stated: "I understand how important it is for you to emphasize all the things. You're welcome to cite and prepare lists. It's not the length of the brief, but the repetitive nature of the argument. **If you spend all the time you did in your opening trial brief on the things you've already told me about numerous times, that's where I feel like you are not spending the time that serves your client**. I'm going to read it anyway. It's not that I am adamantly opposed, I'm providing for you what I view to be a reasonable ballpark of the type of space it will take to consider your argument. If you find that you really want to write 31 pages, I can live with it, I can even live with 40. I'm asking you to be intentional about your arguments. If you've already said it before, you probably don't need to say it again." Trial Audio Transcript, 6/10/24, *emphasis added*. Not for the first time, the Court criticized PayJunction's attorneys' misuse of their time. Despite this warning, in addition to the several previous warnings the Court gave to PayJunction concerning relevant testimony and use of the Court's time throughout the trial, PayJunction filed a 38-page post-trial brief. Doc 81. Additionally, it filed a 6 page attachment (Doc 81-1) outlining the various contracts PayJunction held with major credit cards (wholly irrelevant to its successful subrogation claim), and a second, 43 page attachment including excerpts from Glasser Images' General Ledger. Doc 81-2. This General Ledger and Glasser's spending in general was irrelevant to the consumer fraud Glasser admitted to within the ND Attorney General Action, and the acts for which PayJunction claimed damage related to it standing in the shoes of the consumers. There are, at least, 20 hours' worth of time entries that reference, in part, drafting and preparing Attachment B. Doc. 84-5, p. 52; Doc 84-9, p. 127.

[¶25]	Having been previously advised by the Court during the course of trial that the Court reviews in detail all pleadings and exhibits set before it, Defendant trusts that the court will

9

review the multiple pages of time entries submitted by both Serkland and Fox Rothschild. Defendant asserts that in review of those time entries, the court will see how much time was spent by both firms pre-petition, and pre-adversary action, on the North Dakota state claims, which were automatically stayed as a result of the bankruptcy filing, and did not result in any judgement, additional award, or recovery to the benefit of PayJunction. The Court is directly familiar with the proceedings, briefing requirements, and the time spent at trial with regard to all claims brought by PayJunction. The Court is therefore in a well-seated position to determine that a large portion of PayJunction's litigation of this adversary action, including the majority of its trial preparations, and time at trial could have been avoided by PayJunction had it set forth a more timely equitable subrogation claim. Additionally, the majority of the fees claimed are not attorney fees that could be obtained in state court for establishing those elements of the claim which the bankruptcy court found to support a conclusion of nondischargeabililty. Perhaps most importantly, they are not fees that could have been obtained by the customers in their individual claims against Glasser Images, for which PayJunction satisfied, due to the limited liability clause in the Glasser Images' contracts with its customers.

[¶26]   Defendant expects that the Court will provide sufficient reasoning and findings in support of its ultimate determination regarding the award of any additional attorney fees, costs or interest it deems warranted. However, in light of the above, Defendant requests the Court deny any additional award of attorney fees.

[¶27]   Likewise, Defendant requests this Court to deny any award of further costs or interest. In the alternative, Defendant requests this Court to limit the award of costs to legal costs directly related to the successful equitable subrogation claim of the Plaintiff. Transportation and accommodation costs are not expenses that are legal in nature. *Spottie, Inc. v. Baiul-Farina, Ltd.*,

2024 ND 88, ¶ 35, 6 N.W.3d 582, 595, as amended (May 24, 2024), as amended (July 16, 2024).

N.D.C.C. § 28-26-06 allows for the following "necessary" disbursements:

1. The legal fees of witnesses; sheriffs; clerks of district court; the clerk of the supreme court, if ordered by the supreme court; process servers; and of referees and other officers;
2. The necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial;
3. The legal fees for publication, when publication is made pursuant to law;
4. The legal fees of the court reporter for a transcript of the testimony when such transcript is used on motion for a new trial or in preparing a statement of the case; and
5. The fees of expert witnesses.

[¶28]   The costs documented from Serkland law firm, largely seem to be general postage fees, and fees associated with the general collection efforts concerning the Georgia default Judgment, and the two unsuccessful North Dakota state cases brought by PayJunction against Glasser Images. Doc 84-7. Based on descriptions provided in its itemization, only the $350 filing fee is clearly related to this adversary action and could be argued a "necessary disbursement" under N.D.C.C. § 28-26-06.  On its face the costs claimed by Fox and Rothschild of prior to March of 2023 also appear to be fees associated with the two unsuccessful North Dakota state cases. Beyond that, this itemization provides several unallowable costs for travel expenses, photocopying, unspecified technology costs and messenger/delivery services. Defendant notes there are few limited expenses seemingly related to depositions, transcripts and court fees.

## **CONCLUSION**

[¶29]   For the reasons cited herein, and based upon the pleadings, and statements at all hearings and the trial which are included and incorporated in the record, Defendant respectfully requests this Court deny any further award of attorney fees, costs and interest to Plaintiff.

Dated this 7th day of November, 2024.

                O'KEEFFE O'BRIEN LYSON LTD.

*/s/ Timothy O'Keeffe*
Timothy O'Keeffe (ND ID. #05636)
720 Main Avenue
Fargo, ND 58103
Phone: (701) 235-8000
Fax: (701) 235-8023
tim@okeeffeattorneys.com
Attorney for Defendant